UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | | |
|---|---|---|
| ELI PORTER, FRANCOIS WILLIAMS, MICHAEL SINGLETON, *and* TIMOTHY VAN BEVERHOUDT, | ) ) ) ) ) | |
| *Plaintiffs*, | ) ) | |
| vs. | ) ) | Civil Action File No. |
| SGT. DERRELL THIGPEN, CPL. MATT SOWELL, TFC. JONATHAN MALONE, LT. CHRIS LACIENSKI, TFC2 HAMMOND, TFC3 HOLLOWAY, TFC. AARON DIGIACOMO, DEPUTY JASON MICHAEL BORNE in their individual and official capacities as LEOs, and BRIAN KEMP, in his individual and official capacity as Governor of the State of Georgia, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 6:22-cv-00057-JRH-BKE |
| *Defendants*. | ) | |

## FIRST AMENDED COMPLAINT

NOW COMES Plaintiffs, ELI PORTER ("Plaintiff Porter"), FRANCOIS

WILLIAMS ("Plaintiff Williams"), MICHAEL SINGLETON ("Plaintiff

Singleton"), and TIMOTHY VAN BEVERHOUDT ("Plaintiff van Beverhoudt"),

(together "Plaintiffs"), and file this First Amended Complaint, pursuant to Rule 15(b) of the Federal Rules of Civil Procedure, showing the Court as follows:

1.

Defendant SGT. DERRELL THIGPEN ("Defendant Thigpen") is one of the persons who is subject to the jurisdiction and venue of this Court and individually harmed Plaintiff in this manner, and was the sergeant in charge and a responding LEO with the Georgia State Patrol during the acts alleged herein, and he may be served at 1337 Register Mullis Road, Rentz GA 31075.

2.

Defendant CPL. MATT SOWELL ("Defendant Sowell") is one of the persons who is subject to the jurisdiction and venue of this Court and individually harmed Plaintiff in this manner, and was the corporal in charge and a responding LEO with the Georgia State Patrol during the acts alleged herein, and he may be served personally at work at State Trooper Post 45 in Statesboro at 10723 U.S. 301 South, Statesboro GA 30458.

3.

Defendant TFC. JONATHAN MALONE ("Defendant Malone") individually harmed Plaintiff in this manner, and was a Trooper First Class responding LEO with the Georgia State Patrol during the acts alleged herein, and he may be served at 340

Castlegate Road, Macon GA 31210.

4.

Defendant LT. CHRIS LACIENSKI ("Defendant Lacienski") individually

harmed Plaintiff in this manner, and was the lieutenant in charge and a responding

LEO with the Georgia State Patrol during the acts alleged herein, and he may be

served at 1003 Morning Dove Ct, Statesboro GA 30461.

5.

Defendant TFC2 HAMMOND ("Defendant Hammond") individually harmed

Plaintiff in this manner, and was Trooper First Class and responding LEO with the

Georgia State Patrol during the acts alleged herein, and he may be served at State

Trooper Post 45 in Statesboro at 10723 U.S. 301 South, Statesboro GA 30458.

6.

Defendant TFC3 HOLLOWAY ("Defendant Holloway") individually harmed

Plaintiff in this manner, and was Trooper First Class and responding LEO with the

Georgia State Patrol during the acts alleged herein, and he may be served at State

Trooper Post 45 in Statesboro at 10723 U.S. 301 South, Statesboro GA 30458.

7.

Defendant TFC AARON DIGIACOMO ("Defendant DiGiacomo")

individually harmed Plaintiff in this manner, and was Trooper First Class and

responding LEO with the Georgia State Patrol during the acts alleged herein, and he

may be served a State Trooper Post 45 in Statesboro at 10723 U.S. 301 South,

Statesboro GA 30458.

8.

Defendant DEPUTY JASON MICHAEL BORNE ("Defendant Borne")

individually harmed Plaintiff in this manner, and was a Bulloch County Sheriff's

Deputy and a responding LEO during the acts alleged herein, and he may be served

at State Trooper Post 45 in Statesboro at 10723 U.S. 301 South, Statesboro GA

30458.

9.

Defendant BRIAN KEMP ("Defendant Kemp") individually harmed Plaintiff

in this manner, and the Governor of the State of Georgia who issued various

executive orders that were being enforced during the acts alleged herein, and he may

be served at 206 Washington Street, 111 State Capitol, Atlanta GA 30334.

9.5

Due to the "Order Declaring Statewide Judicial Emergency" (as extended)

entered on March 14, 2020, the statute of limitations for filing this action was tolled

for the duration of the Order, extending the deadline an equal amount of time.

**FACTUAL BACKGROUND FOR CLAIMS**

10.

Plaintiff ELI PORTER ("Plaintiff Porter") is a resident of Bulloch County and was a pastor conducting worship services for Redeeming Church of God the Bible Way ("Bible Way") on April 5, 2020 and is subject to this Court's jurisdiction.

11.

Plaintiff FRANCOIS WILLIAMS ("Plaintiff Williams") is a resident of Bulloch County and was a member of Bible Way engaging in worship on April 5, 2020 and is subject to this Court's jurisdiction.

12.

Plaintiff MICHAEL SINGLETON ("Plaintiff Singleton") is a resident of Bulloch County and was a member of Bible Way engaging in worship on April 5, 2020 and is subject to this Court's jurisdiction.

13.

Plaintiff TIMOTHY VAN BEVERHOUDT ("Plaintiff van Beverhoudt") is a resident of Bulloch County and was a member of Bible Way engaging in worship on April 5, 2020 and is subject to this Court's jurisdiction.

14.

On March 14, 2020, Defendant Kemp, as Governor of the State of Georgia, issued Executive Order No. 03.14.20.01 declaring a Public Health State of

Emergency in Georgia due to COVID-19.

15.

In Executive Order No. 03.14.20.01, Defendant Kemp ordered that "all resources of the State of Georgia shall be made available to assist in activities designed to address this emergency, control the spread of COVID-19, and aid recovery efforts."

16.

In Executive Order No. 03.14.20.01, Defendant Kemp also ordered that the Georgia Department of Public Health coordinate with the Georgia Emergency Management and Homeland Security Agency to "take any action necessary to protect the public's health," including "[e]stablishing protocols to control the spread of COVID-19" and "[i]mplementing quarantine, isolation, and other necessary public health interventions[.]"

17.

On March 23, 2020, Defendant Kemp issued Executive Order No. 03.23.20.01 requiring certain persons to shelter in place, prohibiting businesses and non-profits to allow more than ten (10) persons to be gathered at a single location where the gathering requires persons to stand or "be seated within six (6) feet of any other person."

18.

Defendant Kemp's Executive Order No. 03.23.20.01 also authorized the Department of Public Health "to mandate the closure of any business . . . [or] non-profit corporation" who failed to comply with the Order.

19.

On April 2,2020, Defendant Kemp issued Executive Order No. 04.02.20.01, ordering "[a]ll residents and visitors of the State of Georgia" to "practice social distancing" in accordance with the Order and Center for Disease Control and Prevention ("CDC") guidelines.

20.

Order No. 04.02.20.01 also prohibited businesses and non-profits to allow "more than ten (10) people to be gathered at a single location if such gathering requires persons to stand or to be seated within six (6) feet of any other person," which provided no exception for religious gatherings.

21.

Order No. 04.02.20.01 also ordered residents and visitors of the State of Georgia" shelter in place within their homes or places of residence" unless engaged in certain activities in which Defendant Kemp, on behalf of the State of Georgia, deemed to be "necessary" or "essential."

22.

Defendant Kemp provided no exception to this "shelter in place" order for religious activities, nor did he include it as one of the activities deemed "necessary" or "essential".

23.

Defendant Kemp also mandated that businesses and non-profits engage in screening procedures that would prohibit public participation in activities within the business or non-profit organization, leaving no exceptions for religious activities or places of worship.

24.

Defendant Kemp's Executive Order No. 04.02.20.01 explicitly stated that nothing within the Order "shall be construed to suspend or limit the sale, dispensing, or transportation of firearms or ammunition, or any component thereof," but did not find it necessary to explicitly state that the Order shall not be construed to prohibit or limit the individual right to worship God to the dictates of his own conscience pursuant to the First Amendment of the United States Constitution and Art. I, Sec. I, Para. III of the Constitution of the State of Georgia.

25.

Defendant Kemp's Executive Order No. 04.02.20.01 explicitly stated that "any

person who violates this Order shall be guilty of a misdemeanor," effectively criminalizing the exercise of worship as a congregation as mandated by many faiths in the State of Georgia.

26.

Defendant Kemp's Executive Order No. 04.02.20.01 also permitted "officials" to enforce the Order.

27.

On April 3, 2020, Defendant Kemp issued Executive Order No. 04.03.20.01, authorizing sheriffs and their deputies to enforce Executive Order No. 04.02.20.01.

28.

On April 3, 2020, Defendant Kemp also issued Executive Order No. 04.03.20.02 in order to clarify certain terms or requirements in Executive order No. 04.030.20.01, including further defining "Essential Services" as including "any and all activities that may preserve the health and welfare of persons within [the State of Georgia".

29.

While the definition of "any and all activities that may preserve the health and welfare" of citizens, none of the examples expressly stated in that paragraph of Executive Order No. 04.03.20.02 explicitly included the ability to congregate and

worship.

30.

While Executive Order No. 04.03.20.02 only explicitly authorized officials enforcing the Order to "mandate the closure of any" business or non-profit organization who did not comply with the Order, Executive Order No. 04.02.20.01 expressly stated that such citizens not in compliance with the Order are guilty of a misdemeanor.

31.

On April 20, 2020, Defendant Kemp suggested that worship leaders hold worship services via online, call-in, or drive-in services, but reiterated that in-person services must adhere to "strict social distancing protocols," in violation of the First Amendment of the United States Constitution, as well as Article I, Section I, Para. III of the Constitution of the State of Georgia.

32.

On April 5, 2020, Bible Way held worship services where members congregated to worship God pursuant to their faith and the dictates of their conscience, as protected by the First Amendment of the United States Constitution and Article I, Section I, Paragraph III of the Constitution of the State of Georgia.

33.

On that day, Plaintiff Porter, the pastor for Bible Way, led the congregation in worship.

34.

Also attending church at Bible Way that day and time were Plaintiffs Williams, Singleton and van Beverhoudt.

35.

Bible Way is a predominantly minority congregation composed of mostly African-American members.

36.

On that day, an unnamed Bulloch County Sheriff's Deputy alerted the Georgia State Patrol ("GSP") of the church gathering.

37.

In response to the deputy alerting GSP, Defendants Thigpen and Sowell arrived at Bible Way in an attempt to shut down services.

38.

While members were inside the building worshiping to the dictates of their conscience pursuant to their inalienable right to worship God, Defendant Sowell began going around the parking lot and writing down the license plate information on every car in the parking lot.

39.

Defendant Thigpen then approached members outside of the building, including Plaintiffs Williams, Singleton and van Beverhoudt, asking to speak with the pastor when he was done preaching.

40.

Defendant also told Plaintiffs Williams, Singleton and van Beverhoudt that it was "not a good idea to do baptisms."

41.

Defendant Thigpen called for Bulloch County deputies to assist with enforcing compliance with Defendant Kemp's COVID-19 orders.

42.

While awaiting the arrival of other LEOs, including Bulloch County deputies and Defendant Malone and other LEOs within GSP, Defendants Thigpen and Sowell approached many unnamed Bible Way members seeking the identity of the pastor of the congregation.

43.

All of these unnamed members refused to speak with Defendants Thigpen and Sowell.

44.

Defendant Sowell then approached Plaintiff Porter, who expressed to Defendant Sowell that he did not wish to speak to law enforcement.

45.

Defendant Thigpen overheard Plaintiff Porter tell Defendant Sowell that he did not wish to speak to law enforcement.

46.

Despite Plaintiff Porter's unambiguous statement that he did not wish to speak to law enforcement, Defendant Thigpen approached Plaintiff Porter and continued trying to obtain "voluntary compliance" from Plaintiff Porter.

Plaintiff Porter made Defendant Thigpen aware that he was represented by legal counsel.

47.

Defendant Thigpen spoke with Plaintiff Porter's attorney, Jum Puentes, over the phone and informed him that he and other LEOs were seeking "voluntary compliance", and that if he was unable to obtain compliance voluntarily, he would be "mandating compliance."

48.

Defendant Thigpen cited to Defendant Kemp's executive orders as the authority for his harassment of Plaintiff Porter and other Bible Way members.

49.

After ending the phone call with Mr. Puentes, Defendant Thigpen informed Plaintiff Porter that "the next time [he and other LEOs] would be taking enforcement action."

50.

During all times relevant to this Complaint, Defendant Lacienski with GSP was also present and enforcing Defendant Kemp's mandate and attempting to shut down worship service at Bible Way.

51.

Defendant Lacienski arrived with Defendants Hammond, Holloway and DiGiacomo.

52.

Defendants Lacienski, Hammond, Holloway and DiGiacomo assisted Defendant Sowell in "documenting each [of the 21 vehicles] that was parked at the church."

53.

Defendant Lacienski approached Plaintiffs Williams, Singleton and van Beverhoudt, who informed him that they did not wish to speak with him.

54.

Defendant Lacienski demanded that Plaintiffs Williams, Singleton and van Beverhoudt identify themselves within the next five (5) minutes.

55.

Defendant Lacienski told Plaintiffs Williams, Singleton and van Beverhoudt that he and other LEOs had been to Bible Way earlier that same day because of members congregating to worship.

56.

Defendant Lacienski cited to Defendant Kemp's Executive Order 03.14.20.01 as the purpose for all of the law enforcement presence at the church, and that they were taking enforcement action pursuant to that Order.

57.

Defendant Lacienski later supplemented his police report and corrected the Executive Order to be No. 04.02.20.01.

58.

Defendant Lacienski supplemented his police report again and corrected the Executive Order to be No. 04.02.20.02.

59.

While all Defendants' reports seemed to take issue with the members congregating *inside* the building and that congregating *outside* would be permitted,

only those members who were initially stopped outside, including Plaintiffs Williams, Singleton and van Beverhoudt, were cited with any violation of law.

60.

Plaintiffs Williams, Singleton and van Beverhoudt informed Defendant Lacienski that they were also represented by counsel, which did not deter Defendant Lacienski from attempting to continue speaking with Plaintiffs and asking them questions.

61.

Defendant Lacienski instructed Defendant DiGiacomo to issue citations to Plaintiffs Williams, Singleton and van Beverhoudt for reckless conduct pursuant to Defendant Kemp's executive orders.

62.

Defendant DiGiacomo complied with the unconstitutional order and cited Plaintiffs Williams, Singleton and van Beverhoudt with reckless conduct in violation of O.C.G.A. § 16-5-60.

63.

Defendant Lacienski then issued a citation for reckless conduct under O.C.G.A. § 16-5-60 to Plaintiff Porter.

64.

In July of 0221, reckless conduct charges against Plaintiffs were dismissed.

## 42. U.S. CODE § 1983 CIVIL ACTION FOR DEPRIVATION OF RIGHTS

65.

Plaintiff incorporates all previous paragraphs.

66.

Plaintiff's civil rights protected under 42 U.S.C.§ 1983 were violated by Defendants, wherefore Plaintiff is entitled to bring this cause of action against Defendants.

## 42. U.S. CODE § 1983 : FIRST AMENDMENT RETALIATION AND CHILLING CLAIM

67.

Plaintiffs incorporate all previous paragraphs.

68.

Pursuant to the First Amendment of the United States Constitution, Plaintiffs were entitled to exercise freedom of expression and religion, peaceable assembly, and to address the government for a redress of grievances.

69.

Plaintiffs were unlawfully seized by Defendants when Defendants refused to respect Plaintiffs' unambiguous assertion that they did not wish to engage in any interactions with Defendants and Defendants continued to harass them, in direct

retaliation for Plaintiff's expression of protected speech, freedom to worship and freedom to assemble under the First Amendment.

70.

Plaintiffs' exercise of these rights under the First Amendment were essentially criminalized by Defendants, who labeled their worship of God as "reckless conduct" pursuant to Defendant Kemp's executive orders insinuating that such exercise of rights would be a misdemeanor.

71.

Plaintiffs committed no expression of unprotected speech, such as fighting words or other types of unlawful or unprotected speech.

72.

Defendants failed to demonstrate that Plaintiffs were infected with any contagious disease that would harm others, or otherwise a threat to public health.

73.

Defendants also failed to show that any members who were inside not observing the social distancing guidelines were subjected to such harassment or citations.

74.

Defendants retailed against Plaintiffs, and attempted to chill speech, by

arbitrarily targeting them for citations and prosecution for their refusal to engage with

law enforcement who were harassing them for engaging in the inalienable right to

worship God.

75.

Defendants colluded and conspired with each other in retaliating against

Plaintiffs, abusing their constitutional authority by attempting to deprive Plaintiffs of

their rights to assemble and worship, and not associate with those seeking to deprive

them of those rights.

76.

In addition to retaliating against Plaintiffs for engaging in worship together,

Defendants used their positions to insinuate to others in the community that people

should not congregate to worship God when the government tells them not to do so.

Overall, Defendants prevented Plaintiffs from exercising free speech, retaliated

against Plaintiffs by using government power to take down everyone's identifying

information they are required to display on their vehicles, refusing to adhere to their

unequivocal expression that they do not wish to answer questions or speak to law

enforcement, and issuing citations to those engaged in worship who refused to yield

to law enforcement, and chilled Plaintiffs' current and future speech by making it

clear that those engaged in the same activities would be detained, profiled, cited and

removed by force, using law enforcement.

## 42. U.S. CODE § 1983 : FOURTH AMENDMENT VIOLATION

77.

Plaintiffs incorporate all previous paragraphs.

78.

There was a lack of probable cause, or arguable probable cause to charge

Plaintiffs with any crime or issue any citation.

79.

By continuously harassing Plaintiffs and not allowing them to end any alleged

voluntary interaction with law enforcement, despite unambiguous statements and

conduct asserting their wishes to terminate the encounters, Defendants effectively

detained Plaintiffs engaged in lawful worship in violation of their Fourth Amendment

right to unreasonable seizures.

80.

Defendants charged Plaintiffs with crimes, despite Plaintiffs' conduct being

legal.

## 42. U.S. CODE § 1983 : VIOLATION OF FIFTH AND SIXTH AMENDMENTS

81.

Plaintiffs incorporate all previous paragraphs.

82.

Defendants violated Plaintiffs' Fifth and Sixth Amendment rights to counsel by not adhering to their clear, unambiguous assertions that they did not wish to speak with law enforcement and statements that they were represented by counsel.

## 42. U.S. CODE § 1983 : VIOLATION OF NINTH AMENDMENT

83.

Plaintiffs incorporate all previous paragraphs.

84.

Defendants violated Plaintiffs' Ninth Amendment rights by requiring and enforcing a "shelter in place" order and mandatory social distancing, despite the fact that neither the United States Constitution, nor the Constitution of the State of Georgia permit suspension of inalienable rights during any epidemic or pandemic.

## 42. U.S. CODE § 1983 : VIOLATION OF DUE PROCESS CLAIM

85.

Plaintiffs incorporate all previous paragraphs.

86.

By targeting Bible Way, a predominantly African-American church, for holding worship services, writing down tag numbers of all vehicles in the parking lot, and citing Plaintiffs for reckless conduct for holding worship and refusing to engage

with law enforcement who were harassing Plaintiffs for holding their worship

service, Defendants engaged in an unlawful deprivation of Plaintiffs' due process

rights by effectively criminalizing Plaintiffs' exercise of inalienable rights

acknowledged and protected by the Constitution of the United States.

87.

By only enforcing the executive orders against a predominantly African-

American church, Defendants violated Plaintiffs' Equal Protection rights.

88.

By citing Plaintiffs Williams, Singleton and van Beverhoudt, who were

members present outside of the church, with reckless conduct, and because no

statements were ever made demonstrating where these specific Plaintiffs were

violating any sort of COVID-19 guidelines, Defendants violated Plaintiffs Williams,

Singleton and van Beverhoudt's Equal Protection rights.

89.

By citing Plaintiff Porter with reckless conduct, despite no assertions that he,

himself, was not observing COVID-19 guidelines, Defendants violated Plaintiff

Porter's Equal Protection rights.

89.5

Deputy Borne responded to the scene and failed to stop other law enforcement

officers from violating the rights of citizens engaged in free exercise of religion

pursuant to their rights under the First Amendment of the United States Constitution.

## STATE LAW CLAIMS: DEPRIVATION OF RIGHT TO FREEDOM OF SPEECH UNDER THE GEORGIA CONSTITUTION, ART. I, SEC. I, PARA. II, III, IX, XIII AND XXIX; AND FALSE IMPRISONMENT

90.

Plaintiffs incorporate all proceeding paragraphs.

91.

Defendants' targeting of Bible Way Church and of Plaintiffs engaged in the

lawful exercise of their rights to congregate and worship unjustifiably violates their

rights of freedom of expression and religion under Art. I, Sec. I, Para. III (freedom of

conscience) and Para. IX (right to assemble and petition) of the Georgia Constitution.

## VIOLATION OF EQUAL PROTECTION UNDER THE GEORGIA CONSTITUTION, ART. I, SEC. I, PARA. II

92.

Defendants' targeting of Bible Way Church, a predominantly African-

American congregation, for holding worship services violates Plaintiffs' equal

protection rights under Art. I, Sec. I, Para. II under the Georgia Constitution.

## VIOLATION OF UNREASONABLE SEIZURE UNDER THE GEORGIA CONSTITUTION, ART. I, SEC. I, PARA. XIII, AND VIOLATION OF LIBERTY UNDER THE GEORGIA CONSTITUTION, ART. I, SEC. I, PARA. XXIX

93.

Defendants' conduct of adhering to Plaintiffs' right to terminate an alleged "voluntary" encounter with law enforcement, as well as the assertion of Plaintiffs being represented by counsel, violates Plaintiffs' rights under Art. I, Sec. I, Para. XIII (searches, seizures, and warrants) of the Georgia Constitution.

94.

Defendants violated Plaintiffs' rights under Art. I, Sec. I, Para. XXIX (enumeration of rights not denial of others) by requiring and enforcing a "shelter in place" order and mandatory social distancing, despite the fact that neither the United States Constitution, nor the Constitution of the State of Georgia permit suspension of inalienable rights during any epidemic or pandemic.

95.

Defendants' refusal to allow Plaintiffs to terminate the encounter with law enforcement effectively restricted Plaintiffs' freedom of movement and demonstrated an intention to confine them for the purposes of holding them in place until compliance was adhered to.

## **MALICIOUS PROSECUTION**

96.

Plaintiffs incorporate all previous paragraphs.

97.

Charges against Plaintiffs were terminated in Plaintiff's favor.

98.

By Defendants maliciously issuing to Plaintiffs an official accusation or summons in the form of a citation for reckless conduct under O.C.G.A. § 16-5-60, the criminal section of the Georgia Code, without probable cause that Plaintiffs were engaged in any unlawful conduct that violated said statute, and because these accusations were dismissed in July of 2021, Defendants sought to prosecute Plaintiffs maliciously based on the fact that Plaintiffs were part of a minority congregation engaged in lawful worship and refused to cooperate with Defendants while Defendants were attempting to deprive them of these rights to engage in said worship.

99.

Defendants' intentional and malicious actions caused Plaintiff harm, and entitles Plaintiff to damages, including but not limited to punitive damages.

## **FAILURE TO INTERVENE**

99.5.

Defendant Borne failed to intervene when he had a duty to do so in order to prevent Plaintiffs' rights from being violated by other Defendants.

## NEGLIGENCE

### 100.

Plaintiffs incorporate all previous paragraphs.

### 101.

Defendants' conduct breached their legal duties under numerous laws, including the open records act, the Georgia constitution, and public policies of Bulloch County, which damaged Plaintiffs.

## PUNITIVE DAMAGES

### 102.

Plaintiffs incorporate all previous paragraphs.

### 103.

The actions of Defendants, as set forth above, show intentional and willful misconduct, wantonness, and that entire want of care which raises the presumption of a conscious indifference to the consequences of their actions.   Accordingly, Plaintiff seeks punitive damages pursuant to O.C.G.A. § 51-12-5.1 and Federal law.

WHEREFORE, Plaintiff prays:

(a)     That Summons issue requiring Defendants to be and appear in this Court within the time provided by law to answer this Complaint;

(b)     That Plaintiff receive a Jury Trial;

(c)     That Plaintiff receive favorable Judgment against Defendants for Compensatory Damages, General Damages, and Pain and Suffering as provided by law;

(d)     That Plaintiff be awarded Punitive Damages and Attorney's Fees as provided by law including but not limited to pursuant to 42 U.S.C. § 1988;

(e)     That Plaintiff be awarded an declaratory and injunctive relief, declaring that Defendants violated Plaintiff's constitutional rights, and enjoining them from preventing public comment criticizing government officials in the future; and,

(h)     That Plaintiff have such other additional relief as the Court may consider equitable and/or appropriate, given the circumstances of this case.

Respectfully Submitted, this 9th day of August, 2022.

/s/ Jordan Johnson
Jordan Johnson
Georgia State Bar No. 673643

Jessica Burton
Georgia State Bar No. 916253
Attorneys for Plaintiff

Bernard & Johnson, LLC
5 Dunwoody Park
Suite 100
Atlanta, GA  30338
404.477.4755
404.592.9089 (Fax)
Alex@Justice.Law
Jessica@Justice.Law

Kevin Gough
Georgia State Bar No. 303210
Attorney for Plaintiff

Kevin Gough Firm, LLC
P.O. Box 898
501 Gloucester Street, Suite 121
Brunswick, GA 31521
Phone: (912) 266-5454
Fax: (912) 480-9280
Kevingough.firm@gmail.com