**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION**

| | |
|---|---|
| ELI PORTER, et al., | |
| *Plaintiffs,* | |
| vs. | CIVIL ACTION NO.
6:22-cv-00057-JRH-BKE |
| SGT. DERRELL THIGPEN, et al., | |
| *Defendants.* | |

**BRIEF IN SUPPORT OF DEFENDANTS GOVERNOR KEMP, THIGPEN, SOWELL, MALONE, LACIENSKI, HAMMOND, HOLLOWAY, AND DIGIACOMO'S MOTION TO DISMISS**

Defendants Governor Brian Kemp, Darrell Thigpen, Matt Sowell, Jonathan Malone, Chris Lacienski, Brent Hammond, Jamay Holloway, and Aaron DiGiacomo, by and through the undersigned counsel, the Attorney General for the State of Georgia, submit this brief in support of their motion to dismiss.

## I.      INTRODUCTION

At the beginning of the COVID-19 pandemic, Governor Brian Kemp immediately took action to protect Georgia residents from this potentially deadly disease and to prevent its rampant spread.  He declared a "Public Health State of Emergency" in the State of Georgia on March 14, 2020.[1]  And he issued several executive orders, including an order to "shelter in place" unless

---

[1] That declaration can be found at https://gov.georgia.gov/executive-action/executive-orders/2020-executive-orders.

engaged in "necessary" or "essential" activities, the violation of which would result in a misdemeanor.[2]

Plaintiffs—a preacher and three members of his congregation—violated the plain terms of Governor Kemp's executive orders by attending church services on April 5, 2020, with at least 17 other people.  Several Georgia State Patrol officers who were alerted to the illegal gathering attempted to convince Plaintiffs to voluntarily comply with the orders.  But they failed to do so and were consequently cited for reckless conduct.

Plaintiffs are now suing Governor Kemp and the Georgia State Patrol officers for alleged violations of the First, Fourth, Fifth, Sixth, Ninth, and Fourteenth Amendments; alleged violations of the Georgia Constitution; malicious prosecution; and negligence.  As explained in more detail below, the Court should dismiss these claims for many reasons, including that Plaintiffs' amended complaint is an impermissible shotgun pleading, Plaintiffs fail to sufficiently plead any of their claims, and their claims are barred by either qualified immunity or sovereign immunity.

## II.      FACTUAL ALLEGATIONS

### A.      The Parties

Plaintiff Eli Porter is the pastor of the Redeeming Church of God the Bible Way ("Bible Way"), which is described as "a predominantly minority congregation composed of mostly African-American members."  Doc. 10 at ¶¶ 10, 35.  Plaintiffs Francois Williams, Michael Singleton, and Timothy van Beverhoudt are members of Bible Way.  *Id*. at ¶¶ 11-13.

---

[2] Governor Kemp's executive orders can likewise be found at https://gov.georgia.gov/executive-action/executive-orders/2020-executive-orders.

Defendant Governor Kemp is the Governor of the State of Georgia who issued multiple executive orders related to the COVID-19 pandemic.  Doc. 10 at ¶ 9.  Defendants Sergeant Darrell Thigpen, Corporal Matt Sowell, Trooper Jonathan Malone, Lieutenant Chris Lacienski, Trooper Brent Hammond, Trooper Jamay Holloway, and Trooper Aaron DiGiacomo were, at all relevant times, law enforcement officers with the Georgia State Patrol (collectively, the "GSP officers").  *Id*. at ¶¶ 1-7.

**B.      Governor Kemp's Executive Orders**

As alleged in the complaint, in the first month of the COVID-19 pandemic, Governor Kemp declared "a Public Health State of Emergency in Georgia."  *Id*. at ¶ 14.  The next month, on April 2, 2020, he issued an executive order that, among other things, required Georgia residents to "shelter in place within their homes or places of residence" unless they were engaged in "necessary" or "essential" activities.  *Id.* at ¶¶ 19, 21.  "Religious activities" were not considered "necessary" or "essential."  *Id*. at ¶ 22.  The executive order made clear that any person who violated it "shall" be guilty of a misdemeanor.  *Id*. at ¶ 25.

The next day, Governor Kemp issued another executive order clarifying that the phrase "essential services" referred to "any and all activities that may preserve the health and welfare of persons within [the State of Georgia]."  *Id*. at ¶ 28.  The order then listed several examples of essential services, but the "ability to congregate and worship" was not among them.  *Id*. at ¶ 29. Instead, Governor Kemp suggested that worship leaders "hold worship services via online, call-in, or drive-in services."  *Id*. at ¶ 31.

**C.**     **Plaintiffs' Violation of the Shelter-in-Place Order.**

On April 5, 2020, Bible Way held worship services "where members congregated to worship."  Doc. 10 at ¶ 32.  Plaintiff Porter led the congregation in worship, and Plaintiffs Williams, Singleton, and van Beverhoudt attended the service.  *Id*. at ¶¶ 33-34.

Sometime that day, a Bulloch County Sheriff's Deputy alerted the Georgia State Patrol of the church gathering.  *Id*. at ¶ 36.  Sgt. Thigpen and Cpl. Sowell responded to the alert.  *Id*. at ¶ 37.  Upon arriving at Bible Way, Sgt. Thigpen "approached members outside of the building, including Plaintiffs Williams, Singleton and van Beverhoudt, asking to speak with the pastor when he was done preaching" and stating that it was a "bad idea" to conduct baptisms.  *Id*. at ¶¶ 39-40.  No other interaction is alleged to have occurred between Sgt. Thigpen or Cpl. Sowell and Plaintiffs Williams, Singleton, and van Beverhoudt.

At some point, Cpl. Sowell approached Bible Way's pastor, Plaintiff Porter, who said that he "did not wish to speak to law enforcement."  *Id*. at ¶ 44.  Although Sgt. Thigpen overheard Plaintiff Porter's statement, he approached Plaintiff Porter and "continued trying to obtain 'voluntary compliance.'"  *Id*. at ¶¶ 45-46.  Plaintiff Porter told Sgt. Thigpen that he had a lawyer and then proceeded to call his lawyer.  *Id*. at ¶¶ 46-47.  Sgt. Thigpen spoke with the lawyer, explaining that he was seeking "voluntary compliance," and "that if he was unable to obtain compliance voluntarily, he would be 'mandating compliance.'"  *Id*. at ¶ 47.  After the phone call, Sgt. Thigpen told Plaintiff Porter that "the next time [he and other law enforcement officers] would be taking enforcement action."  *Id*. at ¶ 49.

Although unclear, the complaint seems to indicate that Sgt. Thigpen and Cpl. Powell then left Bible Way and other law enforcement officers came to Bible Way later that day.  *Id*. at ¶ 55.  During this second encounter, Lt. Lacienski approached Plaintiffs Williams, Singleton, and van

Beverhoudt, who informed him that "they did not wish to speak with him."  Doc. 10 at ¶ 53.  Lt. Lacienski demanded that they identify themselves within the next five minutes.  *Id*. at ¶ 54. Plaintiffs Williams, Singleton, and van Beverhoudt informed Lt. Lacienski that they were represented by counsel, but Lt. Lacienski continued attempting to speak with them and ask them questions.  *Id*. at ¶ 60.

Lt. Lacienski then instructed Trooper DiGiacomo to cite Plaintiffs Williams, Singleton, and van Beverhoudt for "reckless conduct pursuant to [Governor] Kemp's executive orders."  *Id*. at ¶ 61.  Trooper DiGiacomo complied and cited them for reckless conduct under O.C.G.A. § 16-5-60, which states that "[a] person who causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his or her act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation is guilty of a misdemeanor."  *Id*. at ¶ 62.  Lt. Lacienski also cited Plaintiff Porter for reckless conduct under O.C.G.A. § 16-5-60.  *Id*. at ¶ 63.  Several months later, the reckless conduct charges were dismissed.  *Id*. at ¶ 64.

## D.    Plaintiffs' Lawsuit

Plaintiffs sued Governor Kemp and the GSP officers in the Superior Court of Bulloch County for First Amendment retaliation, Fourth Amendment violations, violations of their Fifth and Sixth Amendment right to counsel, Ninth Amendment violations, due process violations, equal protection violations, deprivation of the right to assemble under the Georgia Constitution, false imprisonment, equal protection violations under the Georgia Constitution, unreasonable seizure under the Georgia Constitution, violations of Art. I, Sec. I, Para. XXIX of the Georgia Constitution, malicious prosecution, and negligence.  *Id*. at ¶¶ 66-101.  Plaintiffs seek to recover

general damages, compensatory damages, punitive damages,[3] pain and suffering, and attorneys' fees.  Doc. 10 at pp. 26-27.  They also seek a declaration that Governor Kemp and the GSP officers violated their constitutional rights, as well as an injunction enjoining Governor Kemp and the GSP officers from "preventing public comment criticizing government officials in the future."  *Id.* at p. 27.

Governor Kemp and the GSP officers filed an answer in the Superior Court of Bulloch County.  Doc. 1-1 at 56-77.  They then removed the case to this Court.  Doc. 1.  Shortly thereafter, co-Defendant Jason Borne moved to dismiss because Plaintiffs' complaint was an impermissible shotgun pleading.  Doc. 4.  Instead of fixing this deficiency, Plaintiffs filed an amended complaint as a matter of right that added a new claim against co-Defendant Borne for failure-to-intervene.  Doc. 10.  Governor Kemp and the GSP officers now move to dismiss Plaintiffs' claims against them for the reasons set forth below.

### III.     ARGUMENT AND CITATION OF AUTHORITY

**A.     The amended complaint is an impermissible shotgun pleading.**

Rule 8 of the Federal Rules of Civil Procedure provides, in relevant part: "A pleading that states a claim for relief must contain …. a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). "Shotgun pleadings" fail to meet this basic requirement and thus "wreck havoc on the judicial system."  *Wagner v. First Horizon Pharm.*

---

[3] Plaintiffs cannot recover punitive damages for their tort claims against Governor Kemp and the GSP officers for two reasons.  First, the GTCA states that: "No award for damages under this article shall include punitive or exemplary damages or interest prior to judgment."  O.C.G.A. § 50-21-30; *see also Ga. Dep't of Transp. v. Cannady*, 230 Ga. App. 585, 592-93 (1998).  Second, both the Georgia Supreme Court and the United States Supreme Court have held that punitive damages cannot be recovered against the government in tort cases.  *See Martin v. Hospital Authority of Clarke County*, 264 Ga. 626 (1994); *MARTA v. Boswell*, 261 Ga. 427 (1991); *City of Newport v. Fact Concerts*, 453 U.S. 247 (1981).

*Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006).  Shotgun pleadings come in many forms, but they all have a common fatal flaw:  they "fail … to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."  *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015).  Shotgun pleadings are therefore "flatly forbidden by the [spirit], if not the [letter]" of the federal rules.  *Id*. at 1320.

The Eleventh Circuit has described several types of shotgun pleadings, and Plaintiffs' amended complaint fits within at least two of these.  A complaint is in shotgun form when it commits the "mortal sin" of "containing multiple counts where each count adopts all allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint."  *Id*. at 1321.  A complaint is also in shotgun form when it asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."  *Id*. at 1323.  Both deficiencies are present here because: (1) most of the counts in Plaintiffs' amended complaint incorporate all previous allegations, and (2) the amended complaint fails to make clear which allegations and claims pertain to which named defendants and instead repeatedly refers to "Defendants" as a collective whole.  Doc. 10 at ¶¶ 65-101.  For these reasons, Plaintiffs' amended complaint is an impermissible shotgun pleading.  Accordingly, if any claims remain in this matter, the Court should require Plaintiffs to re-plead them in a second amended complaint that complies with Fed. R. Civ. P. 8.

**B.      The Eleventh Amendment and sovereign immunity, and the text of § 1983, bars Plaintiffs' § 1983 claims for monetary damages against Governor Kemp and the GSP officers in their official capacity.**

The Eleventh Amendment bars suit against a state or one of its agencies, departments, or officials (absent a waiver by the state or a valid congressional override) when the state is the real

party in interest or when any monetary recovery would be paid from state funds.[4]  *See Ky. v. Graham*, 473 U.S. 159, 169 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 97-102 (1984).  "The general test for determining whether the state is the real party in interest, even though it is not a named defendant, is whether the relief sought against the nominal defendant would in fact operate against the state." *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1577 (11th Cir. 1994) (citation omitted).  Because the monetary damages that Plaintiffs seek from Governor Kemp and the GSP officers as state employees in their official capacities would, in fact, operate against the State of Georgia, the Eleventh Amendment bars those claims. *See Zatler v. Wainwright*, 802 F.2d 397, 399-400 (11th Cir. 1986).

Plaintiffs' official-capacity claims for money damages fail for the additional reason that § 1983 allows a plaintiff to sue only "person[s]" who violate his civil rights.  *See* 42 U.S.C. § 1983.  In other words, the statutory language of 42 U.S.C. § 1983 "creates no remedy against a State." *Arizonans for Official English*, 520 U.S. at 69.  Federal courts have made clear that a state governmental official or employee acting in his official capacity is not a "person" within the meaning of § 1983. *See, e.g., Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989*).*  Because Governor Kemp and the GSP officers in their official capacity are not a "person" under § 1983, Plaintiffs' official-capacity claims for money damages should be dismissed.

---

[4] There is no state waiver or congressional override for a § 1983 claim.  The State of Georgia has not consented to being sued under § 1983 but instead has preserved its sovereign immunity in the state constitution.  *See* Ga. Const. Art. 1, Sec. II, Par. IX(f) ("No waiver of sovereign immunity … shall be construed as a waiver of any immunity provided to the state or its departments, agencies, officers, or employees by the United States Constitution.").  Additionally, the Supreme Court has held that § 1983 does not override the protections of the Eleventh Amendment. *See Quern v. Jordan*, 440 U.S. 332, 342 (1979); *Stroud v. McIntosh*, 722 F.3d 1294, 1302 (11th Cir. 2013) (distinguishing "immunity from a federal forum," which is waived by removal, from the State's "underlying sovereign immunity," which is not).

**C.**     **Plaintiffs' stand-alone claim for a violation of 42 U.S.C. § 1983 fails as a matter of law.**

Plaintiffs' first cause of action appears to be a 42 U.S.C. § 1983 claim in general.  Doc. 10 at ¶ 66.  But §1983 "is not a source of substantive federal rights." *Williams v. Jefferson County*, 482 Fed. App'x 480, 482 (11th Cir. 2012) (citing *Almand v. DeKalb County, Georgia*, 103 F.3d 1510, 1512 (11th Cir. 1997)); *see also Chapman v. Hous. Welfare Rights Org.*, 441 U.S. 600, 617 (1979) ("[O]ne cannot go into court and claim a 'violation of section 1983'-for section 1983 by itself does not protect anyone against anything.").  Instead, § 1983 "merely provides a method for vindicating federal rights elsewhere conferred." *Skinner v. City of Miami*, 62 F.3d 344, 347 (11th Cir. 1995).  Plaintiffs' stand-alone § 1983 claim should, accordingly, be dismissed.

**D.**     **Plaintiffs fail to state a claim under the First Amendment.**

To state a claim for retaliation under the First Amendment, Plaintiffs must sufficiently allege that: (1) their speech or acts were constitutionally protected, (2) the GSP officers' retaliatory conduct adversely affected the protected speech or acts, and (3) there is a causal connection between the retaliatory actions and the adverse effect.[5]  *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005).  And where, as here, "the claimed retaliation for protected First Amendment conduct is a criminal charge, a constitutional tort action for retaliation will differ … from the standard First Amendment retaliation claim." *DeMartini v. Town of Gulf Stream*, 942

---

[5] Plaintiffs' allegations collectively refer to "Defendants" as a whole.  But the amended complaint does not show that Governor Kemp was present during the incident, so it was impossible for him to have retaliated against Plaintiffs.  Thus, to the extent Plaintiffs assert their retaliation claim against Governor Kemp, this Court should dismiss it for the additional reason that no facts are pleaded showing action by the Governor.

F.3d 1277, 1291 (11th Cir. 2019).  In those cases, the plaintiff must also "plead … the absence of probable cause."  *Nieves v. Bartlett*, 139 S. Ct. 1715, 1723 1724 (2019).

Plaintiffs failed to plead the absence of probable cause.  Doc. 10 at ¶¶ 68-76 (no mention of probable cause).  Nor can they, because Governor Kemp's executive orders required Georgia residents to "shelter in place within their homes or places of residence" unless engaged in "necessary" or "essential" activities, and gathering together to worship was not considered a necessary or essential activity.  Doc. 10 at ¶¶ 21-22.  The orders also explicitly stated that anyone violating them "shall be guilty of a misdemeanor."  *Id*. at ¶ 25.  Because Plaintiffs clearly were not sheltering in place and were not engaged in a "necessary" or "essential" activity, the GSP officers had probable cause to take law enforcement action against them, including the issuance of citations.  Plaintiffs' retaliation claim therefore fails as a matter of law and should be dismissed.

Intertwined within Plaintiffs' retaliation allegations are vague statements that the GSP officers "prevented Plaintiffs from exercising free speech," "chilled Plaintiffs' current and future speech," and engaged in a conspiracy to "deprive Plaintiffs of their rights to assemble and worship."  Doc. 10 at ¶¶ 75-76.  It is therefore unclear whether Plaintiffs are attempting to assert other First Amendment claims in addition to their retaliation claim.  If so, then Plaintiffs have failed to sufficiently plead them and they should be dismissed.

Finally, Plaintiffs also assert a claim under the Georgia Constitution's First Amendment analogue.  Doc. 10 at ¶ 91.  But they only include one allegation for this claim, and it is conclusory: "Defendants' targeting of Bible Way Church and of Plaintiffs engaged in the lawful exercise of their rights to congregate and worship unjustifiably violates their rights of freedom of expression and religion under Art. I, Sec. I, Para. III (freedom of conscience) and Para. IX (right

to assemble and petition) of the Georgia Constitution." *Id.* This is precisely the type of conclusory allegation that cannot survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court should dismiss this claim too for failure to adequately plead a violation of the Georgia Constitution.

**E.       Plaintiffs fail to state a claim for unlawful seizure under the Fourth Amendment.**

The Fourth Amendment protects "[t]he right of the people … against unreasonable searches and seizures." U.S. Const. amend. IV. Under the Fourth Amendment, a law enforcement officer may conduct an "investigative stop" if the officer "has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Reasonable suspicion is a "commonsense, nontechnical" concept that must be assessed on a case-by-case basis. *Ornelas v. United States*, 517 U.S. 690, 695 (1996). It requires less than probable cause and "considerably less" than a preponderance of the evidence. *United States v. Jordan*, 635 F.3d 1181, 1186 (11th Cir. 2011). In fact, reasonable suspicion "need not rule out the possibility of innocent conduct." *United States v. Arvizu*, 534 U.S. 266, 277 (2002).

Pretermitting whether the GSP officers' conduct even amounted to an "investigatory stop," Plaintiffs' Fourth Amendment claim fails because the GSP officers had "articulable suspicion" to conduct that stop.[6] The amended complaint shows that, on April 5, 2020, the GSP officers were notified by a Bulloch County Sheriff's Deputy of a "church gathering" at Bible Way. Doc. 10 at ¶ 36. When the officers arrived, there were 21 vehicles parked at the church,

---

[6] To the extent Plaintiffs intended to bring their Fourth Amendment claim against Governor Kemp, it must be dismissed because there are no allegations that he was present at Bible Way that day.

and the worship services led by Plaintiff Porter were ongoing.  *Id.* at ¶¶ 33, 38, 52.  They

approached and spoke to Plaintiffs Williams, Singleton, and van Beverhoudt, who were standing

outside Bible Way.  *Id.* at ¶ 39.  Because Plaintiffs were physically present on the premises of

Bible Way during worship services—instead of sheltering in place at home—the GSP officers

had "reasonable suspicion" to believe they were violating Governor Kemp's "shelter in place"

order, which is a misdemeanor offense.  This Court should, accordingly, dismiss Plaintiffs'

Fourth Amendment unlawful seizure claim.

     Plaintiffs also assert an unlawful seizure claim under the Georgia Constitution.  Doc. 1 at

¶¶ 93-95.  Like its federal counterpart, Art I., Sec. I, Para. XIII of the Georgia Constitution

allows officers to conduct an investigatory stop when they have "reasonable suspicion" to

believe a crime has occurred.  *See, e.g.*, *Hall v. State*, 309 Ga. App. 179 (2011); *Cox v. State*, 263

Ga. App. 266 (2003).  Plaintiffs' unlawful seizure claim under the Georgia Constitution therefore

fails for the same reason as their unlawful seizure claim under the United States Constitution,

and this Court should dismiss it.

**F.**    **Plaintiffs fail to state a right-to-counsel claim under the Fifth Amendment.**

     The Fifth Amendment guarantees that "[n]o person … shall be compelled in any criminal

case to be a witness against himself."  U.S. Const. amend. V.  Under the Fifth Amendment, once

"a person *in custody* invokes the right to counsel, the police may not subject him to further

interrogation … until counsel has been made available."  *Everett v. Sec'y, Fla. Dep't of Corr.*,

779 F.3d 1212, 1241 (11th Cir. 2015) (emphasis added) (quotations omitted).  A person is "in

custody" when there is "a formal arrest or restraint on freedom of movement of the degree

associated with a formal arrest."  *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (quotation

omitted).  Factors to be considered include "the location of the questioning, its duration,

statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." *Howes v. Fields*, 565 U.S. 499, 509 (2012) (internal citations omitted).  Courts may also consider "the location and duration of the questioning." *United States v. Woodson*, 30 F.4th 1295, 1303 (11th Cir. 2022).  For example, courts are "much less likely to find the circumstances custodial when the interrogation occurs in familiar or at least neutral surroundings." *United States v. Brown*, 441 F.3d 1330, 1348 (11th Cir. 2006).

As an initial matter, Plaintiffs' Fifth Amendment right-to-counsel claims against Governor Kemp, Trooper Malone, Trooper Hammond, Trooper Holloway, and Trooper DiGiacomo fail because there are no allegations that Plaintiffs ever mentioned their lawyers to these individuals.  And Plaintiffs' claim against Sgt. Thigpen and Cpl. Sowell fail because there are no allegations that they asked additional questions after Plaintiff Porter informed them that he had counsel.  And, again, Governor Kemp is not alleged to have been present at Bible Way and so for this reason cannot have violated Plaintiffs' Fifth Amendment rights.

That leaves Plaintiffs' claim against Lt. Lacienski, and that claim fails because the allegations in the amended complaint do not plausibly show that Plaintiffs were ever "in custody."  Lt. Lacienski spoke with Plaintiffs in a familiar (or at least neutral) setting, and there are no allegations indicating that Plaintiffs were not free to leave.  There are no allegations that Lt. Lacienski blocked their access to the parking lot or the church building, told Plaintiffs they could not leave, restricted their movement, used force against Plaintiffs, applied restraints, arrested them, tried to take them down to a station for questioning, drew his weapon, searched their persons, made physical contact with them, or issued any command other than to identify themselves.  Indeed, the gist of the amended complaint is that the officers were attempting to

persuade the members of Bible Way to comply with the Governor's executive orders by ending

their congregation.  Doc. 10 at ¶ 50.  Consequently, Plaintiffs have failed to sufficiently allege

that they were "in custody," which is fatal to their Fifth Amendment right-to-counsel claim

against Lt. Lacienski.

**G.     Plaintiffs fail to state a right-to-counsel claim under the Sixth Amendment.**

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the

right … to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.  The Sixth

Amendment therefore "secures to a defendant who faces incarceration" the right to counsel "at

all critical stages of the criminal process."  *Iowa v. Tovar*, 541 U.S. 77, 87 (2004).  This right to

counsel does not, however, attach "until a prosecution is commenced, that is, at or after the

initiation of adversary judicial criminal proceedings -- whether by way of formal charge,

preliminary hearing, indictment, information, or arraignment."  *McNeil v. Wis.*, 501 U.S. 171,

175 (1991) (internal quotations omitted); *see also Rothgery v. Gillespie County*, 554 U.S. 191,

199 (2008) ("[T]he right to counsel attaches at the initial appearance before a judicial officer").

Here, at the time of the GSP officers' interactions with Plaintiffs, no criminal proceedings

had been initiated.  And Governor Kemp did not have any interactions with Plaintiffs at all.

Plaintiffs' Sixth Amendment right-to-counsel claim therefore fails as a matter of law and should

be dismissed.  *See, e.g.*, *Lumley v. City of Dade City, Fla.*, 327 F.3d 1186, 1195 (11th Cir. 1993)

(Sixth Amendment claim foreclosed because criminal proceedings had not been initiated).

**H.     Plaintiffs fail to state a claim under the Ninth Amendment.**

The Ninth Amendment states that "[t]he enumeration in the Constitution, of certain

rights, shall not be construed to deny or disparage others retained by the people."  U.S. Const.

amend. IX.  This amendment does not, however, provide a cause of action.[7]  *See, e.g.*, *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013) (holding that the Ninth Amendment is "a rule of interpretation rather than a source of rights"); *Jenkins v. Comm'r of Internal Revenue*, 483 F.3d 90, 92 (2d Cir. 2007) (explaining that the Ninth Amendment is a rule of construction rather than an independent source of individual rights); *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991) (holding that the Ninth Amendment "does not confer substantive rights in addition to those conferred by other portions of our governing law"); *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986) (stating that "the [N]inth [A]mendment has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim"); *Metz v. McKinley*, 583 F. Supp. 683, 688 n.4 (S.D. Ga. 1984) ("[T]he Ninth Amendment standing alone houses no constitutional guarantees of freedom.") (citing *Charles v. Brown*, 495 F. Supp. 862 (N.D. Ala. 1980)), aff'd, 747 F.2d 709 (11th Cir. 1984)).  Plaintiffs' claim under the Ninth Amendment should, accordingly, be dismissed.

## I.      Plaintiffs fail to state a substantive due process claim.

The Due Process Clause of the Fourteenth Amendment prohibits States from "depriv[ing] any person of life, or property, without due process of law."  U.S. Const. XIV.  Two kinds of constitutional protections are derived from the Due Process Clause: procedural due process and substantive due process.  *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994) (en banc).  Plaintiffs appear to be asserting a substantive due process claim.  Doc. 10 at ¶ 86.

---

[7] Plaintiffs also assert a similar claim under Art. I, Sec. I, Para. XXIX of the Georgia Constitution, which states that "[t]he enumeration of rights herein contained as a part of this Constitution shall not be construed to deny to the people any inherent rights which they may have hitherto enjoyed."  Doc. 1 at ¶ 94.  Georgia does not appear to recognize a cause of action based on an alleged violation of this provision (whatever that may mean) either.

The substantive component of the Due Process Clause protects those rights that are "fundamental," that is, rights that are "implicit in the concept of ordered liberty." *Chavez v. Martinez*, 538 U.S. 760, 775 (2003); *see also Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (explaining that substantive due process protections are afforded only to fundamental rights and liberties).  If a right merits substantive due process protection, that right is protected "against certain government actions regardless of the fairness of the procedures used to implement them." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).

Here, Plaintiffs allege that Governor Kemp and the GSP officers "engaged in an unlawful deprivation of Plaintiffs' due process rights by effectively criminalizing Plaintiffs' exercise of inalienable rights acknowledged and protected by the Constitution of the United States."[8]  Doc. 10 at ¶ 86.  Plaintiffs do not, however, specify *which* "inalienable rights" they were allegedly deprived of.  For this reason alone, the Court should dismiss their due process claim.  *See, e.g.*, *Worthy v. Phenix City*, 930 F.3d 1206, 1222 (11th Cir. 2019) (affirming the dismissal of the plaintiffs' due process claim for failure to identify the fundamental rights that the defendant allegedly infringed upon because "[plaintiffs] bear the burden of setting forth facts that entitle them to relief").

Additionally, to the extent that Plaintiffs are referring to their rights to assemble and exercise their religion, their right to counsel, or their right to be free from allegedly unlawful seizure, those rights are protected by "a particular Amendment [that] provides an explicit textual source of constitutional protection against a particular sort of government behavior, [and therefore] that Amendment, not the more generalized notion of substantive due process, must be

---

[8] The other allegations in Plaintiffs' due process cause of action are about an alleged violation of the Equal Protection Clause.  That Equal Protection claim is discussed separately in the next section.

the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal

quotations omitted).  The "proper vehicle" for the alleged violation of those is the First

Amendment, Fourth Amendment, and Fifth Amendment themselves, not the Due Process

Clause.  *See, e.g.*, *Cotriss v. City of Roswell*, 2022 U.S. App. LEXIS 17941, *21 (11th Cir.

2022); *see also Jordan v. Mosley*, 298 Fed. App'x 803, 806 (11th Cir. 2008) ("[I]f a more

specific constitutional provision applies, then [a plaintiff] cannot resort to substantive due

process.").  Thus, to the extent that Plaintiffs' due process claim is coextensive with their other

constitutional claims, it should be dismissed.

**J.      Plaintiffs fail to state an Equal Protection claim.**

      The Equal Protection Clause provides that "[n]o State shall … deny to any person within

its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  This clause

"requires that persons similarly situated … be treated alike."  *S&M Brands, Inc. v. Georgia ex

rel. Carr*, 925 F.3d 1198, 1203 (11th Cir. 2019).  Thus, the "threshold inquiry in an Equal

Protection case is whether the plaintiff and the proposed comparator are similarly situated."  *Id.*

To satisfy this threshold inquiry, the plaintiff must identify a proposed comparator and allege

sufficient facts to show that he and the proposed comparator are "prima facie identical in all

relevant respects."  *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007).  "If the plaintiff

has not been treated differently than a similarly situated comparator, no Equal Protection

violation exists."  *S&M Brands, Inc.*, 925 F.3d at 1203.

      Plaintiffs' amended complaint contains scant allegations about their Equal Protection

claim or their basis for the claim.  Doc. 10 at ¶¶ 87-89.  Their theory appears to be that, "[b]y

only enforcing the executive orders against a predominantly African-American church," the GSP

officers violated their Equal Protection rights.  *Id.* at ¶ 87.  But Plaintiffs have failed to identify a

proposed comparator, much less sufficiently allege that they are "identical in all relevant respects." *Griffin Indus.*, 496 F.3d at 1205.  As a result, their Equal Protection claim fails as a matter of law, and this Court should dismiss it.

Plaintiffs also assert an Equal Protection claim under the Georgia Constitution.  Doc. 10 at ¶ 92.  But it should be dismissed for the same reason.  Like its federal counterpart, Georgia's Equal Protection Clause requires a plaintiff to "first establish that he is similarly situated to members of a class who are treated differently than he."  *Walker v. Cromartie*, 287 Ga. 511, 512 (2010).  Plaintiffs have not made this showing.

**K.    Qualified immunity bars Plaintiffs' § 1983 claims for monetary damages against Defendants in their individual capacity.**

This Court should dismiss Plaintiffs' § 1983 claims in Sections C through J for the additional or alternative reason that they are barred by qualified immunity.  Qualified immunity protects governmental defendants sued in their individual capacity so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).  For qualified immunity to apply, defendants must first show that they were acting within the scope of their discretionary authority when the allegedly wrongful acts occurred.  *Id.*  The burden then shifts to the plaintiff to establish that qualified immunity is not appropriate.  *Id.*  To carry that burden, the plaintiff must show that the right asserted was "clearly established."  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  The "salient question" there is whether the state of the law, at the time of the incident, gave the defendants "fair and clear warning" that their conduct was unlawful.  *Id.* at 746.  Liability attaches only if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *United States v. Lanier*, 520 U.S. 259, 270 (1997).

Here, no one disputes that Governor Kemp and the GSP officers were acting within their discretionary authority.  The burden therefore falls to Plaintiffs to show that qualified immunity does not apply.  They cannot, however, meet this burden because pre-existing precedent does not "clearly establish" any constitutional violation in this case.  Qualified immunity therefore bars Plaintiffs' § 1983 claims against Governor Kemp and the GSP officers in their individual capacity.

**L.     Sovereign immunity bars Plaintiffs' state law tort claims for malicious prosecution and negligence.**

The Georgia Tort Claims Act ("GTCA") is the "exclusive remedy for any tort committed by a state officer or employee," and it provides for a limited waiver of the State's sovereign immunity in certain situations.  O.C.G.A. § 50-21-25(a).  The question of whether sovereign immunity has been waived under the GTCA is a threshold issue that must be decided at the outset of the case.  *See, e.g.*, *McConnell v. Ga. Dep't of Labor*, 302 Ga. 18 (2017).  As the party seeking to benefit from the GTCA's limited waiver of sovereign immunity, Plaintiffs bear the burden of establishing a waiver for their tort claims against Governor Kemp and the GSP officers.  *McConnell v. Ga. Dep't of Labor*, 345 Ga. App. 669, 671 (2018).  Plaintiffs cannot meet this burden for the reasons set forth below.

**1.     Governor Kemp and the GSP officers are entitled to official immunity under the GTCA.**

The GTCA is clear that "[a] state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor."  O.C.G.A. § 50-21-25(a).  This provision mandates that the plaintiff "name as a party defendant *only the state government entity* for which the state officer or employee was acting and *shall not name the state officer or employee individually*."  O.C.G.A. § 50-21-25(b) (emphasis

added).  If the plaintiff fails to comply with this requirement and names the state officer or

employee individually, then "the state government entity for which the state officer or employee

was acting must be substituted as the party defendant."  *Id.*

Here, Plaintiffs are suing Governor Kemp and the GSP officers for alleged acts or

omissions that occurred while they were acting within the scope of their official duties as State

officers and employees—specifically, the Governor of the State of Georgia and law enforcement

officers with the Georgia State Patrol.  Plaintiffs were therefore required to bring their tort claims

against the state government entities for which Governor Kemp and the GSP officers acted, not

against Governor Kemp and the GSP officers themselves.  O.C.G.A. § 50-21-25(a).  But

Plaintiffs failed to do so, with the result that Governor Kemp and the GSP officers are entitled to

official immunity under the GTCA.  *See, e.g.*, *Shekhawat v. Jones*, 293 Ga. 468, 470 (2013).

Although the GTCA contemplates substitution of the state government entities (*see* O.C.G.A. §

50-21-25(b)), substitution would be futile here because Plaintiffs still cannot establish a waiver

of sovereign immunity for the reasons set forth below.

**2.      Plaintiffs failed to comply with the GTCA's ante litem notice requirements.**

The GTCA sets forth a detailed procedure that potential plaintiffs must follow before

they can file a lawsuit against the State and effectuate a waiver of sovereign immunity.  *Williams*

*v. Ga. Dep't of Human Res.*, 272 Ga. 624 (2000).  Specifically, under O.C.G.A. § 50-21-

26(a)(1), potential plaintiffs must provide the State with an ante litem notice of their potential

claims within twelve months of the date their losses were discovered or should have been

discovered.  *Bing v. Taylor*, 362 Ga. App. 599, 601 (2022).  The GTCA provides that the notice

"shall be given in writing and shall be mailed by certified mail or statutory overnight delivery,

return receipt requested, or delivered personally to and a receipt obtained from the Risk

Management Division of the Department of Administrative Services. In addition, a copy shall be delivered personally to or mailed by first-class mail to the state government entity, the act or omissions of which are asserted as the basis of the claim." O.C.G.A § 50-21-26(a)(2).

The GTCA then places the burden of proving strict compliance with the statute squarely on plaintiffs by requiring them to attach to their complaint as exhibits "a copy of the notice of claim … together with the certified mail or statutory overnight delivery receipt or receipt for other delivery." O.C.G.A. § 50-21-26(a)(4). "If failure to attach such exhibits to the complaint is not cured within 30 days after the state raises such issue by motion, then the complaint shall be dismissed without prejudice." *Id*.

Here, Plaintiffs failed to comply with the GTCA's ante litem notice requirements for two reasons. *First*, they failed to send an ante litem notice to DOAS, the Georgia State Patrol, or the Office of the Governor of Georgia. They are therefore precluded from filing any tort claims against Governor Kemp and the GSP officers. *See* O.C.G.A. § 50-21-26(a)(3) ("No action against the state under this article shall be commenced and the courts shall have no jurisdiction thereof unless and until a written notice of claim has been timely presented to the state."). *Second*, even if Plaintiffs had given proper notice, they failed to attach the required ante litem notice exhibits to their complaint or amended complaint. As a result, Plaintiffs' tort claims against Governor Kemp and the GSP officers should be dismissed.

### 3. Plaintiffs failed to comply with the GTCA's service requirements.

The service provisions for GTCA tort actions are set forth in O.C.G.A. § 50-21-35. Under those provisions, claimants must "cause process to be served upon the director of the Risk Management Division of the Department of Administrative Services," as well as "the chief executive officer of the state government entity involved." *Id*. Additionally, a copy of the

complaint must be "mailed to the Attorney General at his or her usual office address, by certified mail or statutory overnight delivery, return receipt requested and there shall be attached to the complaint a certificate that this requirement has been met." *Id.*

The Georgia Court of Appeals has confirmed that service of process upon the Director of the RMD of DOAS and the chief executive officer of the state agency is necessary to perfect service of process under the GTCA. *See Green v. Cent. State Hosp.*, 275 Ga. App. 569, 571 (2005); *Sylvester v. Ga. Dep't of Transp.*, 252 Ga. App 31, 32–33 (2001). And the Georgia Supreme Court has confirmed that the requirement for mailing the complaint to the Attorney General is mandatory, although the Court allowed that in some circumstances plaintiffs may accomplish this requirement by amendment. *See Camp v. Coweta Cnty.*, 280 Ga. 199, 203–04 (2006) ("The statute demands that a copy of the complaint be sent to the Attorney General as soon after filing as possible.").

Plaintiffs failed to comply with all three requirements of O.C.G.A. § 50-21-35 because: (1) the Director of the RMD of DOAS has not been served with process, (2) with respect to Plaintiffs' claims against the GSP officers, the chief executive officer of GSP has not been served with process, and (3) Plaintiffs failed to attach to their complaint or amended complaint a certificate stating that they mailed a copy to the Attorney General. Plaintiffs have therefore failed to perfect service of process and mailing/certification as required by the GTCA, such that their tort claims against Governor Kemp and the GSP officers should be dismissed. *See Backensto v. Georgia Department of Transportation*, 291 Ga. App. 293 (2008) (affirming the trial court's dismissal of the lawsuit for failure to comply with the Attorney General mailing requirement); *Green v. Central State Hospital*, 275 Ga. App. 569, 571 (2005) (affirming the dismissal of a tort claim against the Department of Corrections based on the plaintiff's failure to

serve the RMD Director of DOAS);  *Henderson v. Dep't of Transp.*, 267 Ga. 90, 90–91 (1996)

(affirming the trial court's dismissal of the lawsuit when there was no service of process on the

Director of the RMD of DOAS and no mailing of the complaint to the Attorney General).

>    **4.      At least two GTCA exceptions apply.**

In O.C.G.A. § 50-21-24, the General Assembly set forth thirteen exceptions to the

GTCA's limited waiver of sovereign immunity.  *Pelham v. Bd. of Regents of the Univ. Sys. of

Ga.*, 321 Ga. App. 791, 795 (2013).  These exceptions define specific areas where the State has

*not* waived its sovereign immunity.  *Lewis v. Georgia Dep't of Human Res.*, 255 Ga. App. 805,

809–10 (2002).  Thus, if a tort claim falls within the scope of those exceptions, then it is barred

by sovereign immunity.  *Id.*  One such exception is for "losses resulting from …. *Legislative*,

judicial, quasi-judicial, or prosecutorial action or inaction."  O.C.G.A. § 50-21-24(4) (emphasis

added).  Because Plaintiffs appear to be suing Governor Kemp for negligence based on his

issuance of the "shelter-at-home" order (i.e., legislation by the executive branch), Plaintiffs'

claims against Governor Kemp are barred by the exception in O.C.G.A. § 50-21-24(4).

Additionally, another exception exists for "losses resulting from …. the method of providing law

enforcement."  O.C.G.A. § 50-21-24(6).  So to the extent that Plaintiffs are challenging the

methods that the GSP officers used during the encounter, that claim is barred too.

**M.      Plaintiffs fail to state a claim for malicious prosecution or negligence.**

Even if sovereign immunity had been waived for Plaintiffs' tort claims, they would still

fail as a matter of law.  Under Georgia law, malicious prosecution occurs only when there is

"detention with judicial process followed by prosecution."  O.C.G.A. § 51-7-40; *Lagroon v.

Lawson*, 328 Ga. App. 614, 621 (2014).  The amended complaint does not, however, contain any

allegations that Plaintiffs were actually prosecuted for reckless conduct.  Plaintiffs instead allege

that the charges were terminated and the accusations were dismissed.  Doc. 10 at ¶ 97.  As such, their malicious prosecution claim fails as a matter of law.[9]

Plaintiffs' negligence claim fails too.  Their sole allegation for this claim is that Governor Kemp and the GSP officers "breached their legal duties under numerous laws, including the open records act, the Georgia constitution, and public policies of Bulloch County."  Doc. 10 at ¶ 101. This allegation is vague and conclusory; fails to identify the specific laws, policies, and constitutional provisions that allegedly gave rise to a legal duty; and fails to even mention (much less sufficiently plead) the other elements of a negligence claim—breach, causation, injury. Plaintiffs have therefore failed to sufficiently plead a claim for negligence.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (11th Cir. 2019) (explaining that conclusory statements and "legal conclusion[s] couched as a factual allegation" are insufficient to survive a motion to dismiss).

For these reasons, even if sovereign immunity had been waived, Plaintiffs' tort claims should still be dismissed.

**N.      Plaintiffs' request for declaratory and injunctive relief fails as a matter of law.**

Plaintiffs seek "declaratory and injunctive relief, declaring that Defendants violated Plaintiff's [sic] constitutional rights, and enjoining them from preventing public comment criticizing government officials in the future."  Doc. 10 at p. 27.  As explained above, Plaintiffs fail to state a claim for any constitutional violation.  Consequently, they are not entitled to the declaratory judgement they request.  *See, e.g.*, *Sarria Holdings, Inc. v. Walgreen Co.*, 2003 U.S. Dist. LEXIS 28859, *4 (S.D. Fla. Jan. 31, 2003) (dismissing declaratory and injunctive relief where underlying claims were dismissed).  They also are not entitled to the injunctive relief they

---

[9] Even if Plaintiffs could prove a malicious prosecution claim, they would nevertheless be barred from doing so because under O.C.G.A. § 50-21-24(7), sovereign immunity is not waived for losses resulting from malicious prosecution.

request because there are no allegations in the amended complaint that they engaged in "public comment criticizing government officials" or that they were cited with reckless conduct for engaging in "public comment criticizing government officials."[10]  In any event, assuming that Plaintiffs instead meant to obtain an injunction against any future enforcement of Governor Kemp's "shelter at home" order, that order has long been rescinded and is not likely to be re-imposed.  Plaintiffs therefore lack standing to pursue such injunctive relief.  *See, e.g.*, *L.A. v. Lyons*, 461 U.S. 95, 102 (1982) (explaining that standing exists only when the injury or threat of injury is "real and immediate").

**O.      Plaintiff Williams' claims are barred by the statute of limitations.**

Governor Kemp and the GSP officers incorporate by reference and adopt the statute of limitations arguments set forth in Co-Defendant Borne's second motion to dismiss.  Doc. 16.

## IV.      <u>CONCLUSION</u>

For the reasons set forth above, Governor Kemp and the GSP officers respectfully request that the Court grant their motion and dismiss Plaintiffs' claims against them.

Respectfully submitted, this 26th day of September, 2022.

|  |  |
|---|---|
| CHRISTOPHER M. CARR<br>Attorney General | 112505 |
| LORETTA L. PINKSTON-POPE<br>Deputy Attorney General | 580385 |
| ROGER A. CHALMERS<br>Senior Assistant Attorney General | 118720 |

---

[10] Additionally, to the extent that Plaintiffs' requested equitable relief is based on their state law claims, it is barred by sovereign immunity. *See Lathrop v. Deal*, 301 Ga. 408 (2017).  Although the Georgia Constitution was recently amended to waive sovereign immunity for certain equitable relief in certain cases, the waiver applies only to "acts which occur on or after January 1, 2021." Ga. Const. art. I, sect. II, para. V(b)(1).  It therefore does not apply here.

*/s/ Ellen Cusimano* _____
ELLEN CUSIMANO                    844964
Assistant Attorney General

WADE W. HERRING, III              278313
Assistant Attorney General


Ellen Cusimano
State Law Department
40 Capitol Square SW
Atlanta, GA  30334
Tel: (404) 463-8850
Fax: (404) 651-5304
Email: ecusimano@law.ga.gov

## CERTIFICATE OF SERVICE

I certify that I have, on this day, served this brief by electronically filing it with this Court's ECF system, which constitutes service on all attorneys who have appeared in this case and are registered to use the ECF system.

This 26th day of September, 2022.

*/s/ Ellen Cusimano*
Ellen Cusimano