UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | | |
|---|---|---|
| ELI PORTER, FRANCOIS WILLIAMS, MICHAEL SINGLETON, *and* TIMOTHY VAN BEVERHOUDT, | ) ) ) ) ) | |
| *Plaintiffs*, | ) ) | |
| vs. | ) ) | Civil Action File No. |
| SGT. DERRELL THIGPEN, CPL. MATT SOWELL, TFC. JONATHAN MALONE, LT. CHRIS LACIENSKI, TFC2 HAMMOND, TFC3 HOLLOWAY, TFC. AARON DIGIACOMO, DEPUTY JASON MICHAEL BORNE in their individual and official capacities as LEOs, and BRIAN KEMP, in his individual and official capacity as Governor of the State of Georgia, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | 6:22-cv-00057-JRH-BKE |
| *Defendants*. | ) | |

**PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS AMENDED COMPLAINT**

**COME NOW the Plaintiffs** and file this Brief in Response to Defendants' Motion to Dismiss.

Page **1** of **16**

## Statement of Facts and Background

COVID-19 and governmental responses to it have caused suffering and hardships for most of society.[1] Plaintiffs have not only been harmed financially, but some have been deprived of their liberties to the extent that they were prosecuted for engaging in constitutionally protected freedom of worship.

On March 14, 2020, Defendant Kemp issued a "Public Health State of Emergency" and issued various executive orders, depriving the rights of citizens who were not engaged in any crime to remain locked in their homes on house arrest.

Under these "shelter in place" orders, citizens were classified as "essential" or "non-essential," and were not permitted to leave their homes unless they were engaging in an activity that would be deemed "essential" by the government—mainly, Defendant Kemp. The amount of people permitted in one location depended on the purpose for the presence at such location.[2] Further, the Governor unilaterally dictated which citizens, organizations, businesses, and conduct were deemed "essential" or "non-essential." Those which, in Defendant Kemp's eyes, were deemed "non-essential" were only permitted to "engaged in Minimum Basic

---

[1] Complaint, p.1.
[2] Executive Order No. 03.23.20.01 rquired certain persons to "shelter in place," not allowing more than ten people to be gathered , where Executive Order No. 04.02.20.01 prohibited social interactions except in cases where the Governor deemed such travel or conduct to be "essential."

Operations" defined—again unilaterally—by Defendant Kemp within the order.[3]

On April 5, 2020, Plaintiffs engaged in worship at Bible Way Church, including baptisms, which are essential in the spiritual cleansing and outward expression of profession of faith in the Christian faith. To many citizens, religious sacraments and worship are necessary and essential activities, and protected to the highest extent under the federal and state constitutions. Defendants Thigpen, Sowell, Malone, Lacienski, Hammond, Holloway and DiGiacomo then cited Plaintiffs for "reckless conduct" for engaging in worship "according to the dictates of [their] own conscience[s]"[4] pursuant to Defendant Kemp's executive orders.

Defendants now request that this Court dismiss the amended Complaint, while admitting that Defendant Kemp intended that the otherwise lawful exercise of religion be deemed as "non-essential".

## **Argument**

Defendant's Motion should be denied for the following reasons:

As a preliminary matter, Defendant Borne's brief exceeds the page limit permitted under Local Rule 7.1(a), which prohibits brief pages from exceeding 26 pages without prior permission from the Court. While this Court granted a motion for extension of time, the order does not touch on the issue of page limitations.

---

[3] Id.
[4] Ga. Const. Art. I, Sec. I, Para. III

A. **<u>Plaintiff's Complaint is Not a Shotgun Complaint, As It Specifically Lays Out, to the Extent Practicable, the Unconstitutional Actions by the Defendant and the Effects on Plaintiffs and Each Cause of Action</u>**

Defendants attempts to use their own unconstitutional actions, namely, the continuously issued and ever-changing COVID Orders, as a justification for dismissing a Complaint challenging them.

However, Plaintiffs have specifically laid out the standing of each Plaintiff and how each was impacted.[5] Plaintiffs have also laid out how their religious, free speech, equal protection and due process rights were violated by Defendant Kemp's COVID Orders.[6] Further, Plaintiffs have laid out how the provisions of COVID Orders restricting travel, association, and business operation harm Plaintiffs and violate the law.[7]

Georgia is a "notice pleading" state, so Plaintiffs' only obligation is to put the Defendant on notice of what the alleged conduct is giving rise to the Complaint. The Complaint clearly alleges that Defendant's COVID Orders are the impetus behind the case at bar, and that the COVID Orders (which Defendant has admitted he is still issuing and changing) are the specific actions that are both illegal, and that are unconstitutional and caused harm to Plaintiffs. This is

---

[5] Complaint, ¶ 26-37.
[6] Complaint, ¶ 46-47.
[7] Complaint, ¶ 48-51.

particularly true given that this was a targeted case of a predominantly African-American Christian Church, where no evidence has yet to be provided that such prosecutions were sought in other religious institutions, or other forms of gatherings for purposes other than worship. There is also yet to be evidence that any individual prosecuted or gathered at Bible Way on the date in question was contaminated, or even exposed to COVID-19, and therefore a threat to public safety.

While Georgia law provides for quarantining of sick individuals, it does not provide for the shutdown of society, business or religious conduct that would otherwise be lawful because of a risk that people may ***potentially*** get sick. This is even truer regarding individuals who know the risks they are taking and voluntarily engage in the risks for the sake of their faith, and doing so within their own organization.

### B. <u>Plaintiffs engaged in lawful religious activity that is protected in the Federal and State Constitutions, which was essential whether or not acknowledged by Defendants.</u>

The Constitution of the State of Georgia is explicitly clear that "[e]ach person has the ***natural*** and ***inalienable*** right to worship God, each according to the dictates of that person's own conscience; and ***no human authority should, in any case, control or interfere with such right of conscience***." Ga. Const. Art. I, Sec. I,

Para. III (emphasis added). Where a restriction is content-based or targets religious activity, such restriction must withstand strict scrutiny. <u>Roman Catholic Diocese of Brooklyn v. Cuomo</u>, 141 S.Ct. 63 (2020).

Under a strict scrutiny analysis, the government must show that the restriction of an inherent right is narrowly tailored to further a compelling government interest. <u>Id.</u> at 67. In the present case, reading the entirety of Defendants' brief makes it blatantly clear that the restrictions in the COVID orders were not only content-based, but also targeted toward worship and not for general applicability.

First, the orders segregate permissible vs. impermissible conduct or purposes for gatherings, where certain things were "essential," while all else was deemed "non-essential." Further, Defendants boastingly admit that religious activities were meant to be excluded from permitted conduct:

> [Plaintiffs cannot meet probable cause requirements] because Governor Kemp's executive orders required Georgia residents to "shelter in place within their homes or places of residence" unless engaged in "necessary" or "essential" activities, and gathering together to worship was not considered a necessary or essential activity.[8]

Given this admission, Defendants, including Defendant Kemp, admit that engaging in traditionally-recognized religious activity protected under the Constitutions of

---

[8] Motion to Dismiss p. 10.

the United States and of the State of Georgia was now a violation of law and punishable under threat of criminal prosecution!

Defendant's COVID Orders are unable to survive even rational basis scrutiny. If every person is a potential disease vector, there is no rationality in allowing favored businesses or industries to operate and spread a disease while preventing people from other businesses or industries to do so. Indeed, politically calculated motivations in both creating a false sense of security and/or helping favored businesses remain profitable while shuttering small businesses, do not even pass a rational basis standard of review.

### C. **While the Governor was provided certain emergency powers, the Georgia Constitution does not authorize the suspension of inalienable rights in cases of health emergencies, thus rendering the COVID orders constitutionally invalid.**

The Georgia Constitution only provides limited ability for the State to suspend rights pursuant to an emergency. This provision is held in Article I, Section I, Paragraph XV, which states that "[t]he writ of habeas corpus shall not be suspended unless, in case of rebellion or invasion, the public safety may require it." It is clear, then, that one of two condition precedents are required in such a case to suspend a right for the sake of public safety: (a) rebellion, or (b) invasion. The COVID-19 pandemic does not meet either of these requirements. If assuming *arguendo* that one such condition were met, it would only permit the Governor to

suspend the right to petition for a writ of habeas corpus. It would not, however, extend to all rights, and *especially* those rights which are inalienable to every citizen.

### D. Defendant's Actions are Clearly Ultra Vires and Violate the Separation of Powers

Permissible actions by the State of Georgia in combating a dangerous disease are, broadly, contained within Title 31 of the O.C.G.A. Specifically, "…department and all county boards of health may, from time to time**, require the isolation or segregation of persons with communicable diseases or conditions likely to endanger the health of others**…"(emphasis added)[9]

Note that the law, enacted by the General Assembly, explicitly did not allow for regulation, control, quarantine, or restrictions of people that did NOT have a communicable disease or conditions likely to endanger the health of others. In contrast, Defendant Kemp's executive orders were not limited to those people who were authorized by the law to be segregated (namely, those **with** diseases or conditions). Instead, they were tailored to effect people who **could get** a disease or condition, and they were done so in an arbitrary matter. Certain businesses were allowed to operate (and thereby, those people were allowed to make money and to work), while others were considered non-essential and had other requirements. This

---

[9] O.C.G.A. § 31-12-4.

is a violation of separation of powers and it should be strictly enforced against Defendant.[10]

Here, it is also beyond question that Defendant Kemp's orders created new law. This is, as in other cases, an unconstitutional delegation of legislative authority for convenience's sake.[11]

### E. **Plaintiffs Effectively Pleaded a First Amendment Claim in their Complaint.**

Defendants attempt to limit the concept of freedom of speech and assembly, as well as limiting and confusing the definitions of typically understood words and phrases. Specifically, Defendant Kemp claims that because he was not present while Plaintiffs were being prosecuted pursuant to his orders—even after admitting in his own Motion to Dismiss that he intended that worship not be deemed "essential,"—then Defendant Kemp cannot be held liable for the violation of Plaintiffs' inalienable rights under the First Amendment, nor their prosecution for engaging in such rights. However, Defendant Kemp is admitting that he set the policy: an unconstitutional one.

---

[10] Etkind v. Suarez, 271 Ga. 352, 353, 519 S.E.2d 210, 212 (1999).

[11] "A statute will be held unconstitutional as an improper delegation of legislative power if it is incomplete as legislation and authorizes an executive board to decide what shall and what shall not be an infringement of the law, because any statute which leaves the authority to a ministerial officer to define the thing to which the statute is to be applied is invalid.' 16 Am.Jur.2d 506, Constitutional Law, s 257.' Sundberg v. State, supra, p. 483, 216 S.E.2d p. 333." Howell v. State, 238 Ga. 95, 95, 230 S.E.2d 853, 854 (1976).

Plaintiffs contend that Defendant Kemp's COVID Orders restrict socializing and worshiping at private and public locations, and Defendant Kemp responds that his absence necessarily requires dismissal of the First Amendment Claim. Defendant Kemp further asserts that the retaliation or chilling of speech be in the form of criminal prosecution, and for this reason also he should not be liable for such retaliation. Defendant Kemp fails to mention, however, that his COVID orders clearly stated that violation of such orders would be punishable as a misdemeanor, and then authorized state troopers to enforce said orders. The remaining Defendants, therefore, were simply acting as Defendant Kemp's agents and doing his bidding in locking down peaceful, healthy citizens engaged in constitutionally-protected worship.

When considering a Motion to Dismiss, all ambiguities should be construed in favor of the Plaintiff.[12] Here, all citizens of Georgia, including Plaintiffs, were prevented from "socializing" with others and conducting fellowship pursuant to their faith. Socializing would include, but not be limited to, religious gatherings essential to the exercise of one's faith. In this case, Plaintiffs were gathered in fellowship and abiding by their commandment by God to engage in baptisms, which cannot

---

[12] A motion to dismiss should be granted only where "the allegations of the complaint, when construed in the light most favorable to the plaintiff with all doubts resolved in the plaintiff's favor, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts. Toomer v. Allstate Ins. Co., 292 Ga. App. 60, 63, 663 S.E.2d 763, 766 (2008).

reasonably be done without some congregating and lack of social distancing, nor can it be held in a parking lot where the Church is not equipped to perform baptisms.

## F. **Plaintiffs' Claims under the Fourth and Fourteenth Amendments Survive, as Plaintiffs were Effectively Seized from being able to Move or Travel, and were Arrested and Criminally Prosecuted for Engaging in Worship**

Defendants' arguments rest on the premise that officers had reasonable, articulable suspicion for an investigatory stop because cars were parked in the parking lot of a church, and that they were justified in arresting Plaintiffs for violating Defendant Kemp's "shelter in place" order. For the reasons already stated, the COVID orders were unconstitutional as they applied to suspension of the right to engage in worship, fellowship, or other religious sacraments, and cars parked in a parking lot does not rise to the level of "reasonable, articulable suspicion" to presume that citizens in a free nation are violating any law.

Finally, Defendant Kemp's unilateral taking of the right to worship without due process of law also establishes a Fourteenth Amendment claim, and the enforcement of such unconstitutional order by law enforcement officers who swore to uphold and defend the Constitution of the United States and of the State of Georgia also violated those rights.

### G. Because of the unconstitutional conduct regarding violation of rights under well-established law, Defendants cannot claim immunity.

Defendant Borne claims immunity, with the premise of this argument being that his conduct was not unconstitutional. Plaintiffs incorporate the foregoing arguments on the unconstitutionality of the policies, restrictions, and conduct of all Defendants involved in this litigation. Because of the unconstitutional policies, restrictions and conduct, Defendants cannot claim immunity for violating Plaintiffs' rights which are well-established under the law, and explicitly protected under both the State and Federal Constitutions.

### H. Plaintiffs' Claims are not barred by the Statute of Limitations

Defendant Borne claims that Plaintiff Williams's claims are barred by the statute of limitation because he was added to the amended complaint. However, because the federal rules adopt state laws regarding statute of limitations laws, as pointed out by Defendant Borne, Plaintiff Williams's claim relates back to the time of the original filing of the initial complaint, which was filed within the time permitted by law. Toomer v. Metro Ambulance Services, Inc., 364 Ga.App. 469 (2022) (quoting Tenet Healthsystem GB, Inc. v. Thomas, 304 Ga. 86 (2018), stating that an amended complaint "relates back to the date of the original pleading" when it "arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading") (see also Morris v. Chewning, 201 Ga. App. 658

(1991) (stating the idea for allowing the amendment to relate back to the original time of filing is that the defendant is given "fair notice of the conduct, transaction, or occurrence to the rise of the amended complaint"). In any case, Georgia's relation-back law is "liberally construed in favor of allowing amendments." <u>Deering v. Keever</u>, 282 Ga. 161 (2007).

Respectfully submitted this 25th day of October, 2022.

<u>/s/ Jessica Burton</u>
Jordan Johnson
Georgia State Bar No. 673643

Jessica Burton
Georgia State Bar No. 916253
Attorneys for Plaintiff

Bernard & Johnson, LLC
5 Dunwoody Park
Suite 100
Atlanta, GA  30338
404.477.4755
404.592.9089 (Fax)
Alex@Justice.Law
Jessica@Justice.Law

Kevin Gough
Georgia State Bar No. 303210
Attorney for Plaintiff

Kevin Gough Firm, LLC
P.O. Box 898
501 Gloucester Street, Suite 121

Brunswick, GA 31521
Phone: (912) 266-5454
Fax: (912) 480-9280
Kevingough.firm@gmail.com

**CERTIFICATE OF SERVICE**

Undersigned counsel hereby certifies that the foregoing Plaintiffs' Initial Disclosures has been submitted to the Clerk of Court using the CM/ECF e-filing system and served upon Defendants' counsel of record:

Amelia C. Stevens, Esq.
Pat T. O'Conor, Esq.
Oliver Maner LLP
218 West State Street
Savannah, GA 31401
astevens@olivermaner.com
pto@olivermaner.com

Angela Ellen Cusimano, Esq.
Georgia Department of Law
40 Capitol Square, SW
Atlanta, GA 30334-1300
ecusimano@law.ga.gov

This 25th day of October, 2022.

/s/ Jessica Burton
Jordan Johnson
Georgia State Bar No. 673643

Jessica Burton
Georgia State Bar No. 916253
Attorneys for Plaintiff

Bernard & Johnson, LLC
5 Dunwoody Park
Suite 100
Atlanta, GA 30338
404.477.4755
404.592.9089 (Fax)

Alex@Justice.Law
Jessica@Justice.Law