IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

ELI PORTER; FRANCOIS WILLIAMS;      *
MICHAEL SINGLETON; and TIMOTHY      *
VAN BEVERHOUDT,                     *
                                    *
        Plaintiffs,                 *
                                    *        CV 622-057
        v.                          *
                                    *
SGT. DERRELL THIGPEN, et al.,       *
                                    *
        Defendants.                 *

---

**O R D E R**

---

Presently pending before the Court is Defendant Jason Michael
Borne's second motion to dismiss (Doc. 19)[1] and Defendants Kemp,
Thigpen, Sowell, Malone, Lacienski, Hammond, Holloway, Digiacomo's
(collectively, the "State Defendants") motion to dismiss (Doc.
17).  For the following reasons, Defendants' motions are **DENIED AS
MOOT.**

## I. BACKGROUND

Plaintiffs Eli Porter, Francois Williams, Michael Singleton,
and Timothy van Beverhoudt originally filed suit in the State Court
in Bulloch County, and it was removed to this Court on August 4,

---

[1] Defendant Borne re-filed his second motion to dismiss to change the font of
the motion to comply with this Court's Local Rules.  Based on this, the Court
will construe Doc. 19 as the operative motion and Doc. 16, the originally filed
motion, is **DENIED AS MOOT.**

2022. (Doc. 1.) Then on August 22, 2022, Plaintiffs filed an Amended Complaint. (Doc. 10.) Plaintiffs bring thirteen claims: (1) 42 U.S.C. § 1983 Deprivation of Civil Rights; (2) 42 U.S.C. § 1983 Retaliation and Chilling; (3) 42 U.S.C. § 1983 Fourth Amendment Violation; (4) 42 U.S.C. § 1983 Violation of Fifth and Sixth Amendments; (5) 42 U.S.C. § 1983 Violation of Ninth Amendment; (6) 42 U.S.C. § 1983 Violation of Due Process; (7) Deprivation of Right to Freedom of Speech Under Georgia Constitution and False Imprisonment; (8) Violation of Equal Protection Under Georgia Constitution; (9) Violation of Unreasonable Seizure Under Georgia Constitution; (10) Malicious Prosecution; (11) Failure to Intervene; (12) Negligence; and (13) Punitive Damages. (Id. at 17-26.)

The alleged underlying events are as follows. On March 14, 2020, Defendant Kemp, Governor of the State of Georgia, issued Executive Order No. 03.14.20.01 (the "March 14th Order") declaring a Public Health State of Emergency due to COVID-19. (Id. at 5-6.) The March 14th Order provided that state agencies take actions necessary to protect the public's health, including implementing quarantines, isolation, and other necessary interventions. (Id. at 6.) Then on March 23, 2020, Defendant Kemp issued Executive Order No. 03.23.20.01 (the "March 23rd Order") which ordered a shelter in place, prohibiting businesses and non-profits from having more than ten people gathered at a single location where

2

people stand or sit within six feet of each other. (Id.) The
March 23rd Order "also authorized the Department of Public Health
'to mandate the closure of any business . . . [or] non-profit
corporation' who failed to comply." (Id. at 7.) Then on April 2,
2020, Defendant Kemp issued Executive Order No. 04.02.20.01 (the
"April 2nd Order") which ordered all residents to practice social
distancing and to shelter in place within their homes and
residences unless engaged in certain activities Defendant Kemp
deemed to be "necessary" or "essential." (Id.) There was no
exception provided for religious activities, and religion was not
deemed "necessary" or "essential." (Id. at 8.) The April 2nd
Order stated that any person who violated it would be guilty of a
misdemeanor, and it permitted "officials" to enforce it. (Id. at
8-9.) On April 3, 2020, Defendant Kemp issued Executive Order No.
04.03.20.01 (the "April 3rd Order"), authorizing sheriffs and
their deputies to enforce the April 2nd Order. (Id. at 9.) The
same day, he issued Executive Order No. 04.03.20.02 (the "Second
April 3rd Order") to clarify some of the terms in the April 3rd
Order. (Id.) The Second April 3rd Order explicitly authorized
officials to mandate the closure of any business or non-profit
organization that did not comply with the April 2nd Order. (Id.
at 10.)

On April 5, 2020, Redeeming Church of God the Bible Way
("Bible Way") conducted worship services, led by pastor Plaintiff

3

Porter.  (Id. at 5, 10-11.)  Plaintiffs Williams, Singleton, and
van Beverhoudt were in attendance that day.  (Id. at 11.)  Bible
Way has a predominately minority congregation composed of mainly
African American members.  (Id.)  On that day, a Bulloch County
Sheriff's Deputy alerted the Georgia State Patrol ("GSP") of the
church gathering at Bible Way, and in response, Defendants Thigpen
and Sowell arrived at Bible Way in an attempt to shut down
services.  (Id.)  While church members were inside, Defendant
Sowell wrote down license plate information of every car in the
parking lot.  (Id.)  Defendant Thigpen approached church members
outside of the building, including Plaintiffs Williams, Singleton,
and van Beverhoudt, asking to speak with the pastor when he was
finished preaching.  (Id. at 12.)  He also called for Bulloch
County Sheriff's deputies to assist with enforcing the compliance
of Defendant Kemp's COVID-19 orders.  (Id.)  While awaiting backup,
Defendants Thigpen and Sowell approached many Bible Way members
seeking the identity of the pastor; however, the members refused
to speak with them.  (Id.)  Defendant Sowell then approached
Plaintiff Porter, who expressed to Defendant Sowell he did not
wish to speak to law enforcement and made him aware he was
represented by legal counsel.  (Id. at 13.)  Despite these
statements, Defendant Thigpen approached Plaintiff Porter and
attempted to obtain "voluntary compliance," and also spoke with
Plaintiff Porter's attorney, Jum Puentes, over the phone and

informed him the officers were seeking "voluntary compliance" and that if they were unable to obtain such, the officers would be "mandating compliance" with Defendant Kemp's Executive Orders. (Id.) Defendant Thigpen told Plaintiff Porter the next time the officers came back to Bible Way they would take enforcement action. (Id. at 14.) The reports filed by the officers that day took issue with the number of people congregated inside the building; however, the only people cited with violation of law were those initially stopped outside. (Id. at 15-16.) Defendant Lacienski instructed Defendant DiGiacomo to issue citations to Plaintiffs Williams, Singleton, and van Beverhoudt for reckless conduct, in violation of O.C.G.A. § 16-5-60, and he complied with the instructions. (Id. at 16.) Defendant Lacienski then issued a citation for reckless conduct under O.C.G.A. § 16-5-60 to Plaintiff Porter. (Id.) In July 2021, the reckless conduct charges against Plaintiffs were dismissed. (Id. at 17.)

The State Defendants move to dismiss the Amended Complaint for failure to state a claim for relief and Defendant Borne moves to dismiss for failure to state a claim and failure to properly plead. (Docs. 17, 19.) The Court addresses the motions below.

## II. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v.

Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Court need not accept the pleading's legal conclusions as true, only its well-pleaded facts. Id. at 677-79. Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)).

## III. DISCUSSION

As a preliminary matter, the State Defendants argue Plaintiffs' Amended Complaint is an impermissible shotgun pleading. (Doc. 17-1, at 6.) They argue that most of Plaintiffs' counts incorporate all previous allegations, and the Amended Complaint fails to make clear which allegations and claims pertain to which Defendant, instead referring to "Defendants" as a collective whole. (Id. at 7.) Defendant Borne moved to dismiss Plaintiffs' Amended Complaint on the same basis. (Doc. 19, at 18.) In response, Plaintiffs argue they did not file a shotgun pleading because they specifically laid out the standing of each Plaintiff and how each was impacted, and Georgia is a "notice pleading" state so their only obligation is to put Defendants on notice of the alleged conduct giving rise to the claims. (Doc. 21, at 4.)

The Eleventh Circuit is particularly opprobrious of what are known as "shotgun pleadings," or pleadings that violate Rules 8(a)(2) or 10(b). See Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1320-21 (11th Cir. 2015) (recognizing the Eleventh Circuit's "thirty-year salvo of criticism aimed at shotgun pleadings"); Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018) ("Courts in the Eleventh Circuit have little tolerance for shotgun pleadings."). There are four types of shotgun pleadings: first, those "containing multiple counts where

7

each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before . . . ." *Weiland*, 792 F.3d at 1321. The second type is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. Third are those that do not separate each claim into a separate count. *See id.* at 1322-23. Fourth is the "relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts . . . or which of the defendants the claim is brought against." *Id.* at 1323.

After reviewing Plaintiffs' Amended Complaint, the Court finds it certainly commits the sins of a shotgun pleading. (*See* Doc. 10.) First, all of the claims reincorporate all previous allegations. (*Id.* at 17-26.) Second, none of the claims specify which Defendants they are against. Plaintiffs allege their rights "were violated by Defendants," they "were unlawfully seized by Defendants," "Defendants charged Plaintiffs with crimes," and "Defendants violated Plaintiffs' Ninth Amendment rights," just to point out a few of the conclusive allegations. (*Id.* at 17, 20-21.) These generalized grievances continue throughout the Amended Complaint and illustrate that Plaintiffs have committed the fourth sin by failing to specify which Defendants are responsible for which alleged acts. *See Weiland*, 792 F.3d at 1323. The purpose of Rules 8(a)(2) and 10(b) is to allow a defendant to discern what

a plaintiff is claiming and frame a responsive pleading and to allow the Court to determine whether a plaintiff has stated a claim for which relief can be granted. See id. at 1320. The Court is not required to "sift through the facts presented and decide for [itself] which [are] material." Beckwith v. Bellsouth Telecomms. Inc., 146 F. App'x 368, 372 (11th Cir. 2005) (quotation and citation omitted). Shotgun pleadings, like Plaintiffs' Amended Complaint, frustrate this policy.

"When faced with a shotgun pleading, a district court must sua sponte give the plaintiff at least one chance to replead a more definitive statement of [his] claims before dismissing [his] case with prejudice." Embree v. Wyndham Worldwide Corp., 779 F. App'x 658, 662 (11th Cir. 2019) (citing Vibe Micro, 878 F.3d at 1296). The Court has found the Amended Complaint to be a shotgun pleading and will not address Defendants' other arguments for dismissal as it would be impossible to ascertain the accuracy of the arguments without knowing which claims are against which Defendants. As such, Plaintiffs shall have an opportunity to replead their complaint before it is dismissed for failing to comply with Rules 8(a)(2) and 10(b).[2] Plaintiffs should take care to eliminate extraneous material from the complaint and ensure it is clear to which Defendant particular factual allegations apply.

---

[2] The Court notes Plaintiffs have already amended their complaint once as a matter of course.

## IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Plaintiffs shall file a second amended complaint within **FOURTEEN (14) DAYS** from the date of this Order.   Having given Plaintiffs an opportunity to amend their complaint, Defendants' motions to dismiss (Docs. 16, 17, 19) are **DENIED AS MOOT.**

**ORDER ENTERED** at Augusta, Georgia, this ____6th____ day of June, 2023.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA