UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | | |
|---|---|---|
| ELI PORTER, FRANCOIS WILLIAMS, MICHAEL SINGLETON, *and* TIMOTHY VAN BEVERHOUDT, | ) ) ) ) | |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | |
| vs. | ) | Civil Action File No. |
| | ) | |
| SGT. DERRELL THIGPEN, | ) | 6:22-cv-00057-JRH-BKE |
| CPL. MATT SOWELL, | ) | |
| TFC. JONATHAN MALONE, | ) | |
| LT. CHRIS LACIENSKI, | ) | |
| TFC2 HAMMOND, | ) | |
| TFC3 HOLLOWAY, | ) | |
| TFC. AARON DIGIACOMO, | ) | |
| DEPUTY JASON MICHAEL BORNE | ) | |
| in their individual and official | ) | |
| capacities as LEOs, and BRIAN | ) | |
| KEMP, in his individual and official | ) | |
| capacity as Governor of the State of | ) | |
| Georgia, | ) | |
| | ) | |
| *Defendants*. | ) | |

## <u>SECOND AMENDED COMPLAINT</u>

NOW COMES Plaintiffs, ELI PORTER ("Plaintiff Porter"), FRANCOIS

WILLIAMS ("Plaintiff Williams"), MICHAEL SINGLETON ("Plaintiff

Singleton"), and TIMOTHY VAN BEVERHOUDT ("Plaintiff van Beverhoudt"),

(together "Plaintiffs"), and file this Second Amended Complaint, pursuant to Rule 15(b) of the Federal Rules of Civil Procedure and the Court's Order dated June 6, 2023, showing the Court as follows:

1.

Defendant SGT. DERRELL THIGPEN ("Defendant Thigpen") is one of the persons who is subject to the jurisdiction and venue of this Court and individually harmed Plaintiff in this manner, and was the sergeant in charge and a responding LEO with the Georgia State Patrol during the acts alleged herein, and he may be served at 1337 Register Mullis Road, Rentz, GA 31075.

2.

Defendant CPL. MATT SOWELL ("Defendant Sowell") is one of the persons who is subject to the jurisdiction and venue of this Court and individually harmed Plaintiff in this manner, and was the corporal in charge and a responding LEO with the Georgia State Patrol during the acts alleged herein, and he may be served personally at work at State Trooper Post 45 in Statesboro at 10723 U.S. 301 South, Statesboro GA 30458.

3.

Defendant TFC. JONATHAN MALONE ("Defendant Malone") individually harmed Plaintiff in this manner, and was a Trooper First Class responding LEO with

the Georgia State Patrol during the acts alleged herein, and he may be served at 340

Castlegate Road, Macon GA 31210.

4.

Defendant LT. CHRIS LACIENSKI ("Defendant Lacienski") individually

harmed Plaintiff in this manner, and was the lieutenant in charge and a responding

LEO with the Georgia State Patrol during the acts alleged herein, and he may be

served at 1003 Morning Dove Ct, Statesboro GA 30461.

5.

Defendant TFC2 HAMMOND ("Defendant Hammond") individually harmed

Plaintiff in this manner, and was Trooper First Class and responding LEO with the

Georgia State Patrol during the acts alleged herein, and he may be served at State

Trooper Post 45 in Statesboro at 10723 U.S. 301 South, Statesboro GA 30458.

6.

Defendant TFC3 HOLLOWAY ("Defendant Holloway") individually harmed

Plaintiff in this manner, and was Trooper First Class and responding LEO with the

Georgia State Patrol during the acts alleged herein, and he may be served at State

Trooper Post 45 in Statesboro at 10723 U.S. 301 South, Statesboro GA 30458.

7.

Defendant TFC AARON DIGIACOMO ("Defendant DiGiacomo")

individually harmed Plaintiff in this manner, and was Trooper First Class and

responding LEO with the Georgia State Patrol during the acts alleged herein, and he

may be served a State Trooper Post 45 in Statesboro at 10723 U.S. 301 South,

Statesboro GA 30458.

8.

Defendant DEPUTY JASON MICHAEL BORNE ("Defendant Borne")

individually harmed Plaintiff in this manner, and was a Bulloch County Sheriff's

Deputy and a responding LEO during the acts alleged herein, and he may be served

at State Trooper Post 45 in Statesboro at 10723 U.S. 301 South, Statesboro GA

30458.

9.

Defendant BRIAN KEMP ("Defendant Kemp") individually harmed Plaintiff

in this manner, and the Governor of the State of Georgia who issued various

executive orders that were being enforced during the acts alleged herein, and he may

be served at 206 Washington Street, 111 State Capitol, Atlanta GA 30334.

9.5

Due to the "Order Declaring Statewide Judicial Emergency" (as extended)

entered on March 14, 2020, the statute of limitations for filing this action was tolled

for the duration of the Order, extending the deadline an equal amount of time.

## <u>FACTUAL BACKGROUND FOR CLAIMS</u>

10.

Plaintiff ELI PORTER ("Plaintiff Porter") is a resident of Bulloch County and was a pastor conducting worship services for Redeeming Church of God the Bible Way ("Bible Way") on April 5, 2020 and is subject to this Court's jurisdiction.

11.

Plaintiff FRANCOIS WILLIAMS ("Plaintiff Williams") is a resident of Bulloch County and was a member of Bible Way engaging in worship on April 5, 2020 and is subject to this Court's jurisdiction.

12.

Plaintiff MICHAEL SINGLETON ("Plaintiff Singleton") is a resident of Bulloch County and was a member of Bible Way engaging in worship on April 5, 2020 and is subject to this Court's jurisdiction.

13.

Plaintiff TIMOTHY VAN BEVERHOUDT ("Plaintiff van Beverhoudt") is a resident of Bulloch County and was a member of Bible Way engaging in worship on April 5, 2020 and is subject to this Court's jurisdiction.

14.

On March 14, 2020, Defendant Kemp, as Governor of the State of Georgia,

issued Executive Order No. 03.14.20.01 declaring a Public Health State of

Emergency in Georgia due to COVID-19.

15.

In Executive Order No. 03.14.20.01, Defendant Kemp ordered that "all

resources of the State of Georgia shall be made available to assist in activities

designed to address this emergency, control the spread of COVID-19, and aid

recovery efforts."

16.

In Executive Order No. 03.14.20.01, Defendant Kemp also ordered that the

Georgia Department of Public Health coordinate with the Georgia Emergency

Management and Homeland Security Agency to "take any action necessary to protect

the public's health," including "[e]stablishing protocols to control the spread of

COVID-19" and "[i]mplementing quarantine, isolation, and other necessary public

health interventions[.]"

17.

On March 23, 2020, Defendant Kemp issued Executive Order No. 03.23.20.01

requiring certain persons to shelter in place, prohibiting businesses and non-profits to

allow more than ten (10) persons to be gathered at a single location where the

gathering requires persons to stand or "be seated within six (6) feet of any other

person."

18.

Defendant Kemp's Executive Order No. 03.23.20.01 also authorized the Department of Public Health "to mandate the closure of any business . . . [or] non-profit corporation" who failed to comply with the Order.

19.

On April 2,2020, Defendant Kemp issued Executive Order No. 04.02.20.01, ordering "[a]ll residents and visitors of the State of Georgia" to "practice social distancing" in accordance with the Order and Center for Disease Control and Prevention ("CDC") guidelines.

20.

Order No. 04.02.20.01 also prohibited businesses and non-profits to allow "more than ten (10) people to be gathered at a single location if such gathering requires persons to stand or to be seated within six (6) feet of any other person," which provided no exception for religious gatherings.

21.

Order No. 04.02.20.01 also ordered residents and visitors of the State of Georgia" shelter in place within their homes or places of residence" unless engaged in certain activities in which Defendant Kemp, on behalf of the State of Georgia,

deemed to be "necessary" or "essential."

22.

Defendant Kemp provided no exception to this "shelter in place" order for religious activities, nor did he include it as one of the activities deemed "necessary" or "essential".

23.

Defendant Kemp also mandated that businesses and non-profits engage in screening procedures that would prohibit public participation in activities within the business or non-profit organization, leaving no exceptions for religious activities or places of worship.

24.

Defendant Kemp's Executive Order No. 04.02.20.01 explicitly stated that nothing within the Order "shall be construed to suspend or limit the sale, dispensing, or transportation of firearms or ammunition, or any component thereof," but did not find it necessary to explicitly state that the Order shall not be construed to prohibit or limit the individual right to worship God to the dictates of his own conscience pursuant to the First Amendment of the United States Constitution and Art. I, Sec. I, Para. III of the Constitution of the State of Georgia.

25.

Defendant Kemp's Executive Order No. 04.02.20.01 explicitly stated that "any person who violates this Order shall be guilty of a misdemeanor," effectively criminalizing the exercise of worship as a congregation as mandated by many faiths in the State of Georgia.

26.

Defendant Kemp's Executive Order No. 04.02.20.01 also permitted "officials" to enforce the Order.

27.

On April 3, 2020, Defendant Kemp issued Executive Order No. 04.03.20.01, authorizing sheriffs and their deputies to enforce Executive Order No. 04.02.20.01.

28.

On April 3, 2020, Defendant Kemp also issued Executive Order No. 04.03.20.02 in order to clarify certain terms or requirements in Executive order No. 04.030.20.01, including further defining "Essential Services" as including "any and all activities that may preserve the health and welfare of persons within [the State of Georgia".

29.

While the definition of "any and all activities that may preserve the health and

welfare" of citizens, none of the examples expressly stated in that paragraph of Executive Order No. 04.03.20.02 explicitly included the ability to congregate and worship.

30.

While Executive Order No. 04.03.20.02 only explicitly authorized officials enforcing the Order to "mandate the closure of any" business or non-profit organization who did not comply with the Order, Executive Order No. 04.02.20.01 expressly stated that such citizens not in compliance with the Order are guilty of a misdemeanor.

31.

On April 20, 2020, Defendant Kemp suggested that worship leaders hold worship services via online, call-in, or drive-in services, but reiterated that in-person services must adhere to "strict social distancing protocols," in violation of the First Amendment of the United States Constitution, as well as Article I, Section I, Para. III of the Constitution of the State of Georgia.

32.

On April 5, 2020, Bible Way held worship services where members congregated to worship God pursuant to their faith and the dictates of their conscience, as protected by the First Amendment of the United States Constitution

and Article I, Section I, Paragraph III of the Constitution of the State of Georgia.

33.

On that day, Plaintiff Porter, the pastor for Bible Way, led the congregation in worship.

34.

Also attending church at Bible Way that day and time were Plaintiffs Williams, Singleton and van Beverhoudt.

35.

Bible Way is a predominantly minority congregation composed of mostly African-American members.

36.

On that day, an unnamed Bulloch County Sheriff's Deputy alerted the Georgia State Patrol ("GSP") of the church gathering.

37.

In response to the deputy alerting GSP, Defendants Thigpen and Sowell arrived at Bible Way in an attempt to shut down services.

38.

While members were inside the building worshiping to the dictates of their conscience pursuant to their inalienable right to worship God, Defendant Sowell

began going around the parking lot and writing down the license plate information on every car in the parking lot.

39.

Defendant Thigpen then approached members outside of the building, including Plaintiffs Williams, Singleton and van Beverhoudt, asking to speak with the pastor when he was done preaching.

40.

Defendant also told Plaintiffs Williams, Singleton and van Beverhoudt that it was "not a good idea to do baptisms."

41.

Defendant Thigpen called for Bulloch County deputies to assist with enforcing compliance with Defendant Kemp's COVID-19 orders.

42.

While awaiting the arrival of other LEOs, including Bulloch County deputies and Defendant Malone and other LEOs within GSP, Defendants Thigpen and Sowell approached many unnamed Bible Way members seeking the identity of the pastor of the congregation.

43.

All of these unnamed members refused to speak with Defendants Thigpen and

Sowell.

44.

Defendant Sowell then approached Plaintiff Porter, who expressed to Defendant Sowell that he did not wish to speak to law enforcement.

45.

Defendant Thigpen overheard Plaintiff Porter tell Defendant Sowell that he did not wish to speak to law enforcement.

46.

Despite Plaintiff Porter's unambiguous statement that he did not wish to speak to law enforcement, Defendant Thigpen approached Plaintiff Porter and continued trying to obtain "voluntary compliance" from Plaintiff Porter.

Plaintiff Porter made Defendant Thigpen aware that he was represented by legal counsel.

47.

Defendant Thigpen spoke with Plaintiff Porter's attorney, Jum Puentes, over the phone and informed him that he and other LEOs were seeking "voluntary compliance", and that if he was unable to obtain compliance voluntarily, he would be "mandating compliance."

48.

Defendant Thigpen cited to Defendant Kemp's executive orders as the authority for his harassment of Plaintiff Porter and other Bible Way members.

49.

After ending the phone call with Mr. Puentes, Defendant Thigpen informed Plaintiff Porter that "the next time [he and other LEOs] would be taking enforcement action."

50.

During all times relevant to this Complaint, Defendant Lacienski with GSP was also present and enforcing Defendant Kemp's mandate and attempting to shut down worship service at Bible Way.

51.

Defendant Lacienski arrived with Defendants Hammond, Holloway and DiGiacomo.

52.

Defendants Lacienski, Hammond, Holloway and DiGiacomo assisted Defendant Sowell in "documenting each [of the 21 vehicles] that was parked at the church."

53.

Defendant Lacienski approached Plaintiffs Williams, Singleton and van Beverhoudt, who informed him that they did not wish to speak with him.

54.

Defendant Lacienski demanded that Plaintiffs Williams, Singleton and van Beverhoudt identify themselves within the next five (5) minutes.

55.

Defendant Lacienski told Plaintiffs Williams, Singleton and van Beverhoudt that he and other LEOs had been to Bible Way earlier that same day because of members congregating to worship.

56.

Defendant Lacienski cited to Defendant Kemp's Executive Order 03.14.20.01 as the purpose for all of the law enforcement presence at the church, and that they were taking enforcement action pursuant to that Order.

57.

Defendant Lacienski later supplemented his police report and corrected the Executive Order to be No. 04.02.20.01.

58.

Defendant Lacienski supplemented his police report again and corrected the Executive Order to be No. 04.02.20.02.

59.

While all Defendants' reports seemed to take issue with the members

congregating *inside* the building and that congregating *outside* would be permitted,

only those members who were initially stopped outside, including Plaintiffs

Williams, Singleton and van Beverhoudt, were cited with any violation of law.

60.

Plaintiffs Williams, Singleton and van Beverhoudt informed Defendant

Lacienski that they were also represented by counsel, which did not deter Defendant

Lacienski from attempting to continue speaking with Plaintiffs and asking them

questions.

61.

Defendant Lacienski instructed Defendant DiGiacomo to issue citations to

Plaintiffs Williams, Singleton and van Beverhoudt for reckless conduct pursuant to

Defendant Kemp's executive orders.

62.

Defendant DiGiacomo complied with the unconstitutional order and cited

Plaintiffs Williams, Singleton and van Beverhoudt with reckless conduct in violation

of O.C.G.A. § 16-5-60.

63.

Defendant Lacienski then issued a citation for reckless conduct under

O.C.G.A. § 16-5-60 to Plaintiff Porter.

64.

In July of 0221, all reckless conduct charges against Plaintiffs were dismissed.

## CLAIMS UNDER 42. U.S. CODE § 1983 CIVIL ACTION FOR DEPRIVATION OF RIGHTS

65.

The ensuing matters against each defendant originate from Plaintiffs' rights,

safeguarded under 42 U.S.C. § 1983.

## COUNT 1a. 42. U.S. CODE § 1983 : FIRST AMENDMENT CLAIM – RETALIATION AND CHILLING

66.

Plaintiffs, while exercising their First Amendment rights of expression and

religion, peaceful assembly, and addressing grievances to the government, faced

unjustified interference from Defendants.

67.

Despite Plaintiffs' distinct indication to refrain from engagement, Defendants

continued the harassment. This act directly violated Plaintiffs' protected speech,

freedom to worship, and freedom to assemble.

68.

Defendants inappropriately branded Plaintiffs' worship practices as "reckless conduct" under Defendant Kemp's executive orders, implying that such exercise of rights could lead to a misdemeanor charge.

69.

Plaintiffs committed no expression of unprotected speech, such as fighting words or other types of unlawful or unprotected speech.

70.

Defendants made unfounded insinuations about a public health threat without presenting evidence that Plaintiffs were carriers of any contagious disease.

71.

Defendants unfairly targeted Plaintiffs with attempts to chill their speech and failed to show that any other member not observing social distancing guidelines inside the building faced similar treatment.

72.

Defendants retailed against Plaintiffs, and attempted to chill speech, by arbitrarily targeting them for citations and prosecution for their refusal to engage with law enforcement who were harassing them for engaging in the inalienable right to worship God.

73.

Defendants colluded and conspired with each other in retaliating against Plaintiffs, abusing their constitutional authority by attempting to deprive Plaintiffs of their rights to assemble and worship, and not associate with those seeking to deprive them of those rights.

74.

In addition to retaliating against Plaintiffs for engaging in worship together, Defendants used their positions to insinuate to others in the community that people should not congregate to worship God when the government tells them not to do so. Overall, Defendants prevented Plaintiffs from exercising free speech, retaliated against Plaintiffs by using government power to take down everyone's identifying information they are required to display on their vehicles, refused to adhere to their unequivocal expression that they do not wish to answer questions or speak to law enforcement, and issuing citations to those engaged in worship who refused to yield to law enforcement, and chilled Plaintiffs' current and future speech by making it clear that those engaged in the same activities would be detained, profiled, cited and removed by force, using law enforcement.

## Count 1b. First Amendment violation Claim - Worship

### 75.

Defendant Kemp issued an order which unilaterally made protected religious conduct and worship of God a misdemeanor.

### 76.

Defendant Kemp attempted to dictate by executive order how citizens were permitted to engage in religious conduct, which left no room to engage in traditional religious sacraments, such as gathering to worship or conducting baptisms.

### 77.

Defendant Kemp intentionally deemed religious freedom and worship as "non-essential" in order to assert authority over religious freedom so that he would be able to restrict lawful and protected religious conduct.

### 78.

Defendant Kemp then authorized law enforcement officers to enforce his unconstitutional executive orders.

### 79.

Defendant Kemp's conduct violated Plaintiffs' protected religious freedoms under the state and federal Constitutions.

80.

Defendant Thigpen cited to Defendant Kemp's executive orders as the basis for his own unconstitutional conduct targeting religious practices.

81.

Defendant Thigpen, while on duty as a law enforcement officer, stated to Plaintiffs that it was "not a good idea to do baptisms" in an attempt to prevent Plaintiffs from engaging in this sacredly-held religious sacrament.

82.

Defendant Thigpen approached many unnamed Bible Way members seeking the identity of the pastor, who serves as the religious leader of the congregation, which is Plaintiff Porter.

83.

Defendant Thigpen threatened these members with "enforcement action" against engaging in lawful and protected religious conduct in order to bully them to get to Plaintiff Porter, the religious leader of the congregation.

84.

Defendants Sowell, Holloway and Hammond treated church-goers as criminals by taking down each members' license plate number in the church parking lot for engaging in lawful and protected religious conduct, including those vehicles of

Plaintiffs.

85.

Defendants Sowell and Lacienski approached many unnamed Bible Way members seeking the identity of the pastor, who serves as the religious leader of the congregation, which is Plaintiff Porter.

86.

Defendant Lacienski issued an unconstitutional citation for reckless conduct to Plaintiff Porter for Plaintiff Porter's engagement in lawful and protected religious conduct.

87.

Defendant Lacienski attempted to bully Plaintiffs Williams, Singleton and van Beverhoudt by demanding that they identify themselves "within the next five minutes" because they were engaging in lawful and protected religious conduct, and because they indicated that they did not wish to speak to law enforcement.

88.

Defendant Lacienski directed Defendant DiGiacomo to issue citations for reckless conduct to Plaintiffs Williams, Singleton and van Beverhoudt pursuant to Defendant Kemp's executive order when Plaintiffs were engaged in lawful and protected religious conduct.

89.

Defendant DiGiacomo followed Defendant Lacienski's unconstitutional order and issued an unconstitutional citation for reckless conduct to Plaintiffs Williams, Singleton and van Beverhoudt when Plaintiffs were engaged in lawful and protected religious conduct.

## Count 2. First Amendment Retaliation Claim

90.

Defendants Thigpen, Sowell, Lacienski, Hammond, Holloway, and DiGiacomo retaliated against Plaintiffs for their lawful religious activities and their decision to not engage voluntarily with law enforcement.

91.

These actions, intended to chill Plaintiffs' protected speech, were punitive responses to Plaintiffs' lawful and protected religious activities and their wish to consult with their attorneys.

92.

Defendant DiGiacomo followed Defendant Lacienski's unconstitutional order and issued an unconstitutional citation for reckless conduct to Plaintiffs Williams, Singleton and van Beverhoudt when Plaintiffs were engaged in lawful and protected religious conduct.

93.

Defendants Thigpen, Sowell, Lacienski, Hammond, Holloway, and

DiGiacomo engaged in their conduct in retaliation against Plaintiffs for Plaintiffs

engaging in their lawful and protected religious activities.

94.

Defendants Thigpen, Sowell, Lacienski, Hammond, Holloway, and

DiGiacomo engaged in their conduct in retaliation against Plaintiffs because

Plaintiffs indicated that they did not want to voluntarily engage with law enforcement

officers and wished to consult with their attorneys.

95.

In retaliation of Plaintiffs' engagement in lawful and protected religious

activity and their unwillingness to voluntarily engage with law enforcement officers,

and their desire to speak with their attorneys, Defendants Thigpen, Sowell, Lacienski,

Hammond, Holloway and DiGiacomo's conduct was intended to chill Plaintiffs'

protected speech.

## Count 3. Fourth Amendment Violation Claims

96.

Defendant Kemp issued an executive order for citizens to "shelter in place,"

which unilaterally put every citizen in the State of Georgia, including Plaintiffs,

under arrest, including "house arrest," without being charged with any crime, or even being suspected of any crime.

97.

Defendant Kemp attempted to dictate how citizens, including Plaintiffs, were permitted to engage in religious sacraments, such as baptisms and gathering to worship, by instructing religious leaders to hold remote services, which further restricted Plaintiffs' freedom of movement.

98.

Defendant Kemp authorized law enforcement officers to enforce his unconstitutional criminalization of movement and protected religious activity issued under his unconstitutional executive orders.

99.

Defendant Thigpen, by a show of authority and pursuant to Defendant Kemp's unconstitutional executive orders, restricted Plaintiff Porter's freedom to disengage in a supposedly "voluntary" police encounter when Plaintiff Porter broke no laws and was engaged in lawful, religious conduct protected under the federal and state Constitutions, by threatening to convert a supposed "voluntary" encounter into a "mandatory" encounter should Plaintiff Porter not voluntarily comply.

100.

Defendant Lacienski, by a show of authority, effectively engaged in an unlawful detention of Plaintiffs Williams, Singleton, and van Beverhoudt when he restricted Plaintiffs Williams's, Singleton's, and van Beverhoudt's freedom to disengage in a supposed "voluntary" police encounter, despite Plaintiffs Williams, Singleton and van Beverhoudt engaging in lawful and protected religious conduct.

101.

Defendant Lacienski, by a show of authority, further engaged in an unlawful detention of Plaintiffs Williams, Singleton, and van Beverhoudt when he restricted Plaintiffs Williams's, Singleton's, and van Beverhoudt's freedom to disengage by attempting to convert a "voluntary" police encounter into a "mandatory" police encounter by not adhering to Plaintiffs Williams's, Singleton's, and van Beverhoudt's expressed desire to disengage and speak with their lawyer.

102.

Defendant DiGiacomo, by a show of authority, unlawfully detained Plaintiffs Williams, Singleton, and van Beverhoudt for a duration of time in order to issue unconstitutional citations against Plaintiffs Williams, Singleton, and van Beverhoudt for engaging in lawful and protected religious conduct.

## **Count 4. Fifth Amendment Right to Counsel Claim**

### 103.

Upon being notified of the representation of counsel, and asserting the desire to exercise the right to counsel, law enforcement officers have a duty to cease questioning a citizen.

### 104.

Defendants Thigpen and Lacienski violated Plaintiffs' rights by not ceasing their harassment and questioning of Plaintiffs upon Plaintiffs' assertion of their right and desire to disengage in a voluntary police encounter, their right to counsel, and their right not to engage in answering Defendants Thigpen's and Lacienski's questions.

## **Count 5. Ninth Amendment Violation Claim**

### 105.

Defendant Kemp violated Plaintiffs' rights under the Ninth Amendment, which protects all rights inherent of citizens that are not expressly stated in the Bill of Rights in the Constitution of the United States, by effectively criminalizing the lawful and constitutionally-protected actions of leaving one's home, religious practices and worship, and to socialize in the presence of others.

106.

Defendants Thigpen, Sowell, Lacienski, Hammond, Holloway, DiGiacomo, Borne, and Malone each violated Plaintiffs' rights under the Ninth Amendment, which protects all rights inherent of citizens that are not expressly stated in the bill of Rights in the Constitution of the United States, by enforcing Defendant Kemp's executive orders that effectively criminalized the lawful and constitutionally-protected actions of leaving one's home, religious practices and worship, and to socialize in the presence of others.

## Count 6. Due Process Violation Claims

107.

Defendant Kemp violated Plaintiffs' due process rights by effectively and unilaterally criminalizing the lawful and constitutionally-protected actions of leaving one's home, religious practices and worship, and to socialize in the presence of others.

108.

Defendant Kemp provided no notice to citizens, including Plaintiffs, to provide any redress of grievances regarding the unconstitutional deprivation of rights, as the orders were allegedly effective upon signing and publishing to the public on the State's website.

109.

Defendant Kemp provided no opportunity to be heard to Plaintiffs on the deprivation of their rights.

110.

Defendant Kemp violated Plaintiffs' due process rights by placing citizens, including Plaintiffs, all of whom were healthy individuals at the time of the incident, on house arrest with his "shelter in place" order without any notice or process, nor without Plaintiffs having been suspected of or charged with a crime, or even suspected of having any contagious virus that may have been a threat to public health.

111.

Defendant Kemp provided no avenue for Plaintiffs to receive their rights back pursuant to any process in violation of Plaintiffs' due process rights.

112.

Defendant Kemp violated the Constitution of the United States and the Constitution of the State of Georgia in order to remove these basic liberties from Plaintiffs, which was not permitted under either document to the Governor of Georgia.

113.

Defendant Kemp violated Plaintiffs' due process rights by effectively and unilaterally suspending both the Georgia and United States Constitutions without any constitutional authority to do so.

127.

Defendants Thigpen, Sowell, Lacienski, Hammond, Holloway, DiGiacomo, Borne, and Malone assisted Defendant Kemp in his unconstitutional due process violations against Plaintiffs by enforcing Defendant Kemp's unconstitutional orders.

## Count 7. Equal Protection Claim

114.

Defendants Thigpen, Sowell, Lacienski, Hammond, Holloway, DiGiacomo, Borne, and Malone used Defendant Kemp's unconstitutional executive orders to unequally apply them to target a predominantly African-American, Christian church.

115.

Churchgoers of congregations which were not predominantly African-American were not targeted.

116.

Religious groups other than Christian churches were also not targeted.

## **STATE LAW CLAIMS**

### **Count 8. Deprivation of Speech under the Georgia constitution**

117.

The Constitution of the State of Georgia protects the right of citizens to "worship God, each according to the dictates of that person's own conscience," which makes it clear that "no human authority should, in any case, control or interfere with such right of conscience."[1]

118.

The Constitution of the State of Georgia also protects the freedom of religion.[2]

119.

Defendant Kemp issued an order which unilaterally made protected religious conduct and worship of God a misdemeanor.

120.

Defendant Kemp attempted to dictate by executive order how citizens were permitted to engage in religious conduct, which left no room to engage in traditional religious sacraments, such as gathering to worship or conducting baptisms.

121.

Defendant Kemp intentionally deemed religious freedom and worship as "non-

---

[1] Ga. Const. Art. I, Sec. I, Para. III.
[2] Ga. Const. Art. I, Sec. I, Para. IV.

essential" in order to assert authority over religious freedom so that he would be able to restrict lawful and protected religious conduct.

122.

Defendant Kemp then authorized law enforcement officers to enforce his unconstitutional executive orders.

123.

Defendant Kemp's conduct violated Plaintiffs' protected religious freedoms under the state and federal Constitutions.

124.

Defendant Thigpen cited to Defendant Kemp's executive orders as the basis for his own unconstitutional conduct targeting religious practices.

125.

Defendant Thigpen, while on duty as a law enforcement officer, stated to Plaintiffs that it was "not a good idea to do baptisms" in an attempt to prevent Plaintiffs from engaging in this sacredly-held religious sacrament.

126.

Defendant Thigpen approached many unnamed Bible Way members seeking the identity of the pastor, who serves as the religious leader of the congregation, which is Plaintiff Porter.

127.

Defendant Thigpen threatened these members with "enforcement action" against engaging in lawful and protected religious conduct in order to bully them to get to Plaintiff Porter, the religious leader of the congregation.

128.

Defendants Sowell, Holloway and Hammond treated church-goers as criminals by taking down each members' license plate number in the church parking lot for engaging in lawful and protected religious conduct, including those vehicles of Plaintiffs.

129.

Defendants Sowell and Lacienski approached many unnamed Bible Way members seeking the identity of the pastor, who serves as the religious leader of the congregation, which is Plaintiff Porter.

130.

Defendant Lacienski issued an unconstitutional citation for reckless conduct to Plaintiff Porter for Plaintiff Porter's engagement in lawful and protected religious conduct.

131.

Defendant Lacienski attempted to bully Plaintiffs Williams, Singleton and van

Beverhoudt by demanding that they identify themselves "within the next five minutes" because they were engaging in lawful and protected religious conduct, and because they indicated that they did not wish to speak to law enforcement.

132.

Defendant Lacienski directed Defendant DiGiacomo to issue citations for reckless conduct to Plaintiffs Williams, Singleton and van Beverhoudt pursuant to Defendant Kemp's executive order when Plaintiffs were engaged in lawful and protected religious conduct.

133.

Defendant DiGiacomo followed Defendant Lacienski's unconstitutional order and issued an unconstitutional citation for reckless conduct to Plaintiffs Williams, Singleton and van Beverhoudt when Plaintiffs were engaged in lawful and protected religious conduct.

**Count 9. Equal Protection under the Georgia Constitution Claim**

134.

The Georgia Constitution protects citizens from discrimination by explicitly stating that "[n]o person shall be denied the equal protection of laws."

135.

Defendants Thigpen, Sowell, Lacienski, Hammond, Holloway, DiGiacomo,

Borne, and Malone used Defendant Kemp's unconstitutional executive orders to unequally apply them to target a predominantly African-American, Christian church.

136.

Churchgoers of congregations which were not predominantly African-American were not targeted.

137.

Religious groups other than Christian churches were also not targeted.

## Count 10. Unreasonable Searches and Seizures and Violation of Liberty Claims under the Georgia Constitution

138.

Defendant Kemp issued an executive order for citizens to "shelter in place," which unilaterally put every citizen in the State of Georgia, including Plaintiffs, under arrest, including "house arrest," without being charged with any crime, or even being suspected of any crime.

139.

Defendant Kemp attempted to dictate how citizens, including Plaintiffs, were permitted to engage in religious sacraments, such as baptisms and gathering to worship, by instructing religious leaders to hold remote services, which further restricted Plaintiffs' freedom of movement.

140.

Defendant Kemp authorized law enforcement officers to enforce his

unconstitutional criminalization of movement and protected religious activity issued

under his unconstitutional executive orders.

141.

Defendant Thigpen, by a show of authority and pursuant to Defendant Kemp's

unconstitutional executive orders, restricted Plaintiff Porter's freedom to disengage in

a supposedly "voluntary" police encounter when Plaintiff Porter broke no laws and

was engaged in lawful, religious conduct protected under the federal and state

Constitutions, by threatening to convert a supposed "voluntary" encounter into a

"mandatory" encounter should Plaintiff Porter not voluntarily comply.

142.

Defendant Lacienski, by a show of authority, effectively engaged in an

unlawful detention of Plaintiffs Williams, Singleton, and van Beverhoudt when he

restricted Plaintiffs Williams's, Singleton's, and van Beverhoudt's freedom to

disengage in a supposed "voluntary" police encounter, despite Plaintiffs Williams,

Singleton and van Beverhoudt engaging in lawful and protected religious conduct.

143.

Defendant Lacienski, by a show of authority, further engaged in an unlawful

detention of Plaintiffs Williams, Singleton, and van Beverhoudt when he restricted Plaintiffs Williams's, Singleton's, and van Beverhoudt's freedom to disengage by attempting to convert a "voluntary" police encounter into a "mandatory" police encounter by not adhering to Plaintiffs Williams's, Singleton's, and van Beverhoudt's expressed desire to disengage and speak with their lawyer.

144.

Defendant DiGiacomo, by a show of authority, unlawfully detained Plaintiffs Williams, Singleton, and van Beverhoudt for a duration of time in order to issue unconstitutional citations against Plaintiffs Williams, Singleton, and van Beverhoudt for engaging in lawful and protected religious conduct.

## Count 11. Malicious Prosecution Claim under Federal and State Law

145.

Defendants Lacienski and DiGiacomo issued citations against Plaintiffs for "reckless conduct" without probable cause, which included a valid summons to appear in court.

146.

Each of Defendants Lacienski's and DiGiacomo's citations against Plaintiffs were resolved in Plaintiffs' favor.

147.

Defendants Lacienski's and DiGiacomo's conduct was made with malice against Plaitniffs for Plaintiffs' exercise of their rights to religious freedom, and not to engage in voluntary encounters with law enforcement officers.

148.

Plaintiffs were caused harm by these citations due to having to consult with lawyers, having the stress of being charged with a crime, and having their rights violated.

149.

There was a lack of probable cause, or arguable probable cause to charge Plaintiffs with any crime or issue any citation.

150.

Defendants Lacienski and DiGiacomo charged Plaintiffs with crimes, despite Plaintiffs' conduct being legal.

151.

By Defendants Lacienski and DiGiacomo maliciously issuing to Plaintiffs an official accusation or summons in the form of a citation for reckless conduct under O.C.G.A. § 16-5-60, the criminal section of the Georgia Code, without probable cause that Plaintiffs were engaged in any unlawful conduct that violated said statute,

and because these accusations were dismissed in July of 2021, Defendants sought to prosecute Plaintiffs maliciously based on the fact that Plaintiffs were part of a minority congregation engaged in lawful worship and refused to cooperate with Defendants while Defendants were attempting to deprive them of these rights to engage in said worship.

152.

Defendants' intentional and malicious actions caused Plaintiff harm, and entitles Plaintiff to damages, including but not limited to punitive damages.

### **Count 12. Failure to Intervene**

153.

Defendants Borne, Sowell and Malone failed to intervene when they had a duty to do so in order to prevent Plaintiffs' rights from being violated by other Defendants.

### **Count 13. Negligence**

154.

Each of Defendants' conduct breached their legal duties under numerous laws, including the open records act, the Georgia constitution, and public policies of Bulloch County, which damaged Plaintiffs.

## Count 14. Punitive Damages

### 155.

The actions of Defendants, as set forth above, show intentional and willful misconduct, wantonness, and that entire want of care which raises the presumption of a conscious indifference to the consequences of their actions.   Accordingly, Plaintiff seeks punitive damages pursuant to O.C.G.A. § 51-12-5.1 and Federal law.

## Count 15. Attorney's Fees

### 156.

The actions of each Defendant, as set forth above, show intentional and willful misconduct, malice, and bad faith to impose attorney's fees under State law. Further, Plaintiffs' 42 U.S.C. § 1983 claims provide fee-shifting, imposing attorney's fees against Defendants should these claims prevail, and Plaintiffs therefore seek attorney's fees.

WHEREFORE, Plaintiffs pray:

(a)     That Summons issue requiring Defendants to be and appear in this Court within the time provided by law to answer this Complaint;

(b)     That Plaintiff receive a Jury Trial;

(c)     That Plaintiff receive favorable Judgment against Defendants for Compensatory Damages, General Damages, and Pain and Suffering as provided by

law;

(d)     That Plaintiff be awarded Punitive Damages and Attorney's Fees as

provided by law including but not limited to pursuant to 42 U.S.C. § 1988;

(e)     That Plaintiff be awarded an declaratory and injunctive relief, declaring

that Defendants violated Plaintiff's constitutional rights, and enjoining them from

preventing public comment criticizing government officials in the future; and,

(h)     That Plaintiff have such other additional relief as the Court may

consider equitable and/or appropriate, given the circumstances of this case.

Respectfully Submitted, this 9th day of August, 2022.

/s/ Jessica Burton
Jordan Johnson
Georgia State Bar No. 673643

Jessica Burton
Georgia State Bar No. 916253
Attorneys for Plaintiff

Bernard & Johnson, LLC
5 Dunwoody Park
Suite 100
Atlanta, GA  30338
404.477.4755
404.592.9089 (Fax)
Alex@Justice.Law
Jessica@Justice.Law

Kevin Gough
Georgia State Bar No. 303210
Attorney for Plaintiff

Kevin Gough Firm, LLC
P.O. Box 898
501 Gloucester Street, Suite 121
Brunswick, GA 31521
Phone: (912) 266-5454
Fax: (912) 480-9280
Kevingough.firm@gmail.com