**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**STATESBORO DIVISION**

| | |
|---|---|
| ELI PORTER, et al., | |
| *Plaintiffs,* | |
| vs. | CIVIL ACTION NO.<br>6:22-cv-00057-JRH-BKE |
| SGT. DERRELL THIGPEN, et al., | |
| *Defendants.* | |

<u>**BRIEF IN SUPPORT OF DEFENDANTS GOVERNOR KEMP, THIGPEN, SOWELL, MALONE, LACIENSKI, HAMMOND, HOLLOWAY, AND DIGIACOMO'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**</u>

Defendants Governor Brian Kemp, Darrell Thigpen, Matt Sowell, Jonathan Malone, Chris Lacienski, Brent Hammond, Jamay Holloway, and Aaron DiGiacomo, by counsel, submit this brief in support of their motion to dismiss the claims asserted against them in Plaintiffs' second amended complaint (Doc. 24).

## I.     INTRODUCTION[1]

At the beginning of the COVID-19 pandemic, Governor Brian Kemp immediately took action to protect Georgia residents from this potentially deadly disease and to prevent its rampant spread.  He declared a "Public Health State of Emergency" in the State of Georgia on March 14, 2020.[2]  And he issued several executive orders, including an order to "shelter in place" unless

---

[1] For purposes of this motion, fact allegations in the amended complaint are accepted as true, legal conclusions and unwarranted deductions of fact are not.  *See American Dental Ass'n. v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010); *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).

[2] That declaration can be found at https://gov.georgia.gov/executive-action/executive-orders/2020-executive-orders.

engaged in "necessary" or "essential" activities, the violation of which would result in a misdemeanor.[3]

Plaintiffs—a preacher and three members of his congregation—violated the plain terms of Governor Kemp's executive orders by attending church services on April 5, 2020, with at least 17 other people.  Several Georgia State Patrol officers who were alerted to the gathering attempted to convince Plaintiffs to voluntarily comply with the orders.  But they failed to do so and were consequently cited for reckless conduct.

Plaintiffs are now suing Governor Kemp and the Georgia State Patrol officers for alleged violations of the First, Fourth, Fifth, Sixth, Ninth, and Fourteenth Amendments; alleged violations of the Georgia Constitution; malicious prosecution; failure-to-intervene; and negligence.  As explained in more detail below, the Court should dismiss these claims for many reasons, including that Plaintiffs fail to state a claim for relief, and their claims are barred by either qualified immunity or sovereign immunity.

## II.     FACTUAL ALLEGATIONS

### A.     The Parties

Plaintiff Eli Porter is the pastor of the Redeeming Church of God the Bible Way ("Bible Way"), which is described as "a predominantly minority congregation composed of mostly African-American members."  Doc. 24 at ¶¶ 10, 35.  Plaintiffs Francois Williams, Michael Singleton, and Timothy van Beverhoudt are members of Bible Way.  *Id*. at ¶¶ 11–13.

Defendant Governor Kemp is the Governor of the State of Georgia who issued multiple executive orders related to the COVID-19 pandemic.  *Id*. at ¶ 9.  Defendants Sergeant Darrell

---

[3] Governor Kemp's executive orders can likewise be found at https://gov.georgia.gov/executive-action/executive-orders/2020-executive-orders.

Thigpen, Corporal Matt Sowell, Trooper Jonathan Malone, Lieutenant Chris Lacienski, Trooper Brent Hammond, Trooper Jamay Holloway, and Trooper Aaron DiGiacomo were, at all relevant times, law enforcement officers with the Georgia State Patrol (collectively, the "GSP officers"). *Id*. at ¶¶ 1–7.

**B.     Governor Kemp's Executive Orders**

In the first month of the COVID-19 pandemic, Governor Kemp declared "a Public Health State of Emergency in Georgia."  *Id*. at ¶ 14.  The next month, on April 2, 2020, he issued an executive order that, among other things, required Georgia residents to "shelter in place within their homes or places of residence" unless they were "[c]onducting or participating in essential services."[4]  "Essential services" were then defined as, among other things, "[o]btaining necessary supplies and services … such as food and supplies for household consumption and use, medical supplies or medication, supplies and equipment needed to work from home, and products needed to maintain safety, sanitation, and essential maintenance of the home or residence."[5]  Under this executive order, certain types of establishments were ordered to "cease in-person operations" and "close to the public," including restaurants, gyms, fitness centers, bowling alleys, theaters, live performance venues, and bars.   "Religious activities" were not considered "necessary" or "essential."  *Id*. at ¶ 22.  The executive order made clear that any person who violated it "shall" be guilty of a misdemeanor.  *Id*. at ¶ 25.

The next day, Governor Kemp issued another executive order clarifying that the phrase "essential services" referred to "any and all activities that may preserve the health and welfare of

---

[4] The full text of this executive order can be found at https://gov.georgia.gov/executive-action/executive-orders/2020-executive-orders.

[5] The full text of this executive order can be found at https://gov.georgia.gov/executive-action/executive-orders/2020-executive-orders.

persons within [the State of Georgia]." *Id*. at ¶ 28.  The order then listed one or two examples of essential services, but the "ability to congregate and worship" was not among them.  *Id*. at ¶ 29. Instead, Governor Kemp's order suggested that worship leaders "hold worship services via online, call-in, or drive-in services."  *Id*. at ¶ 31.

**C.      Plaintiffs' Violation of the Shelter-in-Place Order.**

On April 5, 2020, Bible Way held worship services "where members congregated to worship."  Doc. 10 at ¶ 32.  Plaintiff Porter led the congregation in worship, and Plaintiffs Williams, Singleton, and van Beverhoudt attended the service.  *Id*. at ¶¶ 33–34.

Sometime that day, a Bulloch County Sheriff's Deputy alerted the Georgia State Patrol of the church gathering.  *Id*. at ¶ 36.  Sgt. Thigpen and Cpl. Sowell responded to the alert.  *Id*. at ¶ 37.  Upon arriving at Bible Way, Sgt. Thigpen "approached members outside of the building, including Plaintiffs Williams, Singleton and van Beverhoudt, asking to speak with the pastor when he was done preaching" and stating that it was a "bad idea" to conduct baptisms.  *Id*. at ¶¶ 39–40.  No other interaction is alleged to have occurred between Sgt. Thigpen or Cpl. Sowell and Plaintiffs Williams, Singleton, and van Beverhoudt.

At some point, Cpl. Sowell approached Bible Way's pastor, Plaintiff Porter, who said that he "did not wish to speak to law enforcement."  *Id*. at ¶ 44.  Although Sgt. Thigpen overheard Plaintiff Porter's statement, he approached Plaintiff Porter and "continued trying to obtain 'voluntary compliance.'"  *Id*. at ¶¶ 45–46.  Plaintiff Porter told Sgt. Thigpen that he had a lawyer and then proceeded to call his lawyer.  *Id*. at ¶¶ 46–47.  Sgt. Thigpen spoke with the lawyer, explaining that he was seeking "voluntary compliance" and "that if he was unable to obtain compliance voluntarily, he would be 'mandating compliance.'"  *Id*. at ¶ 47.  After the

4

phone call, Sgt. Thigpen told Plaintiff Porter that "the next time [he and other law enforcement officers] would be taking enforcement action."  *Id*. at ¶ 49.

Although unclear, the second amended complaint seems to indicate that Sgt. Thigpen and Cpl. Powell then left Bible Way and other law enforcement officers came to Bible Way later that day.  *Id*. at ¶¶ 51, 55.  During this second encounter, Lt. Lacienski approached Plaintiffs Williams, Singleton, and van Beverhoudt, who informed him that "they did not wish to speak with him."  *Id*. at ¶ 53.  Lt. Lacienski demanded that they identify themselves within the next five minutes.  *Id*. at ¶ 54.  Plaintiffs Williams, Singleton, and van Beverhoudt informed Lt. Lacienski that they were represented by counsel, but Lt. Lacienski continued attempting to speak with them and ask them questions.  *Id*. at ¶ 60.

Lt. Lacienski then instructed Trooper DiGiacomo to cite Plaintiffs Williams, Singleton, and van Beverhoudt for "reckless conduct pursuant to [Governor] Kemp's executive orders."  *Id*. at ¶ 61.  Trooper DiGiacomo complied and cited them for reckless conduct under O.C.G.A. § 16-5-60, which states that "[a] person who causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his or her act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation is guilty of a misdemeanor."  *Id*. at ¶ 62.  Lt. Lacienski also cited Plaintiff Porter for reckless conduct under O.C.G.A. § 16-5-60.  *Id*. at ¶ 63.  Several months later, the reckless conduct charges were dismissed.  *Id*. at ¶ 64.

## D.     Plaintiffs' Lawsuit

Plaintiffs sued Governor Kemp and the GSP officers in their individual and official capacities in the Superior Court of Bulloch County.  Doc. 1.  Governor Kemp and the GSP

officers then filed an answer and removed the case to this Court. *Id*. Shortly thereafter, co-Defendant Jason Borne moved to dismiss because Plaintiffs' complaint was an impermissible shotgun pleading. Doc. 4. Instead of fixing this deficiency, Plaintiffs filed an amended complaint as a matter of right that merely added a new claim against co-Defendant Borne for failure-to-intervene. Doc. 10. Governor Kemp and the GSP officers moved to dismiss the amended complaint (as did co-Defendant Borne). Doc. 17. On June 6, 2023, this Court entered an order finding that the amended complaint was an impermissible shotgun pleading and instructing Plaintiffs to file a second amended complaint that complies with federal pleading requirements. Doc. 23.

Thus, on June 20, 2023, Plaintiffs filed a second amended complaint. Doc. 24. They have asserted multiple claims against Governor Kemp and the GSP officers:

- Count 1a is a First Amendment claim for retaliation and chilling;

- Count 1b is a First Amendment free exercise claim;

- Count 2 is another First Amendment retaliation claim;

- Count 3 is a Fourth Amendment claim;

- Count 4 is a Fifth Amendment right to counsel claim;

- Count 5 is a Ninth Amendment claim;

- Count 6 is a due process claim;

- Count 7 is an equal protection claim;

- Count 8 is a free speech claim under the Georgia Constitution;

- Count 9 is an equal protection claim under the Georgia Constitution;

- Count 10 is an unreasonable search and seizure claim under the Georgia Constitution;

- Count 11 is a malicious prosecution claim under state and federal law;

- Count 12 is a failure-to-intervene claim against Sowell, Malone and co-Defendant Borne;

- Count 13 is a claim for negligence.

Plaintiffs seek to recover general damages, compensatory damages, punitive damages,[6] pain and suffering, and attorneys' fees.  Doc. 24 at pp. 40–41.  They also seek a declaration that Governor Kemp and the GSP officers violated their constitutional rights, as well as an injunction to prohibit Governor Kemp and the GSP officers from "preventing public comment criticizing government officials in the future."  *Id*. at p. 42.

Governor Kemp and the GSP officers now move to dismiss the claims that Plaintiffs asserted against them in the second amended complaint for the reasons set forth below.

## III.   ARGUMENT AND CITATION OF AUTHORITY

### A.   The Eleventh Amendment and sovereign immunity, and the text of § 1983, bar Plaintiffs' § 1983 claims for monetary damages against Governor Kemp and the GSP officers in their official capacity.

The Eleventh Amendment bars suit against a state or one of its agencies, departments, or officials (absent a waiver by the state or a valid congressional override) when the state is the real party in interest or when any monetary recovery would be paid from state funds.[7]  *See Ky. v.*

---

[6] Plaintiffs cannot recover punitive damages for their tort claims against Governor Kemp and the GSP officers for two reasons.  First, the Georgia Tort Claims Act states that: "No award for damages under this article shall include punitive or exemplary damages or interest prior to judgment."  O.C.G.A. § 50-21-30; *see also Ga. Dep't of Transp. v. Cannady*, 230 Ga. App. 585, 592-93 (1998).  Second, both the Georgia Supreme Court and the United States Supreme Court have held that punitive damages cannot be recovered against the government in tort cases.  *See Martin v. Hospital Authority of Clarke County*, 264 Ga. 626 (1994); *MARTA v. Boswell*, 261 Ga. 427 (1991); *City of Newport v. Fact Concerts*, 453 U.S. 247 (1981).

[7] There is no state waiver or congressional override for a § 1983 claim.  The State of Georgia has not consented to being sued under § 1983 but instead has preserved its sovereign immunity in the

*Graham*, 473 U.S. 159, 169 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 97-102 (1984).  "The general test for determining whether the state is the real party in interest, even though it is not a named defendant, is whether the relief sought against the nominal defendant would in fact operate against the state." *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1577 (11th Cir. 1994) (citation omitted).  Because the monetary damages that Plaintiffs seek from Governor Kemp and the GSP officers as state employees in their official capacities would, in fact, operate against the State of Georgia, the Eleventh Amendment bars those claims. *See Zatler v. Wainwright*, 802 F.2d 397, 399-400 (11th Cir. 1986).

Plaintiffs' official-capacity claims for money damages fail for the additional reason that § 1983 allows a plaintiff to sue only "person[s]" who violate his civil rights.  *See* 42 U.S.C. § 1983.  In other words, the statutory language of 42 U.S.C. § 1983 "creates no remedy against a State." *Arizonans for Official English*, 520 U.S. at 69.  Federal courts have made clear that a state governmental official or employee acting in his official capacity is not a "person" within the meaning of § 1983.  *See, e.g., Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989*)*.  Because Governor Kemp and the GSP officers in their official capacity are not a "person" under § 1983, Plaintiffs' official-capacity claims for money damages should be dismissed.

---

state constitution.  *See* Ga. Const. Art. 1, Sec. II, Par. IX(f) ("No waiver of sovereign immunity … shall be construed as a waiver of any immunity provided to the state or its departments, agencies, officers, or employees by the United States Constitution.").  Additionally, the Supreme Court has held that § 1983 does not override the protections of the Eleventh Amendment.  *See Quern v. Jordan*, 440 U.S. 332, 342 (1979); *Stroud v. McIntosh*, 722 F.3d 1294, 1302 (11th Cir. 2013) (distinguishing "immunity from a federal forum," which is waived by removal, from the State's "underlying sovereign immunity," which is not).

**B.      Plaintiffs fail to state a claim for retaliation under the First Amendment (Count 1a and Count 2).**

To state a claim for retaliation under the First Amendment, Plaintiffs must plead facts showing that: (1) their speech or acts were constitutionally protected, (2) the GSP officers' retaliatory conduct adversely affected the protected speech or acts, and (3) there is a causal connection between the retaliatory actions and the adverse effect.[8]  *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005).  And where, as here, "the claimed retaliation for protected First Amendment conduct is a criminal charge, a constitutional tort action for retaliation will differ … from the standard First Amendment retaliation claim."  *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1291 (11th Cir. 2019).  In those cases, the plaintiff must also "plead … the absence of probable cause."  *Nieves v. Bartlett*, 139 S. Ct. 1715, 1723 1724 (2019).

Plaintiffs' retaliation claims should be dismissed because they failed to plead the absence of probable cause.  Doc. 24 at ¶¶ 66–74, 90–96 (no mention of probable cause).  Nor can they, because Governor Kemp's executive orders required Georgia residents to "shelter in place" unless engaged in "essential" activities, and gathering together to worship was not considered an essential activity.  *Id*. at ¶¶ 21–22.  The orders also explicitly stated that anyone violating them "shall be guilty of a misdemeanor."  *Id*. at ¶ 25.  Because Plaintiffs clearly were not sheltering in place and were not engaged in an "essential" activity, the GSP officers had probable cause to take law enforcement action against them, including the issuance of citations.  Plaintiffs' retaliation claims therefore fail as a matter of law and should be dismissed.

---

[8] Plaintiffs' allegations collectively refer to "Defendants" as a whole.  But the amended complaint does not show that Governor Kemp was present during the incident, so it was impossible for him to have retaliated against Plaintiffs.  Thus, to the extent Plaintiffs assert their retaliation claim against Governor Kemp, this Court should dismiss it for the additional reason that no facts are pleaded showing action by the Governor.

C.      **Plaintiffs fail to state a free exercise claim under the First Amendment (Counts 1b, 8).**

      "[T]he threshold questions in analyzing a law challenged under the Free Exercise Clause are (1) is the law neutral, and (2) is the law of general applicability?"  *First Assembly of God of Naples, Florida, Inc. v. Collier Cnty., Fla*., 20 F.3d 419, 423 (11th Cir. 1994).  The neutrality inquiry asks whether "the object of a law is to infringe upon or restrict practices because of their religious motivation."  *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993).  And the general applicability prong asks whether the government has "in a selective manner impose[d] burdens only on conduct motivated by religious belief."  *Id.* at 543.  A law that is "neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice."  *Id.* at 531.  Rather, it needs only to survive rational basis review.  *Keeton v. Anderson-Wiley*, 664 F.3d 865, 880 (11th Cir. 2011).  Under this type of review, the law "is presumed constitutional and the burden is on the plaintiff to prove that it is not rationally related to a legitimate government interest."  *Id.*

      Here, Governor Kemp's shelter-in-place order was both neutral and of general applicability.  Nothing in the text of the order specifically targeted churches or other religious establishments.  *See* Executive Order No. 04.02.20.01.  And the order did not treat churches or other religious establishments different from secular counterparts.  *Id.*  To the contrary, the order treated all places where people might congregate in large groups for substantial periods of time (e.g., schools, eat-in restaurants, gyms, movie theaters, fitness centers, bowling alleys, live performance venues, and bars) the same—they were all ordered to cease their operations, and citizens were barred from accessing their services.  *Id.*  Governor Kemp's shelter-in-place order is therefore subject to rational basis review.  *See, e.g.*, *Case v. Ivey*, 542 F. Supp. 3d 1245 (M.D.

Ala. 2021) (holding that a Covid restriction that required houses of worship *and* their secular

counterparts to comply with a 6-feet distancing requirement did not violate the Free Exercise

Clause because this equal treatment indicated that the State "did not selectively impose burdens

only on conduct motivated by religious belief"); *S. Bay United Pentecostal Church v. Newsom*,

140 S. Ct. 1613 (2020) (Roberts, J., concurring) (concurring in the denial of an application for

injunctive relief because although COVID restrictions were placed on houses of worship,

"similar or more severe" restrictions were placed on "comparable secular gatherings, including

lectures, concerts, movie showings, spectator sports, and theatrical performances, where large

groups of people gather in close proximity for extended periods of time. And the Order exempts

or treats more leniently only dissimilar activities … in which people neither congregate in large

groups nor remain in close proximity for extended periods"); *compare with Roman Catholic

Diocese v. Cuomo,* 141 S. Ct. 63 (2020) (finding that New York's COVID-19 restrictions likely

violated the Free Exercise Clause because they "single out houses of worship for especially harsh

treatment" and treat them differently from their secular counterparts).

Governor Kemp's shelter-in-place order easily passes muster under the rational basis test.

The State of Georgia has a legitimate interest—and, in fact, a compelling interest—in stemming

the spread of COVID-19.  *See, e.g.*, *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63,

67 (2020) ("Stemming the spread of COVID-19 is unquestionably a compelling interest."); *Ass'n

of Jewish Camp Operators v. Cuomo*, 470 F. Supp. 3d 197, 224 n.10 (N.D.N.Y. 2020) ("Multiple

courts that have considered the issue have concluded that controlling the spread of COVID-19

counts as a compelling interest.") (collecting cases); *Case v. Ivey*, 542 F. Supp. 3d 1245, 1279

(M.D. Ala. 2021), aff'd, 2022 U.S. App. LEXIS 18433, 2022 WL 2441578 (11th Cir. July 5,

2022) (stating that "preventing the spread of the COVID-19 virus" is a "compelling state

interest"). The shelter-in-place order is rationally related to that interest because it minimized

the contact citizens would have with potentially infected individuals and so limited the type of

congregational activities that cause the virus to spread.

For these reasons, Plaintiffs' free exercise claims fail as a matter of law, and this Court

should dismiss them.[9]

**D.      Plaintiffs fail to state a claim for unlawful seizure under the Fourth Amendment (Counts 3, 10).**

The Fourth Amendment protects "[t]he right of the people … against unreasonable

searches and seizures." U.S. Const. amend. IV. Under the Fourth Amendment, a law

enforcement officer may conduct an "investigative stop" if the officer "has a reasonable

suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer

lacks probable cause.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989). Reasonable suspicion is

a "commonsense, nontechnical" concept that must be assessed on a case-by-case basis. *Ornelas

v. United States*, 517 U.S. 690, 695 (1996). It requires less than probable cause and

"considerably less" than a preponderance of the evidence. *United States v. Jordan*, 635 F.3d

1181, 1186 (11th Cir. 2011). In fact, reasonable suspicion "need not rule out the possibility of

innocent conduct." *United States v. Arvizu*, 534 U.S. 266, 277 (2002).

Pretermitting whether the GSP officers' conduct even amounted to an "investigatory

stop," Plaintiffs' Fourth Amendment claim fails because the GSP officers had "articulable

suspicion" to conduct that stop.[10] The second amended complaint shows that, on April 5, 2020,

---

[9] Plaintiff also brings a Free Exercise claim under the Georgia Constitution. That claim should be dismissed for the same reasons set forth above.

[10] To the extent Plaintiffs intended to bring their Fourth Amendment claim against Governor Kemp, it must be dismissed because there are no allegations that he was present at Bible Way that day.

the GSP officers were notified by a Bulloch County Sheriff's Deputy of a "church gathering" at Bible Way.  Doc. 24 at ¶ 36.  When the officers arrived, there were 21 vehicles parked at the church, and the worship services led by Plaintiff Porter were ongoing.  *Id*. at ¶¶ 33, 38, 52.  They approached and spoke to Plaintiffs Williams, Singleton, and van Beverhoudt, who were standing outside Bible Way.  *Id*. at ¶ 39.  Because Plaintiffs were physically present on the premises of Bible Way during worship services—instead of sheltering in place at home—the GSP officers had "reasonable suspicion" to believe they were violating Governor Kemp's "shelter in place" order, which is a misdemeanor offense.  This Court should, accordingly, dismiss Plaintiffs' Fourth Amendment unlawful seizure claim.

Plaintiffs also assert an unlawful seizure claim under the Georgia Constitution (Count 10. Doc. 24 at ¶¶ 138–144.  Like its federal counterpart, Art I., Sec. I, Para. XIII of the Georgia Constitution allows officers to conduct an investigatory stop when they have "reasonable suspicion" to believe a crime has occurred.  *See, e.g.*, *Hall v. State*, 309 Ga. App. 179 (2011); *Cox v. State*, 263 Ga. App. 266 (2003).  Plaintiffs' unlawful seizure claim under the Georgia Constitution therefore fails for the same reason as their unlawful seizure claim under the United States Constitution, and this Court should dismiss it.

**E.**      **Plaintiffs fail to state a right-to-counsel claim under the Fifth Amendment (Count 4)**

The Fifth Amendment guarantees that "[n]o person … shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  Under the Fifth Amendment, once "a person *in custody* invokes the right to counsel, the police may not subject him to further interrogation … until counsel has been made available."  *Everett v. Sec'y, Fla. Dep't of Corr.*, 779 F.3d 1212, 1241 (11th Cir. 2015) (emphasis added) (quotations omitted).  A person is "in custody" when there is "a formal arrest or restraint on freedom of movement of the degree

associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (quotation omitted). Factors to be considered include "the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." *Howes v. Fields*, 565 U.S. 499, 509 (2012) (internal citations omitted). Courts may also consider "the location and duration of the questioning." *United States v. Woodson*, 30 F.4th 1295, 1303 (11th Cir. 2022). For example, courts are "much less likely to find the circumstances custodial when the interrogation occurs in familiar or at least neutral surroundings." *United States v. Brown*, 441 F.3d 1330, 1348 (11th Cir. 2006).

As an initial matter, Plaintiffs' Fifth Amendment right-to-counsel claims against Governor Kemp, Trooper Malone, Trooper Hammond, Trooper Holloway, and Trooper DiGiacomo fail because there are no allegations that Plaintiffs ever mentioned their lawyers to these individuals. And Plaintiffs' claim against Sgt. Thigpen and Cpl. Sowell fail because there are no allegations that they asked additional questions after Plaintiff Porter informed them he had counsel. And, again, Governor Kemp is not alleged to have been present at Bible Way and so for this reason cannot have violated Plaintiffs' Fifth Amendment rights.

That leaves Plaintiffs' claim against Lt. Lacienski, and that claim fails because the allegations in the second amended complaint do not plausibly show that Plaintiffs were ever "in custody." Lt. Lacienski spoke with Plaintiffs in a familiar (or at least neutral) setting, and there are no allegations indicating Plaintiffs were not free to leave. There are no allegations that Lt. Lacienski blocked their access to the parking lot or the church building, told Plaintiffs they could not leave, restricted their movement, used force against Plaintiffs, applied restraints, arrested them, tried to take them down to a station for questioning, drew his weapon, searched their

persons, made physical contact with them, or issued any command other than to identify themselves.  Indeed, the gist of the second amended complaint is that the officers were attempting to persuade the members of Bible Way to comply with the Governor's executive orders by ending their congregation.  Doc. 24 at ¶ 50.  Consequently, Plaintiffs have failed to sufficiently allege that they were "in custody," which is fatal to their Fifth Amendment right-to-counsel claim against Lt. Lacienski.

## F.     Plaintiffs fail to state a claim under the Ninth Amendment (Count 5).

The Ninth Amendment states that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."  U.S. Const. amend. IX.  This amendment does not, however, provide a cause of action.  *See, e.g.*, *Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013) (holding that the Ninth Amendment is "a rule of interpretation rather than a source of rights"); *Jenkins v. Comm'r of Internal Revenue*, 483 F.3d 90, 92 (2d Cir. 2007) (explaining that the Ninth Amendment is a rule of construction rather than an independent source of individual rights); *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991) (holding that the Ninth Amendment "does not confer substantive rights in addition to those conferred by other portions of our governing law"); *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986) (stating that "the [N]inth [A]mendment has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim"); *Metz v. McKinley*, 583 F. Supp. 683, 688 n.4 (S.D. Ga. 1984) ("[T]he Ninth Amendment standing alone houses no constitutional guarantees of freedom.") (citing *Charles v. Brown*, 495 F. Supp. 862 (N.D. Ala. 1980)), aff'd, 747 F.2d 709 (11th Cir. 1984)).  Plaintiffs' claim under the Ninth Amendment should, accordingly, be dismissed.

**H.      Plaintiffs fail to state a due process claim (Count 6).**

The Due Process Clause of the Fourteenth Amendment prohibits States from "depriv[ing] any person of life, or property, without due process of law."  U.S. Const. XIV.  Two kinds of constitutional protections are derived from the Due Process Clause: procedural due process and substantive due process.  *McKinney v. Pate*, 20 F.3d 1550, 1555 (11th Cir. 1994) (en banc).  It is unclear whether Plaintiffs are asserting a substantive due process claim, a procedural due process claim, or both.  Thus, in an abundance of caution, Governor Kemp and the GSP officers address both types of claims.  As explained below, they both fail as a matter of law.

**1.      Plaintiffs fail to state a substantive due process claim.**

The substantive component of the Due Process Clause protects those rights that are "fundamental," that is, rights that are "implicit in the concept of ordered liberty."  *Chavez v. Martinez*, 538 U.S. 760, 775 (2003); *see also Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (explaining that substantive due process protections are afforded only to fundamental rights and liberties).  If a right merits substantive due process protection, that right is protected "against certain government actions regardless of the fairness of the procedures used to implement them."  *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).

Here, Plaintiffs allege that Governor Kemp's executive orders deprived them of the right to "leav[e] one's home, [engage in] religious practices and worship, and to socialize in the presence of others."  Doc. 24 at ¶ 107.  To the extent that this allegation refers to Plaintiffs' rights to assemble and exercise their religion, those rights are protected by "a particular Amendment [that] provides an explicit textual source of constitutional protection"—i.e., the First Amendment.  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotations omitted).  As a

16

result, "that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Id*. Stated differently, the "proper vehicle" for the alleged violation is the First Amendment itself, not the Due Process Clause. *See, e.g.*, *Cotriss v. City of Roswell*, 2022 U.S. App. LEXIS 17941, *21 (11th Cir. 2022); *see also Jordan v. Mosley*, 298 Fed. App'x 803, 806 (11th Cir. 2008) ("[I]f a more specific constitutional provision applies, then [a plaintiff] cannot resort to substantive due process.").

In any event, a government official's conduct rises to the level of a substantive due process violation only when it "can be characterized as arbitrary or conscience shocking in a constitutional sense." *Waddell v. Hemerson*, 329 F.3d 1300, 1304 (11th Cir. 2003). And only "the most egregious official conduct" meets this test. *Waldron v. Spicher*, 954 F.3d 1297 (11th Cir. 2020). "To rise to the conscience-shocking level, conduct … must be intended to injure in some way unjustifiable by any government interest." *Davis v. Carter*, 555 F.3d 979, 982 (11th Cir. 2009). Imposing a temporary shelter-in-place order during a pandemic for the purpose of protecting the public from the spread of disease is not the type of egregious, "conscience-shocking" conduct that gives rise to a due process claim. *See, e.g.*, *Bauer v. Summey*, 568 F. Supp. 3d 573 (S.C. D.Ct. 2021) (actions taken "to prevent the spread of a deadly virus among the defendant governmental entities' … citizens they serve does not rise to the level of conscience-shocking"); *Herrin v. Reeves*, 2020 U.S. Dist. LEXIS 176604, 2020 WL 5748090, at *9 (N.D. Miss. Sept. 25, 2020) ("[T]his court finds the notion that restrictions designed to save human lives are 'conscious shocking' to be absurd and not worthy of serious discussion."). In short, Plaintiffs' substantive due process claims fail as a matter of law and must be dismissed.

2.      **Plaintiffs fail to state a procedural due process claim**

Procedural due process is a guarantee of fair procedures whereby the state may not deprive a person of life, liberty, or property without providing "appropriate procedural safeguards." *See, e.g., Daniels v. Williams*, 474 U.S. 327 (1986).  Procedural due process calls for "such procedural protections as the particular situation demands." *Gilbert v. Homar*, 520 U.S. 924, 930 (1997).

Plaintiffs' procedural due process claim is based on the fact that Governor Kemp issued the shelter-in-place orders without "any notice or process."  Doc. 24 at ¶ 110.  But the Supreme Court has recognized that "summary administrative action may be justified in emergency situations." *Hodel v. Vir. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 300, 101 S. Ct. 2352, 69 L. Ed. 2d 1 (1981) (citations omitted). The Supreme Court has also recognized that "[p]rotection of the health and safety of the public is a paramount governmental interest which justifies summary administrative action.  Indeed, deprivation of property to protect the public health and safety is one of the oldest examples of permissible summary action." *Id.* Here, the COVID-19 pandemic was unquestionably a public health emergency.  Governor Kemp's shelter-in-place orders are therefore precisely the types of emergency government action that does not give rise to a due process claim. *See, e.g.*, *Xponential Fitness v. Arizona*, 2020 U.S. Dist. LEXIS 123379, 2020 WL 3971908, at *5 (D. Ariz. July 14, 2020) (stating that "in the current COVID-19 crisis, temporary closures of a business do not implicate procedur[al] due process rights"); *Best Supplement Guide*, 2020 U.S. Dist. LEXIS 90608, 2020 WL 2615022, at *5 (finding no procedural due process violation based on COVID related restrictions).  This Court should, accordingly dismiss Plaintiffs' procedural due process claims.

I.      **Plaintiffs fail to state an Equal Protection claim (Counts 7, 9).**

The Equal Protection Clause provides that "[n]o State shall … deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  This clause "requires that persons similarly situated … be treated alike."  *S&M Brands, Inc. v. Georgia ex rel. Carr*, 925 F.3d 1198, 1203 (11th Cir. 2019).  Thus, the "threshold inquiry in an Equal Protection case is whether the plaintiff and the proposed comparator are similarly situated."  *Id*. To satisfy this threshold inquiry, the plaintiff must identify a proposed comparator and plead facts to show that he and the proposed comparator are "prima facie identical in all relevant respects."  *Griffin Indus. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007).  "If the plaintiff has not been treated differently than a similarly situated comparator, no Equal Protection violation exists."  *S&M Brands, Inc.*, 925 F.3d at 1203.

Plaintiffs' second amended complaint contains scant allegations about their Equal Protection claim.  Doc. 24 at ¶¶ 114–116.  Their theory appears to be that the GSP officers violated their Equal Protection rights because they "used [Governor Kemp's] … executive orders to unequally apply them to target a predominantly African-American, Christian church."  *Id*. at ¶ 114.  But Plaintiffs have failed to identify a proposed comparator, much less show that they are "identical in all relevant respects."  *Griffin Indus.*, 496 F.3d at 1205.  Although Plaintiff allege that "[c]hurchgoers of congregations which were not predominantly African-American were not targeted," this is a textbook example of a conclusory allegation that cannot be considered on a motion to dismiss.  *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  As a result, their Equal Protection claim fails as a matter of law, and this Court should dismiss it.

Plaintiffs also assert an Equal Protection claim under the Georgia Constitution.  Doc. 24 at ¶ 92.  But it should be dismissed for the same reason.  Like its federal counterpart, Georgia's

Equal Protection Clause requires a plaintiff to "first establish that he is similarly situated to members of a class who are treated differently than he." *Walker v. Cromartie*, 287 Ga. 511, 512 (2010).  Plaintiffs have not pleaded any facts indicating that they were treated differently based on their race.

**J.      Qualified immunity bars Plaintiffs' § 1983 claims for monetary damages against Defendants in their individual capacity.**

This Court should dismiss Plaintiffs' § 1983 claims for the additional or alternative reason that they are barred by qualified immunity.  Qualified immunity protects governmental defendants sued in their individual capacity so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).  For qualified immunity to apply, defendants must first show that they were acting within the scope of their discretionary authority when the allegedly wrongful acts occurred.  *Id.*  The burden then shifts to the plaintiff to establish that qualified immunity is not appropriate.  *Id.*  To carry that burden, the plaintiff must show that the right asserted was "clearly established."  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). The "salient question" there is whether the state of the law, at the time of the incident, gave the defendants "fair and clear warning" that their conduct was unlawful.  *Id.* at 746.  Liability attaches only if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *United States v. Lanier*, 520 U.S. 259, 270 (1997).

Here, the pleadings show that Governor Kemp and the GSP officers were acting within their discretionary authority.  The burden therefore falls to Plaintiffs to show that qualified immunity does not apply.  They cannot, however, meet this burden because pre-existing precedent does not "clearly establish" any constitutional violation in this case.  Qualified

immunity therefore bars Plaintiffs' § 1983 claims against Governor Kemp and the GSP officers in their individual capacity.

**K.      Sovereign immunity bars Plaintiffs' state law tort claims for malicious prosecution and negligence (Counts 11, 13).**

The Georgia Tort Claims Act ("GTCA") is the "exclusive remedy for any tort committed by a state officer or employee," and it provides for a limited waiver of the State's sovereign immunity in certain situations.  O.C.G.A. § 50-21-25(a).  The question of whether sovereign immunity has been waived under the GTCA is a threshold issue that must be decided at the outset of the case.  *See, e.g.*, *McConnell v. Ga. Dep't of Labor*, 302 Ga. 18 (2017).  As the party seeking to benefit from the GTCA's limited waiver of sovereign immunity, Plaintiffs bear the burden of establishing a waiver for their tort claims against Governor Kemp and the GSP officers.  *McConnell v. Ga. Dep't of Labor*, 345 Ga. App. 669, 671 (2018).  Plaintiffs cannot meet this burden for the reasons set forth below.

**1.      Governor Kemp and the GSP officers are entitled to official immunity under the GTCA.**

The GTCA is clear that "[a] state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor."  O.C.G.A. § 50-21-25(a).  This provision mandates that the plaintiff "name as a party defendant *only the state government entity* for which the state officer or employee was acting and *shall not name the state officer or employee individually*."  O.C.G.A. § 50-21-25(b) (emphasis added).  If the plaintiff fails to comply with this requirement and names the state officer or employee individually, then "the state government entity for which the state officer or employee was acting must be substituted as the party defendant."  *Id.*

Here, Plaintiffs are suing Governor Kemp and the GSP officers for alleged acts or omissions that occurred while they were acting within the scope of their official duties as State officers and employees—specifically, the Governor of the State of Georgia and law enforcement officers with the Georgia State Patrol.  Plaintiffs were therefore required to bring their tort claims against the state government entities for which Governor Kemp and the GSP officers acted, not against Governor Kemp and the GSP officers themselves.  O.C.G.A. § 50-21-25(a).  But Plaintiffs failed to do so, with the result that Governor Kemp and the GSP officers are entitled to official immunity under the GTCA.  *See, e.g.*, *Shekhawat v. Jones*, 293 Ga. 468, 470 (2013).  Although the GTCA contemplates substitution of the state government entities (*see* O.C.G.A. § 50-21-25(b)), substitution would be futile here because Plaintiffs still cannot establish a waiver of sovereign immunity for the reasons set forth below.

## 2.    Plaintiffs failed to comply with the GTCA's ante litem notice requirements.

The GTCA sets forth a detailed procedure that potential plaintiffs must follow before they can file a lawsuit against the State and effectuate a waiver of sovereign immunity.  *Williams v. Ga. Dep't of Human Res.*, 272 Ga. 624 (2000).  Specifically, under O.C.G.A. § 50-21-26(a)(1), potential plaintiffs must provide the State with an ante litem notice of their potential claims within twelve months of the date their losses were discovered or should have been discovered.  *Bing v. Taylor*, 362 Ga. App. 599, 601 (2022).  The GTCA provides that the notice "shall be given in writing and shall be mailed by certified mail or statutory overnight delivery, return receipt requested, or delivered personally to and a receipt obtained from the Risk Management Division of the Department of Administrative Services. In addition, a copy shall be delivered personally to or mailed by first-class mail to the state government entity, the act or omissions of which are asserted as the basis of the claim."  O.C.G.A § 50-21-26(a)(2).

The GTCA then places the burden of proving strict compliance with the statute squarely on plaintiffs by requiring them to attach to their complaint as exhibits "a copy of the notice of claim … together with the certified mail or statutory overnight delivery receipt or receipt for other delivery." O.C.G.A. § 50-21-26(a)(4). "If failure to attach such exhibits to the complaint is not cured within 30 days after the state raises such issue by motion, then the complaint shall be dismissed without prejudice." *Id*.

Here, Plaintiffs failed to comply with the GTCA's ante litem notice requirements for two reasons. *First*, they failed to send an ante litem notice to DOAS, the Georgia State Patrol, or the Office of the Governor of Georgia. They are therefore precluded from filing any tort claims against Governor Kemp and the GSP officers. *See* O.C.G.A. § 50-21-26(a)(3) ("No action against the state under this article shall be commenced and the courts shall have no jurisdiction thereof unless and until a written notice of claim has been timely presented to the state."). *Second*, even if Plaintiffs had given proper notice, they failed to attach the required ante litem notice exhibits to their complaint, amended complaint, or second amended complaint. As a result, Plaintiffs' tort claims against Governor Kemp and the GSP officers should be dismissed.

### 3.   Plaintiffs failed to comply with the GTCA's service requirements.

The service provisions for GTCA tort actions are set forth in O.C.G.A. § 50-21-35. Under those provisions, claimants must "cause process to be served upon the director of the Risk Management Division of the Department of Administrative Services," as well as "the chief executive officer of the state government entity involved." *Id*. Additionally, a copy of the complaint must be "mailed to the Attorney General at his or her usual office address, by certified mail or statutory overnight delivery, return receipt requested and there shall be attached to the complaint a certificate that this requirement has been met." *Id.*

The Georgia Court of Appeals has confirmed that service of process upon the Director of the RMD of DOAS and the chief executive officer of the state agency is necessary to perfect service of process under the GTCA.  *See Green v. Cent. State Hosp.*, 275 Ga. App. 569, 571 (2005); *Sylvester v. Ga. Dep't of Transp.*, 252 Ga. App 31, 32–33 (2001).  And the Georgia Supreme Court has confirmed that the requirement for mailing the complaint to the Attorney General is mandatory, although the Court allowed that in some circumstances plaintiffs may accomplish this requirement by amendment.  *See Camp v. Coweta Cnty.*, 280 Ga. 199, 203–04 (2006) ("The statute demands that a copy of the complaint be sent to the Attorney General as soon after filing as possible.").

Plaintiffs failed to comply with all three requirements of O.C.G.A. § 50-21-35 because: (1) the Director of the RMD of DOAS has not been served with process, (2) with respect to Plaintiffs' claims against the GSP officers, the chief executive officer of GSP has not been served with process, and (3) Plaintiffs failed to attach to their complaint, amended complaint, or second amended complaint a certificate stating that they mailed a copy to the Attorney General. Plaintiffs have therefore failed to perfect service of process and mailing/certification as required by the GTCA, such that their tort claims against Governor Kemp and the GSP officers should be dismissed.  *See Backensto v. Georgia Department of Transportation*, 291 Ga. App. 293 (2008) (affirming the trial court's dismissal of the lawsuit for failure to comply with the Attorney General mailing requirement); *Green v. Central State Hospital*, 275 Ga. App. 569, 571 (2005) (affirming the dismissal of a tort claim against the Department of Corrections based on the plaintiff's failure to serve the RMD Director of DOAS);  *Henderson v. Dep't of Transp.*, 267 Ga. 90, 90–91 (1996) (affirming the trial court's dismissal of the lawsuit when there was no service

of process on the Director of the RMD of DOAS and no mailing of the complaint to the Attorney

General).

>    **4.**    **At least three GTCA exceptions apply.**

In O.C.G.A. § 50-21-24, the General Assembly set forth thirteen exceptions to the

GTCA's limited waiver of sovereign immunity.  *Pelham v. Bd. of Regents of the Univ. Sys. of*

*Ga.*, 321 Ga. App. 791, 795 (2013).  These exceptions define specific areas where the State has

*not* waived its sovereign immunity.  *Lewis v. Georgia Dep't of Human Res.*, 255 Ga. App. 805,

809–10 (2002).  Thus, if a tort claim falls within the scope of those exceptions, then it is barred

by sovereign immunity.  *Id.*  One such exception is for "losses resulting from …. *Legislative*,

judicial, quasi-judicial, or prosecutorial action or inaction."  O.C.G.A. § 50-21-24(4) (emphasis

added).  Because Plaintiffs appear to be suing Governor Kemp for negligence based on his

issuance of the "shelter-at-home" order (i.e., legislation by the executive branch), Plaintiffs'

claims against Governor Kemp are barred by the exception in O.C.G.A. § 50-21-24(4).

Additionally, another exception exists for "losses resulting from …. the method of providing law

enforcement."  O.C.G.A. § 50-21-24(6).  So to the extent that Plaintiffs are challenging the

methods that the GSP officers used during the encounter, that claim is barred too.  Finally,

another exception exists for "losses resulting from …. malicious prosecution."  O.C.G.A. § 50-

21-24(7).  Thus, Plaintiffs' claim for malicious prosecution is expressly barred under the Georgia

Tort Claims Act.

**M.**    **Plaintiffs fail to state a claim for malicious prosecution based on *federal* law (Count 11).**

In the second amended complaint, Plaintiffs clarify that they are asserting their malicious

prosecution claims under both state and federal law.  Doc. 24 at p. 37.  To prevail on a *federal*

malicious prosecution claim, Plaintiffs must show: (1) the elements of the common law tort of

malicious prosecution, and (2) a violation of their Fourth amendment right to be free from unreasonable seizures. *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019). Because Plaintiffs have not shown a Fourth Amendment violation (as explained above in Section D), their federal malicious prosecution claims necessarily fail and should be dismissed for this reason alone.

Additionally, Plaintiffs cannot show the elements of the common law tort of malicious prosecution, which are: "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003)). Only an "inquiry before a committing court or a magistrate shall amount to a prosecution." *Wynn v. City of Griffin*, 2021 U.S. App. LEXIS 31167 (11th Cir. 2021) (unpublished) (citing *Sheffield v. Futch*, 354 Ga. App. 661 (2020)). Yet, there are no allegations in the second amended complaint indicating that Plaintiffs actually went before a magistrate judge or other judge regarding their citation for reckless conduct. Their federal malicious prosecution claims therefore fail as a matter of law.

**N.    Plaintiffs fail to state a failure-to-intervene claim against Cpl. Sowell and Trooper Malone.**

Plaintiffs' failure-to-intervene claims against Cpl. Sowell and Trooper Malone consist of one allegation—that they "failed to intervene when they had a duty to do so in order to prevent Plaintiffs' rights from being violated by other Defendants." Doc. 24 at ¶ 153. This is too conclusory to state a viable claim for relief. Regardless, "[w]hile the Eleventh Circuit has held that an officer can be personally liable for failing to intervene in excessive force cases, the Eleventh Circuit has not expanded such liability to cases lacking an element of excessive force." *Gilmore v. Milton*, No. 6:18-cv-115-RSB-CLR, 2020 WL 7249627 at *6 (S.D. Ga. Dec. 9,

2020).  Plaintiffs do not allege that any force was used against them that Cpl. Sowell or Trooper

Malone failed to intervene and prevent.  Additionally, a failure to intervene claim requires facts

showing the necessity or real opportunity for the defendant-officer to intervene in a fellow

officer's unlawful conduct.  *Jones v. Frazier*, No. 2:15-cv-45, 2015 WL 9463172, at *3 (S.D. Ga.

Dec. 28, 2015) (citing *Keating v. City of Miami*, 598 F.3d 753, 764 (11th Cir. 2010)).  Plaintiffs

have not included any allegations demonstrating the necessity of intervention here.  *See*

*Sebastian v. Ortiz*, 918 F.3d 1301, 1312 (11th Cir. 2019) (finding that an officer cannot be liable

for failing to intervene when there was no constitutional violation being committed).

**O.     Plaintiffs' request for declaratory and injunctive relief fails as a matter of law.**

Plaintiffs seek "declaratory and injunctive relief, declaring that Defendants violated

Plaintiff's [sic] constitutional rights, and enjoining them from preventing public comment

criticizing government officials in the future."  Doc. 10 at p. 27.  As explained above, Plaintiffs

fail to state a claim for any constitutional violation.  Consequently, they are not entitled to the

declaratory judgement they request.  *See, e.g.*, *Sarria Holdings, Inc. v. Walgreen Co.*, 2003 U.S.

Dist. LEXIS 28859, *4 (S.D. Fla. Jan. 31, 2003) (dismissing declaratory and injunctive relief

where underlying claims were dismissed).  They also are not entitled to the injunctive relief they

request because there are no allegations in the amended complaint that they engaged in "public

comment criticizing government officials" or that they were cited with reckless conduct for

engaging in "public comment criticizing government officials."[11]  In any event, assuming that

Plaintiffs instead meant to obtain an injunction against any future enforcement of Governor

---

[11] Additionally, to the extent that Plaintiffs' requested equitable relief is based on their state law
claims, it is barred by sovereign immunity.  *See Lathrop v. Deal*, 301 Ga. 408 (2017).  Although
the Georgia Constitution was recently amended to waive sovereign immunity for certain
equitable relief in certain cases, the waiver applies only to "acts which occur on or after January
1, 2021."  Ga. Const. art. I, sect. II, para. V(b)(1).  It therefore does not apply here.

Kemp's "shelter at home" order, that order was only effective for ten days and has thus long

expired.  *See* Executive Order No. 04.02.20.01.  Plaintiffs therefore lack standing to pursue such

injunctive relief.  *See, e.g.*, *L.A. v. Lyons*, 461 U.S. 95, 102 (1982) (explaining that standing

exists only when the injury or threat of injury is "real and immediate").

## IV.   <u>CONCLUSION</u>

For the reasons stated herein, Governor Kemp and the GSP troopers ask that the second

amended complaint and all claims asserted against them be dismissed.

Respectfully submitted, this 14th day of July, 2022.

<div style="margin-left:40%">

CHRISTOPHER M. CARR     112505
Attorney General

LORETTA L. PINKSTON-POPE     580385
Deputy Attorney General

ROGER A. CHALMERS     118720
Senior Assistant Attorney General

*/s/ Ellen Cusimano*_____
ELLEN CUSIMANO     844964
Assistant Attorney General

WADE W. HERRING, III     278313
Assistant Attorney General

</div>

Ellen Cusimano
State Law Department
40 Capitol Square SW
Atlanta, GA  30334
Tel: (404) 463-8850
Fax: (404) 651-5304
Email: ecusimano@law.ga.gov

## CERTIFICATE OF SERVICE

I certify that I have, on this day, served this brief by electronically filing it with this Court's ECF system, which constitutes service on all attorneys who have appeared in this case and are registered to use the ECF system.

This 14th day of July, 2022.

/s/ Ellen Cusimano
Ellen Cusimano