IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

ELI PORTER, et al.,

    Plaintiffs,

       v.

SGT. DERRELL THIGPEN, et al.,

    Defendants.

CV 622-057

## O R D E R

Before the Court are Defendant Jason Michael Borne's motion
to dismiss (Doc. 27); and Defendants Darrell Thigpen, Matt Sowell,
Chris Lacienski, Brent Hammond, Jamay Holloway, Aaron DiGiacomo's
(collectively, the "GSP Defendants"), Jonathan Malone, and Brian
Kemp's motion to dismiss (Doc. 29).  For the following reasons,
Defendants' motions to dismiss are **GRANTED IN PART.**

### I. BACKGROUND

The facts of this case are presented in the Court's June 6,
2023 Order and supplemented as necessary below. (See Doc. 23, at
1-5.)

Plaintiffs filed their second amended complaint on June 20,
2023. (Doc. 24.)  The second amended complaint asserts the
following claims under federal law: (1) First Amendment
retaliation and chilling claim against all Defendants; (2) First

Amendment free-exercise claim against Defendant Kemp and the GSP Defendants; (3) First Amendment retaliation claim against the GSP Defendants specifically; (4) Fourth Amendment unlawful detention claim against Defendants Kemp, Thigpen, Lacienski, and DiGiacomo; (5) Fifth Amendment right to counsel claim against Defendants Thigpen and Lacienski; (6) Ninth Amendment claim against all Defendants; (7) due process claim against all Defendants; (8) equal protection claim against all Defendants except Defendant Kemp; (9) malicious prosecution claim against Defendants Lacienski and DiGiacomo; and (10) failure to intervene claim against Defendants Borne, Sowell, and Malone. (Id. ¶¶ 65-116, 145-53.) Plaintiffs also assert various state-law claims against Defendants and seek to recover punitive damages and attorney's fees under both federal and state law. (Id. ¶¶ 117-52, 154-56.) Lastly, Plaintiffs request the Court (1) award them a declaratory judgment that Defendants violated Plaintiffs' constitutional rights, and (2) enjoin Defendants from "preventing public comment criticizing government officials in the future." (Id. at 41.)

Defendants move the Court to dismiss Plaintiffs' second amended complaint for failure to state a claim upon which relief may be granted. (Docs. 27, 29.) Plaintiffs oppose Defendants' motions (Docs. 33, 34), and Defendants replied in support of their motions (Docs. 39, 42). The motions have now been fully briefed and are ripe for the Court's review.

2

## II. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." Id. The Court must accept all well-pleaded facts in the complaint as true and construe all reasonable inferences therefrom in the light most favorable to the plaintiff. Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556

3

U.S. at 678 (citing Twombly, 550 U.S. at 557).   A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.   "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).   Furthermore, "the court may dismiss a complaint pursuant to [Rule] 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

## III. DISCUSSION

Plaintiffs assert federal and state claims against Defendants in both their official and individual capacities. (Doc. 24.)   The Court first addresses Defendant Borne's argument that Plaintiffs' claims against him are subject to dismissal, in part, because they do not assert any factual allegations against him. (Doc. 27, at 8.)   The Court then turns to whether sovereign immunity bars Plaintiffs' claims against Defendants in their official capacities.   The Court then considers Plaintiffs' 42 U.S.C. § 1983 claims.   Next, the Court addresses the relief Plaintiffs seek as to their federal claims.   Ultimately, the Court finds each of Plaintiffs' federal claims fails.   Because only Plaintiffs' state

4

law claims remain, the Court remands those claims to the Superior Court of Bulloch County, Georgia.

## A. Defendant Borne's Motion

Defendant Borne moves the Court to dismiss Plaintiffs' claims against him because — although he is mentioned in the caption and in Counts 5, 6, 7, 9, and 12 — Plaintiffs do not assert any factual allegations against him. (Doc. 27, at 8-9.)  In addressing Defendant Borne's motion to dismiss, the Court is required to accept all factual allegations in the second amended complaint as true and draw all reasonable inferences in Plaintiffs' favor. See Garfield, 466 F.3d at 1261.  Although Plaintiffs do not mention Defendant Borne by name in the "Factual Background for Claims" portion of their second amended complaint, they allege "an unnamed Bulloch County Sheriff's Deputy alerted the Georgia State Patrol" ("GSP") of the church gathering at Redeeming Church of God the Bible Way ("Bible Way"). (Doc. 24, ¶¶ 10-64, 36.)  Plaintiffs name nine individuals as Defendants in this case, but only Defendant Borne is a Bulloch County Sheriff's Deputy. (Id. ¶¶ 1-9.)  Thus, drawing all reasonable inferences in Plaintiffs' favor, the Court finds it plausible Defendant Borne was the deputy who called GSP to enforce Defendant Kemp's Executive Orders. See Garfield, 466 F.3d at 1261.  GSP's enforcement of Defendant Kemp's Executive Orders is the alleged wrongdoing giving rise to Plaintiffs' claims against Defendant Borne. (Doc. 24, ¶¶ 68, 106,

5

127(1),[1] 114, 135, 153.)   Accordingly, Defendant Borne's motion to dismiss is **DENIED** on the ground that Plaintiffs failed to assert factual allegations against him.

Defendant Borne also argues Plaintiffs' claims against him should be dismissed on the merits.  (Doc. 27, at 8-13.)   Because the arguments Defendant Borne raises are substantially the same as the arguments the other Defendants raise in their motion to dismiss (Doc. 29-1, at 15-20, 26-27), the Court addresses the motions together.

## B. Federal Claims

The Court now turns to Plaintiffs' § 1983 claims.

### 1. Official Capacity Claims

Plaintiffs bring their § 1983 claims against Defendants in their official capacities.  (Doc. 24, at 1.)   Defendants argue these claims are barred by sovereign immunity.  (Doc. 29-1, at 7-8; Doc. 16, at 8-9.)[2]   The Court agrees.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States

---

[1] Plaintiffs' second amended complaint contains two paragraphs numbered "127." (See Doc. 24, at 30, 33.)   To avoid confusion, the Court refers to the paragraph on page thirty as "127(1)" and the paragraph on page thirty-three as "127(2)."
[2] Defendant Borne, represented separately from the other Defendants, raised the defense of Eleventh Amendment immunity in his second motion to dismiss, but omitted it from his first and third motions.  (See Doc. 16, at 8-9; Doc. 4; Doc. 27.)   However, the Court may raise Eleventh Amendment immunity *sua sponte*. See Amiri v. Bd. of Trs. of Univ. of Ala., 440 F. Supp. 3d 1267, 1275 n.5 (N.D. Ala. 2020) (citing Wis. Dep't of Corr. v. Schacht, 524 U.S. 381, 389 (1998); Patsy v. Bd. of Regents of State of Fla., 457 U.S. 496, 515 n.19 (1982)).

by Citizens of another State, or by Citizens of any Foreign State."
U.S. Const. amend. XI.   Interpretations of this Amendment firmly
"establish that an unconsenting State is immune from suits brought
in federal courts by her own citizens as well as by citizens of
another state."   Pennhurst State Sch. & Hosp. v. Halderman, 465
U.S. 89, 100 (1984) (citation and internal quotation marks
omitted).   Eleventh Amendment immunity "remains in effect when
State officials are sued for damages in their official capacity."
Kentucky v. Graham, 473 U.S. 159, 169 (1985) (citations omitted).
The bar to suit remains unless a waiver of immunity or
congressional override exists.   Will v. Mich. Dep't of State
Police, 491 U.S. 58, 66 (1989).   A state official sued in his
official capacity is afforded this protection because a judgment
against him would "impose[] liability on the entity that he
represents."   Graham, 473 U.S. at 169 (citation omitted).

Here, Plaintiffs assert their § 1983 claims for monetary
damages against all Defendants in their official capacities. (Doc.
24.)   However, Defendants — the Governor of Georgia, various GSP
officers, and a Bulloch County Sheriff's Deputy — are entitled to
immunity from liability for damages under the Eleventh Amendment.
See Redman v. City of Columbus, No. 4:07-CV-181, 2008 WL 3864046,
*2 (M.D. Ga. Aug. 12, 2008) (finding damages claims against
Governor of Georgia barred by sovereign immunity); Meshal v.
Wright, 651 F. Supp. 3d 1273, 1283 (S.D. Ga. 2022) (finding two

7

GSP officers were entitled to sovereign immunity from liability for monetary damages); Temple v. McIntosh Cnty., No. 2:18-cv-91, 2019 WL 287482, at *4 (S.D. Ga. Jan. 22, 2019) (finding sheriff's deputies entitled to Eleventh Amendment immunity when executing an arrest). Accordingly, the Eleventh Amendment protects Defendants from Plaintiffs' § 1983 claims unless they have waived sovereign immunity.

Plaintiffs argue sovereign immunity does not protect Defendants for two reasons: (1) 28 U.S.C. § 1983, together with the Supremacy Clause of the United States Constitution, "trumps any claim of state sovereignty to lawsuits for [the state's] constitutional violations against its citizens"; and (2) Defendants waived Eleventh Amendment sovereign immunity by removing the case from state court to this Court. (Doc. 33, at 4–5.) Plaintiff's arguments are meritless. The Supreme Court has specifically rejected Plaintiffs' first argument that § 1983 abrogates the states' Eleventh Amendment immunity. See Edelman v. Jordan, 415 U.S. 651, 675–77 (1974); Quern v. Jordan, 440 U.S. 332, 341 (1979). Plaintiffs' second argument also fails because Defendants' removal of this case to this Court only waives their "otherwise valid objection to litigation of [this] matter . . . in a federal forum." Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613, 624 (2002) (emphasis added). However, Defendants' removal does not constitute a waiver of their sovereign immunity

from liability for monetary damages.  See <u>Page v. Hicks</u>, 773 F. App'x 514, 518 (11th Cir. 2019) (citing <u>Stroud v. McIntosh</u>, 722 F.3d 1294, 1302 (11th Cir. 2013)).  Because Defendants have not waived their Eleventh Amendment immunity, Plaintiffs § 1983 claims for monetary relief against Defendants in their official capacity are barred by sovereign immunity and are hereby **DISMISSED**.

    2. <u>Individual Capacity Claims</u>

As the Court discusses below, some of Plaintiffs' federal claims — Counts 1a, as to the GSP Defendants and Defendant Borne; 2; 4; 5; 6; 7; 11; and 12 — fail because the second amended complaint does not sufficiently allege a claim for relief. Moreover, Plaintiffs' other federal claims — Counts 1a, as to Defendant Kemp; 1b; and 3 — fail because the Defendants are entitled to qualified immunity.  Without a successful substantive federal claim, Plaintiffs are not entitled to the relief they seek as to those claims.  The Court addresses each category of Plaintiffs' claims below.

    a. *Claims that Fail Due to Insufficient Allegations*

The following claims fail as a matter of law.

    i. Count 1a and 2: First Amendment Retaliation Against the GSP Defendants and Defendant Borne

Plaintiffs bring two claims for First Amendment retaliation: one against all Defendants and one against the GSP Defendants. (Doc. 24, ¶¶ 66-74, 90-95.)  The Parties disagree about what

standard should apply to Plaintiffs' First Amendment retaliation claims. Plaintiffs argue the standard First Amendment retaliation framework should apply. (Doc. 33, at 5 (citing Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005)).) Under that standard, a plaintiff must show (1) "his speech or act was constitutionally protected," (2) "the defendant's retaliatory conduct adversely affected the protected speech," and (3) "there is a causal connection between the retaliatory actions and the adverse effect on speech." Bennett, 423 F.3d at 1250 (citations omitted). On the other hand, the GSP Defendants and Defendant Borne contend that, since the alleged retaliation is a criminal charge, Plaintiffs must "plead the absence of probable cause" in addition to the three elements from Bennett. (Doc. 29-1, at 9 (quoting DeMartini v. Town of Gulf Stream, 942 F.3d 1277, 1291 (11th Cir. 2005); Nieves v. Bartlett, 139 S. Ct. 1715, 1724 (2019)).) The Court agrees that, since "the claimed retaliation for protected First Amendment conduct is a criminal charge," Plaintiffs must plead the absence of probable cause to state a claim for First Amendment retaliation. DeMartini, 942 F.3d at 1291. And, as to the GSP Defendants and Defendant Borne, Plaintiffs' retaliation claim fails because they did not do so.

It is unclear whether Plaintiffs are bringing a retaliatory prosecution or a retaliatory arrest claim because they claim Defendants retaliated "by arbitrarily targeting them for citations

10

and prosecution for their refusal to engage with law enforcement"
but later allege Defendants chilled their First Amendment rights
"by making it clear that those engaged in the same activities would
be detained, profiled, cited and removed by force, using law
enforcement." (Doc. 24, ¶¶ 72, 74.) Regardless, Plaintiffs must
allege the absence of probable cause to succeed on either claim.
See Hartman v. Moore, 547 U.S. 250, 263 (2006) (holding that a
plaintiff must show an absence of probable cause to prove a
retaliatory prosecution claim); Nieves, 139 S. Ct. at 1724 (holding
that a plaintiff "must plead and prove the absence of probable
cause for the arrest" in retaliatory arrest cases). The GSP
Defendants contend Plaintiff's First Amendment retaliation claims
should be dismissed because they failed to plead the absence of
probable cause. (Doc. 29-1, at 9.) Indeed, the GSP Defendants
argue that, because Plaintiffs were violating Defendant Kemp's
Executive Orders by attending church instead of sheltering in place
in their homes, they had probable cause to take law enforcement
action against Plaintiffs. (Id.) Since Plaintiffs rely on the
standard First Amendment retaliation framework, they do not
address whether they alleged the absence of probable cause. (See
Doc. 33, at 5-8.)

The Court finds Plaintiffs have not alleged the GSP Defendants
or Defendant Borne lacked probable cause when they cited Plaintiffs
with violating the Executive Orders and Georgia's reckless conduct

statute.   (See Doc. 24.)   Rather, Plaintiffs' second amended complaint alleges the GSP Defendants and Defendant Borne *had* probable cause to believe Plaintiffs were violating Georgia law. (Doc. 24, ¶¶ 14-15, 21-23, 25, 32-34.)

In response to the COVID-19 pandemic, Defendant Kemp issued Executive Order No. 04.02.20.01, which directed Georgia's residents and visitors to "shelter in place within their homes or places of residence" unless they were engaged in "necessary" or "essential" activities.   (Doc. 24, ¶¶ 14-15, 21.)   Executive Order 04.02.20.01 did not list religious activities as "necessary" or "essential," and it provided those that violated it "shall be guilty of a misdemeanor."   (Id. ¶¶ 22-23, 25.)   Although Executive Order 04.02.20.01 required Georgia's residents to "shelter in place," Plaintiff Porter led a worship service at Bible Way on April 5, 2020, which Plaintiffs Williams, Singleton, and van Beverhoudt attended.   (Id. ¶¶ 32-34.)   In other words, instead of sheltering in place in their residences, Plaintiffs attended a service at Bible Way.   Accordingly, the Court finds under these facts and circumstances the GSP Defendants and Defendant Borne had probable cause to believe Plaintiffs "had committed or w[ere] committing a crime."   Case v. Eslinger, 555 F.3d 1317, 1327 (11th Cir. 2009) (citation omitted).   Because Plaintiffs' second amended complaint does not allege the absence of probable cause, Plaintiffs have not sufficiently alleged the GSP Defendants and Defendant

12

Borne violated their First Amendment rights.   See Hartman, 547 U.S. at 263; Nieves, 139 S. Ct. at 1724.   Accordingly, Counts 1a and 2 are **DISMISSED** as to the GSP Defendants and Defendant Borne.

ii. Count 4: Right to Counsel

Plaintiffs, pursuant to § 1983, allege Defendants Thigpen and Lacienski violated their Fifth Amendment right to counsel because, even after Plaintiffs informed Defendants Thigpen and Lacienski of their desire to speak with their attorneys, Defendants Thigpen and Lacienski continued questioning Plaintiffs.   (Doc. 24, ¶¶ 103-04.) The GSP Defendants argue Plaintiffs' right to counsel claim should be dismissed because there are no allegations Defendant Thigpen continued questioning Plaintiffs after they informed him they had counsel,   and   Plaintiffs   did   not   sufficiently   allege   a constitutional violation by Defendant Lacienski because they did not allege they were in custody when he questioned them.   (Doc. 29-1, at 14.)   However, the Eleventh Circuit has held that an officer's failure to follow the procedures outlined in Miranda v. Arizona, 384 U.S. 436 (1966), does not give rise to a cause of action for money damages under § 1983.   Jones v. Cannon, 174 F.3d 1271,   1291   (11th   Cir.   1999)   ("[F]ailing   to   follow   Miranda procedures triggers the prophylactic protection of the exclusion of evidence, but does not violate any substantive Fifth Amendment right such that a cause of action for money damages under § 1983 is created.").   Because Plaintiffs cannot bring a § 1983 claim for

13

violation of their Fifth Amendment right to counsel, Count 4 is hereby **DISMISSED**.

### iii. Count 5: Ninth Amendment Violation

Plaintiffs also bring a claim against all Defendants for violating their Ninth Amendment rights. (Doc. 24, ¶¶ 105-06.) The Ninth Amendment guarantees that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. CONST. amend. IX. The GSP Defendants and Defendant Borne move to dismiss this claim against them because it does not provide a cause of action. (Doc. 29-1, at 15 (citations omitted); Doc. 27, at 9 (citation omitted).) Plaintiffs contend their Ninth Amendment claim should stand because they plead it concurrently with a due process claim. (Doc. 33, at 18.) "It is well-established, however, that the Ninth Amendment is not an independent source of constitutional rights and thus cannot provide the basis for a § 1983 claim." Ayton v. Owens, No. CV 313-006, 2013 WL 4077995, at *5 n.5 (S.D. Ga. Aug. 12, 2013) (collecting cases). As a result, the Ninth Amendment provides no basis for Plaintiffs' claim, and Count 5 is hereby **DISMISSED**.

### iv. Count 6: Due Process

Count 6 is entitled "Due Process Violation Claims" and is brought against all Defendants. (Doc. 24, ¶¶ 107-27(1).) It is unclear whether Plaintiffs bring a substantive or procedural due

process claim, and Plaintiffs' response to Defendant Kemp and the GSP Defendants' motion to dismiss does not shed any light on the matter.  (See Doc. 33, at 18.)  The GSP Defendants and Defendant Borne contend Plaintiffs' due process claim fails regardless of whether it is substantive or procedural due process claim.  (Doc. 27, at 10; Doc. 29-1, at 16-18.)  To the extent Plaintiffs assert a substantive due process claim, the GSP Defendants and Defendant Borne argue it should be dismissed because the First Amendment, not substantive due process, is the proper vehicle for Plaintiffs' claim.  (Doc. 27, at 10; Doc. 29-1, at 16-17.)  Furthermore, to the extent Plaintiffs bring a procedural due process claim, the GSP Defendants and Defendant Smith argue it should be dismissed because they have not alleged a procedural due process violation. (Doc. 27, at 10; Doc. 29-1, at 18.)  The Court agrees.

The Fourteenth Amendment of the United States Constitution applies when, as here, a state actor commits allegedly unlawful conduct.  SP Frederica, LLC v. Glynn Cnty., 173 F. Supp. 3d 1362, 1373 (S.D. Ga. 2016) ("[I]t is the Due Process Clause of the Fourteenth Amendment . . . that explicitly applies to the states." (citation omitted)).  The Fourteenth Amendment's Due Process Clause provides no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  The Supreme Court has interpreted this clause to "provide[] two different kinds of constitutional protection:

15

procedural due process and substantive due process." McKinney v. Pate, 20 F.3d 1550, 1555 (11th Cir. 1994) (citing Zinermon v. Burch, 494 U.S. 113, 125 (1990)).

"The substantive component of the Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" Id. (quoting Palko v. Connecticut, 302 U.S. 319, 325 (1937)).  If a right merits substantive due process protection, it "is protected against certain government actions regardless of the fairness of the procedures used to implement them." Id. (internal quotation marks omitted) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992)).  However, "[i]f an Amendment provides an explicit textual source of constitutional protection against the sort of conduct complained of, that Amendment — not the more generalized notion of substantive due process under the Fourteenth Amendment — is the guide for analyzing the claim." Jordan v. Mosley, 298 F. App'x 803, 805 (11th Cir. 2008) (citing Graham v. Connor, 490 U.S. 386, 394 (1989)).

Plaintiffs allege Defendant Kemp violated their substantive due process rights by "criminalizing the lawful and constitutionally-protected actions of leaving one's home, religious practices and worship, and to socialize in the presence of others." (Doc. 24, ¶ 107.)  Moreover, Plaintiffs contend the GSP Defendants and Defendant Borne violated their substantive due

16

process rights by enforcing Defendant Kemp's Executive Orders. (Id. ¶ 127(1).)  In essence, Plaintiffs assert Defendants violated their free-exercise and free-association rights.  But the First Amendment "provides an explicit textual source of constitutional protection" for these rights; thus, the First Amendment, and not substantive due process, is the proper vehicle to bring these claims.  Mosley, 298 F. App'x at 805 (citation omitted). Accordingly, to the extent Plaintiffs intend to bring a substantive due process claim against Defendants, Plaintiffs' claim fails.

Plaintiffs also contend Defendant Kemp violated their procedural due process rights. (Doc. 24, ¶¶ 108-13.)  "Procedural due process is, as its name suggests, a guarantee of fair procedure."  J.R. v. Hansen, 803 F.3d 1315, 1320 (11th Cir. 2015) (internal quotation marks omitted) (quoting Zinerman, 494 U.S. at 125).  A plaintiff bringing a § 1983 claim for denial of procedural due process must establish: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally inadequate process."  Id. (alteration adopted) (citation omitted).

Plaintiffs allege Defendant Kemp denied them procedural due process by making the Executive Orders effective immediately upon signing and publication without first providing Plaintiffs notice and an opportunity to be heard. (Doc. 24, ¶¶ 108-11.)  Also, as stated above, Plaintiffs allege the GSP Defendants and Defendant

17

Borne violated Plaintiffs' procedural due process rights by enforcing Defendant Kemp's Executive Orders. (Id. ¶ 127(1).)

Generally, "[p]rocedural due process requires notice and an opportunity to be heard before any governmental deprivation of a property interest." Zipperer v. City of Fort Myers, 41 F.3d 619, 623 (11th Cir. 1995) (citations omitted). However, the Supreme Court has recognized "summary administrative action may be justified in emergency situations." Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc., 452 U.S. 264, 300 (1981) (citations omitted). Furthermore, "[p]rotection of the health and safety of the public is a paramount governmental interest which justifies summary administrative action. Indeed, deprivation of property to protect the public health and safety is one of the oldest examples of permissible summary action." Id. (alteration adopted) (internal quotation marks and citations omitted).

The Parties do not dispute the COVID-19 pandemic was a public health emergency, and the second amended complaint acknowledges the Executive Orders were issued to "assist in activities designed to address this emergency, control the spread of COVID-19, and aid recovery efforts." (Doc. 24, ¶ 15.) Additionally, many courts across the country have denied similar procedural due process claims targeted at state governments' COVID-19 policies. See Hernandez v. Grisham, 508 F. Supp. 3d 893, 979 (D.N.M. 2020) (collecting cases). The Executive Orders were administrative

18

actions, taken at the outset of the COVID-19 pandemic, designed to protect the public health and safety by preventing the spread of COVID-19 and were thus permissible under these circumstances. (See Doc. 24, ¶¶ 14-21, 28); see also Hodel, 452 U.S. at 300.   As a result, Plaintiffs' second amended complaint has not sufficiently alleged Defendant Kemp violated their procedural due process rights by issuing the Executive Orders or that the GSP Defendants and Defendant Borne violated Plaintiffs' procedural due process rights by enforcing them.   Because the second amended complaint does not sufficiently allege a substantive or procedural due process violation, Count 6 is hereby **DISMISSED**.

### v. Count 7: Equal Protection

In Count 7, Plaintiffs bring an equal protection claim against the GSP Defendants and Defendant Borne.   (Doc. 24, ¶¶ 114-16.) Plaintiffs allege the GSP Defendants and Defendant Borne violated the Equal Protection Clause of the Fourteenth Amendment by using Defendant Kemp's Executive Orders "to unequally apply them to target a predominantly African-American, Christian church."   (Id. ¶ 114.)   The GSP Defendants and Defendant Borne argue Plaintiffs' equal protection claim should be dismissed because they have not alleged other similarly situated individuals received more favorable treatment.   (Doc. 27, at 10-11; Doc. 29-1, at 19-20.)

The Equal Protection Clause prohibits a state from denying to "any person within its jurisdiction the equal protection of the

19

laws." U.S. CONST. amend. XIV, § 1. The Clause "requires government entities to treat similarly situated people alike." Campbell v. Rainbow City, 434 F.3d 1306, 1313 (11th Cir. 2006). A violation of the Equal Protection Clause is not just that defendants treated a plaintiff differently than other persons; it requires that the differential treatment "was motivated by an intent to discriminate." Elston v. Talladega Cnty. Bd. of Educ., 997 F.2d 1394, 1406 (11th Cir. 1993); see also McCleskey v. Kemp, 481 U.S. 279, 292 (1987) ("[A] [party] who alleges an equal protection violation has the burden of proving the existence of purposeful discrimination." (internal quotation marks and citation omitted)). For a plaintiff to show intentional discrimination, the Eleventh Circuit employs the same legal analysis used in Title VII disparate treatment claims. Lewis v. City of Union City, 918 F.3d 1213, 1220 n.5 (11th Cir. 2019).

Under Title VII's framework, a plaintiff establishes a prima facie case by, in part, showing how "similarly-situated [persons] outside the protected class [were treated] more favorably." Brown v. Chattahoochee Tech. Coll., No. 1:05-CV-1454, 2006 WL 2583688, at *2 (N.D. Ga. Sept. 5, 2006); see also Santos v. Hutto, No. 2:09-CV-135, 2009 WL 1405518, *1 (M.D. Ala. May 19, 2000) (explaining that to make a claim under the Equal Protection Clause, "a plaintiff must, at the very least, allege that he is similarly situated with other persons who were treated differently and that

20

the reason for the differential treatment was based on a constitutionally protected interest") (citing Jones v. Ray, 279 F.3d 944, 947 (11th Cir. 2001); Damiano v. Fla. Parole & Prob. Comm'n, 785 F.2d 929, 932-33 (11th Cir. 1986)).  The Eleventh Circuit has clarified the similarly situated standard requires comparators to be "similarly situated in all material respects." Lewis, 918 F.3d at 1218.

Plaintiffs allege the GSP Defendants and Defendant Borne denied them equal protection by unequally applying Defendant Kemp's Executive Orders to target Bible Way, a Christian church with a predominantly African-American congregation.  (Doc. 24, ¶ 114.)   In conclusory fashion, Plaintiffs allege that "[c]hurchgoers of congregations which were not predominantly African-American" and "[r]eligious groups other than Christian churches" were not targeted. (Id. ¶¶ 115-16.)  However, Plaintiffs do not allege any specific facts supporting these conclusions. These allegations are exactly the kind of legal conclusions couched as factual allegations the Court is not bound to consider.  See Iqbal, 566 U.S. at 679 (quoting Twombly, 550 U.S. at 555).  Once these allegations are disregarded, Plaintiffs' second amended complaint is devoid of any mention of a potential comparator. Because Plaintiffs failed to establish that a similarly situated comparator was treated more favorably, they have failed to sufficiently allege the GSP Defendants and Defendant Borne

violated the Equal Protection Clause. See Santos, 2009 WL 1405518, at *1 (citing Ray, 279 F.3d at 947; Damiano, 785 F.2d at 932). Accordingly, Count 7 is hereby **DISMISSED**.

### vi. Count 11: Federal Malicious Prosecution

In Count 11, Plaintiffs assert a malicious prosecution claim under § 1983 against Defendants Lacienski and DiGiacomo. (Doc. 24, ¶¶ 145-152.)   Defendants Lacienski and DiGiacomo move to dismiss Count 11 because Plaintiffs have not sufficiently alleged they violated the Fourth Amendment.   (Doc. 29-1, at 25-26.)   "To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of h[is] Fourth Amendment right to be free of unreasonable seizures." Paez v. Mulvey, 915 F.3d 1276, 1285 (11th Cir. 2019) (citation omitted). However, as the Court explains in more detail in its discussion of Count 3 below, the second amended complaint does not establish Defendants Lacienski and DiGiacomo violated Plaintiffs' Fourth Amendment right to be free from unreasonable seizure.   Therefore, Count 11 is **DISMISSED** to the extent it brings a claim for malicious prosecution under federal law.

### vi. Count 12: Failure to Intervene

In its entirety, Count 12 states: "Defendants Borne, Sowell and Malone failed to intervene when they had a duty to do so in order to prevent Plaintiffs' rights from being violated by other

Defendants." (Doc. 24, ¶ 153.) Defendants Borne, Sowell, and Malone argue this is a conclusory allegation that cannot state a viable claim for relief. (Doc. 29-1, at 26.) The Court agrees. Count 12 is yet another example of a conclusory allegation the Court should disregard. *See* Iqbal, 566 U.S. at 679 (quoting Twombly, 550 U.S. at 555). It is unclear, at best, whether Defendants Borne, Sowell, and Malone even had a duty to intervene in this case, since the second amended complaint contains no allegations any Defendant used excessive force. *See, e.g.,* Gilmore v. Milton, No. 6:18-cv-115, 2020 WL 7249627, at *8 (S.D. Ga. Dec. 9, 2020) (noting that, although the Eleventh Circuit has held officers can be personally liable for failing to intervene in excessive force cases, the Eleventh Circuit has not expanded liability to cases where there was no excessive force) (citing Cannon, 174 F.3d at 1286); Tarantino v. Citrus Cnty. Gov't, No. 5:12-cv-434, 2014 WL 4385550, at *14 (M.D. Fla. Sept. 4, 2014) ("[A]t best it appears the law is undecided as to whether a failure to intervene claim is available where excessive force is not involved and the Court therefore cannot say that law enforcement officers commit a constitutional violation when they fail to prevent another officer's unlawful search."). Moreover, although Plaintiffs assert multiple counts of wrongdoing against multiple Defendants, Plaintiffs do not explain which Defendant's conduct Defendants Borne, Sowell, and Malone should have intervened to

prevent.   Once   the   conclusory   allegation   in   Count   12   is disregarded, nothing else in Plaintiffs' second amended complaint alleges or otherwise explains how Defendants Borne, Sowell, or Malone failed to intervene.   Therefore, Count 12 is **DISMISSED**.

     b. *Claims that Fail Due to Qualified Immunity*

Defendant   Kemp   and   the   GSP   Defendants   assert   qualified immunity as a defense to Plaintiffs' § 1983 claims against them in their   individual   capacities.   (Doc.   29-1,   at   20–21.)   "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Grider v. City of Auburn, 618   F.3d   1240,   1254   (11th   Cir.   2010)   (alterations   and   internal quotation marks omitted) (quoting Vinyard v. Wilson, 311 F.2d 1340, 1346 (11th Cir. 2002)).   "Qualified immunity from suit is intended to allow government officials to carry out their discretionary duties   without   the   fear   of   personal   liability   or   harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." Id. (citation and   internal   quotation   marks   omitted).   In   other   words, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." Robinson v. Payton, 791 F.3d 824, 829 (8th Cir. 2015) (citing Davis v. Hall, 375 F.3d 703, 712 (8th Cir. 2004)).

"To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority." Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing Vinyard, 311 F.3d at 1346).   To determine whether a government official was acting within the scope of his discretionary authority, courts consider whether the official "(a) perform[ed] a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004).

Plaintiffs argue Defendants did not act within their discretionary authority and cite to Payne v. Dekalb County for support.  (Doc. 33, at 20 (citing 414 F. Supp. 2d 1158 (N.D. Ga. 2004)).)  In Payne, the plaintiff and defendant, an off-duty police officer, got into a heated exchange after the plaintiff told the officer's daughter not to ride her bike in the plaintiff's yard. 414 F. Supp. 2d at 1163.  After the exchange, the defendant went back to her home and called a magistrate judge who told the defendant simple assault charges could be issued against the plaintiff.  Id. at 1166.  The defendant then called 911 and told the responding officer about the encounter and that the magistrate judge informed the defendant he would sign a warrant for the plaintiff's arrest.  Id. at 1167.  Based on this information, the officer proceeded to the plaintiff's home and executed the arrest.

25

_Id._  The court held the defendant was not entitled to qualified immunity because she was not acting within her discretionary authority as an officer when she caused the plaintiff's arrest; rather, the defendant was "acting as a private citizen seeking the arrest of a neighbor with whom she had simply had a quarrel." _Id._ at 1171.  In concluding the defendant was not acting within her discretionary authority, the court relied on the fact that the defendant "did not face a fast-changing, potentially volatile situation that she was forced to grapple with as a police officer." _Id._

Plaintiffs argue this case is like _Payne_ because Defendants had the "ability to calmly contemplate the situation[] and not target citizens under the cloak of discretionary authority." (Doc. 33, at 20.)  Defendants argue _Payne_ is distinguishable because the defendant in _Payne_ was acting as a private citizen, whereas the GSP Defendants and Defendant Kemp were acting in their capacities as GSP officers and the Governor of Georgia, respectively. (Doc. 42, at 7-8.)

The Court finds Plaintiffs' reliance on _Payne_ misguided.  As the Northern District of Georgia noted, the _Payne_ defendant was not faced with a "fast-changing, potentially volatile situation that she was forced to grapple with _as a police officer_." _Payne_, 414 F. Supp. 2d at 1171 (emphasis added).  In fact, the _Payne_ defendant was not acting as a police officer at all, as she was

off duty at the time of the incident.  Id.  Accordingly, the purpose of qualified immunity — allowing government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation — would not be served by finding the defendant was acting within her discretionary authority.  Id.

The present case is different.  The Georgia Constitution vests the chief executive power in the Governor — here, Defendant Kemp. See GA. CONST. art. V, § II, para. I.  Georgia law provides GSP officers authority "[t]o make initial inquiries into any situation which occurs off the public roads and highways and which occurs under circumstances where it has reasonable grounds to believe a criminal law has been, is being, or is about to be violated." O.C.G.A. § 35-2-33(a)(5)(A).  Furthermore, Executive Order 04.02.20.01 permitted "officials" to enforce it, and Executive Order 04.03.20.01 extended such enforcement authority to sheriffs and their deputies.  (Doc. 24, ¶¶ 26-27.)  The Court finds that, by issuing the Executive Orders, Defendant Kemp acted pursuant to his authority under the Georgia constitution.[3]  See GA. CONST. art. V, § II, para. I.  When the GSP Defendants enforced Defendant Kemp's Executive Orders, they acted within the scope of their authority as GSP officers under O.C.G.A § 35-2-33(a)(5)(A).

---

[3] To the extent Plaintiffs argue Defendant Kemp did not act within his discretionary authority because the Executive Orders were, in Plaintiffs' view, unconstitutional, the Court must "remove the constitutional taint" to determine whether Defendant Kemp acted within his discretionary authority.  Holloman, 370 F.3d at 1266.

Accordingly, the Court finds Defendant Kemp and the GSP Defendants acted within their "legitimate job description" and, thus, their discretionary authority. Holloman, 370 F.3d at 1266.

Because Defendants established they acted within their discretionary authority, the burden shifts to Plaintiffs to demonstrate qualified immunity is inappropriate. See Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006) (citation omitted). Accordingly, the Court must turn to the complaint to see if Plaintiffs alleged sufficient facts to demonstrate Defendants are not entitled to qualified immunity. Bowen v. Warden Baldwin State Prison, 826 F.3d 1312, 1319 (11th Cir. 2016).

"An official enjoys qualified immunity unless: (1) the plaintiff alleges facts establishing that 'the defendant's conduct violated a constitutional or statutory right'; and (2) the violated right was clearly established at the time of the defendant's alleged misconduct." Wilson v. Sec'y, Dep't of Corr., 54 F.4th 652, 660 (11th Cir. 2022) (quoting Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1305 (11th Cir. 2009)). Thus, "[i]f a defendant asserts a qualified immunity defense in a Rule 12(b)(6) motion to dismiss, the court should grant qualified immunity if the plaintiff's complaint fails to allege a violation of a clearly established constitutional or statutory right." Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1300 (11th Cir. 2007) (citation omitted). The Court has "discretion in deciding which of the two

28

prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

As the Court explains in further detail below, as for some of Plaintiffs' remaining federal claims, the facts alleged fail to establish Defendants' actions violated Plaintiffs' constitutional rights.  As for other claims, the facts alleged fail to demonstrate Defendants violated a clearly established constitutional right. Therefore, the Court finds Defendants are entitled to qualified immunity on each of Plaintiffs' remaining federal claims.   The Court addresses Plaintiffs' remaining federal claims in turn.

> i. Count 1a: First Amendment Retaliation Against Defendant Kemp

Plaintiffs bring a First Amendment retaliation claim against Defendant Kemp.  (Doc. 24, ¶¶ 66, 73-74.)  Defendant Kemp argues Plaintiffs' claim should be dismissed because they have not alleged he violated their clearly established rights.  (Doc. 29-1, at 20-21; Doc. 42, at 8-10.)  The Court agrees.

An official is entitled to qualified immunity unless, as relevant here, the right purportedly violated was clearly established.  See Wilson, 54 F.4th at 660 (citation omitted).  The Eleventh Circuit has held a right can be deemed clearly established in one of three ways:

> (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law.

Hill v. Cundiff, 797 F.3d 948, 979 (11th Cir. 2015) (citation omitted). However, Plaintiffs have not alleged or otherwise provided any argument, under any of the three aforementioned methods, it was clearly established that Defendant Kemp's conduct constituted retaliation against Plaintiffs' First Amendment rights. As a result, Defendant Kemp is entitled to qualified immunity and Count 1a is **DISMISSED** as to him.

ii. Count 1b: Free Exercise

In Count 1b, Plaintiffs allege Defendant Kemp and the GSP Defendants violated their rights under the First Amendment's Free Exercise Clause in two ways. (Doc. 24, ¶¶ 75-89.) First, Plaintiffs allege Defendant Kemp violated their free-exercise rights by issuing the aforementioned Executive Orders without providing an exception for their religious practices. (Id. ¶¶ 75-79.) Second, Plaintiffs allege the GSP Defendants violated their constitutional rights by enforcing Defendant Kemp's Executive Orders. (Id. ¶¶ 80-89.) Defendant Kemp and the GSP Defendants argue they are entitled to qualified immunity on Plaintiff's free exercise claim because Plaintiffs have not alleged the right they

allegedly violated was clearly established.   (Doc. 29-1, at 20-21; Doc. 42, at 8-10.)

The Free Exercise Clause provides "Congress shall make no law . . . prohibiting the free exercise [of religion]."  U.S. CONST. amend. I.  The Free Exercise Clause "protects not only the right to harbor religious beliefs inwardly and secretly," but also the right for people to "live out their faiths in daily life through 'the performance of (or abstention from) physical acts.'"  Kennedy v. Bremerton Sch. Dist., 597 U.S. 507, 524 (2022) (citation omitted).  Nevertheless, "government action may incidentally burden religious practices — subject to rational basis review — so long as it is both 'neutral' and 'generally applicable.'"  Thai Meditation Ass'n of Ala., Inc. v. City of Mobile, 83 F.4th 922, 928 (11th Cir. 2023) (quoting Emp. Div., Dep't of Hum. Res. of Ore. v. Smith, 494 U.S. 872, 877 (1990)).  If the law at issue is both neutral and generally applicable, then rational basis review applies, and Plaintiffs must show there is no legitimate government interest or the law is not rationally related to protect that interest.  GeorgiaCarry.Org, Inc. v. Georgia, 687 F.3d 1244, 1255 n.21 (11th Cir. 2012) (citing Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 531 (1993)).  However, if a law is either not neutral or not generally applicable, strict scrutiny applies, "which would then require the [government] to

show there is a compelling governmental interest and that the law is narrowly tailored." Id. (citing Lukumi, 508 U.S. at 531-32).

As the Supreme Court recently reiterated, a law is not neutral "if it is specifically directed at religious practice." Kennedy, 597 U.S. at 526 (internal quotation marks omitted) (quoting Smith, 494 U.S. at 878). Moreover, a law is not generally applicable "if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way, or if it provides a mechanism for individualized exemptions." Id. (quoting Fulton v. City of Phila., 141 S. Ct. 1868, 1877 (2021)).

Plaintiffs allege Defendant Kemp's Executive Orders classify certain secular activities as "essential" or "necessary," thus exempting them from the Executive Orders' "shelter in place" requirement and occupancy limits, but do not provide such an exemption for religious conduct. (Doc. 24, ¶¶ 21-22, 24, 28-29, 75-79.) Plaintiffs contend the failure to provide an exemption for religious activity while providing an exemption for secular activity makes the Executive Orders not generally applicable, so strict scrutiny should apply. (Doc. 33, at 10-12.) According to Plaintiffs, Defendant Kemp violated their free exercise right because strict scrutiny is a standard he cannot meet. (Id. at 13-14.)

Even assuming — solely for the purposes of analyzing Defendants' motions to dismiss — Defendant Kemp's Executive Orders violate Plaintiffs' rights under the Free Exercise Clause, Plaintiffs' free exercise claim nevertheless fails as to Defendant Kemp because he is protected by qualified immunity.  As stated previously, an official sued in his individual capacity is entitled to qualified immunity when the violated right was not clearly established.  Wilson, 54 F.4th at 660 (citation omitted).  The Eleventh Circuit has held a right can be deemed clearly established by: (1) case law with indistinguishable facts; (2) a broad statement of principle within the Constitution, statute, or case law; or (3) conduct so egregious that a constitutional right was clearly violated.  Hill, 797 F.3d at 979.

Plaintiffs rely on the first method to demonstrate the right to an exemption for religious conduct when such an exemption was provided for secular activity was clearly established.  (Doc. 33, at 9-14.)  For support, Plaintiffs rely on three cases: (1) Roman Catholic Diocese of Brooklyn v. Cuomo, 592 U.S. 14 (2020); (2) South Bay United Pentecostal Church v. Newsom, 141 S. Ct. 716 (2021); and (3) Tandon v. Newsom, 593 U.S. 61 (2021).  (Id. at 9-10.)  However, none of these cases can demonstrate Plaintiffs had a clearly established right to an exemption for their religious conduct since one was provided for similar secular conduct.  In determining whether the constitutional right purportedly violated

was "clearly established," the Court looks to the state of the law as it was *at the time the purported violation occurred*. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).   None of the cases Plaintiffs cite could have clearly established the law as of April 5, 2020, the day the facts giving rise to this case occurred, because none of the cases cited by Plaintiffs were decided at the time of the purported violation in this case.   Indeed, the oldest of these cases, Roman Catholic Diocese of Brooklyn, was not decided until November 25, 2020.   (See Doc. 24, ¶¶ 32-33); see also 592 U.S. at 14.   Therefore, Plaintiffs cannot show the law as of April 5, 2020 clearly established that failing to provide an exemption for religious activity when one was provided for similar secular activity violates the Free Exercise Clause.   As a result, Defendant Kemp is entitled to qualified immunity as to Count 1b.   See Wilson, 54 F.4th at 660 (citation omitted).

Plaintiffs allege the GSP Defendants violated their rights under the Free Exercise Clause by enforcing Defendant Kemp's Executive Orders.   (Doc. 24, ¶¶ 80-89.)   However, "[p]olice are charged to enforce laws *until and unless* they are declared unconstitutional." Michigan v. DeFillippo, 443 U.S. 31, 38 (1979) (emphasis added).   Plaintiffs provide no authority, and the Court is unaware of any, rendering laws like Defendant Kemp's Executive Orders unconstitutional at the time of these events.   Thus, Plaintiffs failed to allege the GSP Defendants violated their

rights under the Free Exercise Clause by enforcing Defendant Kemp's Executive Orders, entitling the GSP Defendants to qualified immunity on Count 1b.  See Harris v. City of Valdosta, 616 F. Supp. 2d 1310, 1327 (M.D. Ga. 2009) (granting the defendants summary judgment on the plaintiffs' § 1983 false arrest claim and noting "the fact that O.C.G.A. § 16-11-34 was subsequently declared unconstitutional d[id] not change the Court's analysis" because "Section 16-11-34 was a valid law when the arrests were made"); Wilson, 54 F.4th at 660 (citation omitted).

### iii. Count 3: Unlawful Seizure

In Count 3, Plaintiffs allege Defendants Kemp, Thigpen, Lacienski, and DiGiacomo unlawfully seized them in violation of the Fourth Amendment.  (Doc. 24, ¶¶ 96-102.)  Plaintiffs allege Defendant Kemp violated their Fourth Amendment right to be free from unreasonable seizure by issuing the Executive Orders requiring Plaintiffs to "shelter in place" and providing law enforcement officers authority to enforce those Executive Orders. (Id. ¶¶ 96-98.)  Plaintiffs further allege Defendants Thigpen, Lacienski, and DiGiacomo violated their Fourth Amendment right by stopping them to enforce Defendant Kemp's Executive Orders.  (Id. ¶¶ 99-102.)  Defendant Kemp counters that he is entitled to qualified immunity because Plaintiffs have not alleged his conduct violated Plaintiffs' clearly established rights.  (Doc. 29-1, at 20-21; Doc. 42, 8-10.)  Moreover, Defendants Thigpen, Lacienski,

and DiGiacomo contend the second amended complaint does not establish they violated Plaintiffs' rights under the Fourth Amendment. (Doc. 29-1, at 12–13.)

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. CONST. amend. IV. Relevant here, the Fourth Amendment's protections "extend to brief investigatory stops of persons." United States v. Arvizu, 534 U.S. 266, 273 (2002). "[L]aw enforcement officers may, consistent with the Fourth Amendment, stop and briefly detain a person to investigate a reasonable suspicion that he is involved in criminal activity." United States v. Salter, 255 F. App'x 355, 358 (11th Cir. 2007) (internal quotation marks omitted) (quoting United States v. Williams, 876 F.2d 1521, 1523 (11th Cir. 1989)). "Officers may briefly detain a person as part of an investigatory stop if they have a reasonable articulable suspicion based on objective facts that the person has engaged in criminal activity." United States v. Bruce, 977 F.3d 1112, 1116 (11th Cir. 2020) (internal quotation marks and citations omitted). Although reasonable suspicion is a less demanding standard than probable cause, "the Fourth Amendment requires at least a minimal level of objective justification for making the stop." United States v. Jordan, 635 F.3d 1181, 1186 (11th Cir. 2011) (quoting Illinois v. Wardlow, 528 U.S. 119, 123 (2000)). Moreover, "a reasonable suspicion of criminal activity

36

may be formed by observing exclusively legal activity." <u>United States v. Lindsey</u>, 482 F.3d 1285, 1290 (11th Cir. 2007) (citation omitted). In the qualified-immunity context, "the issue is not whether reasonable suspicion existed in fact, but whether the officer had 'arguable' reasonable suspicion to support an investigatory stop." <u>Jackson v. Sauls</u>, 206 F.3d 1156, 1166 (11th Cir. 2000) (citations omitted). As a result, the Court "consider[s] whether an official had reasonable suspicion as 'an objective question viewed from the standpoint of a reasonable official at the scene' and based on the totality of the circumstances." <u>Young v. Brady</u>, 793 F. App'x 905, 909 (11th Cir. 2019) (citation omitted)).

As for Defendant Kemp, Plaintiffs have not asserted it was clearly established at the time Defendant Kemp issued the Executive Orders that implementing executive orders requiring the people of a state to "shelter in place" violated the Fourth Amendment. Plaintiffs have neither cited to any case law with indistinguishable facts, nor argued a broad statement of principle within the Constitution, statute, or case law exists that clearly establishes Defendant Kemp's conduct violates their Fourth Amendment right. <u>See</u> <u>Hill</u>, 797 F.3d at 979. Moreover, to the extent Plaintiffs rely on the third method of showing the law was clearly established — the conduct was so egregious that a constitutional right was clearly violated — the Court finds this

37

method is also insufficient. (See Doc. 33, at 14-15); Hill, 797 F.3d at 979. The Supreme Court has reiterated "the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'" White v. Pauly, 580 U.S. 73, 79 (2017) (citation omitted). The Eleventh Circuit has made clear "obvious clarity" cases are rare. Coffin v. Brandau, 642 F.3d 999, 1015 (11th Cir. 2011) (citations omitted). The critical inquiry is whether the law provided Defendant Kemp "fair warning" his conduct violated the Fourth Amendment. Hope v. Pelzer, 536 U.S. 730, 739 (2002). Without prior authority establishing executive orders requiring people to "shelter in place" during a global pandemic violate the Fourth Amendment, the Court cannot find Defendant Kemp had "fair warning" that his purportedly wrongful conduct violated Plaintiffs' Fourth Amendment right. See Hope, 536 U.S. at 739; Coffin, 642 F.3d at 1013-14. As a result, the Court finds Plaintiffs did not carry their burden of alleging Defendant Kemp's conduct violated clearly established law and Count 3 fails as to Defendant Kemp because he is entitled to qualified immunity. Bostic, 458 F.3d at 1303; Williams v. Bd. of Regents, 477 F.3d at 1300.

Defendants Thigpen, Lacienski, and DiGiacomo are also entitled to qualified immunity on Count 3 because the second amended complaint demonstrates they had arguable reasonable suspicion to conduct an investigatory stop and, thus, did not

violate Plaintiffs' rights under the Fourth Amendment. See Wilson, 54 F.4th at 660; Jackson, 206 F.3d at 1166 (citations omitted). According to the second amended complaint, a Bulloch County Sheriff's Deputy notified the GSP of a gathering at Bible Way on April 5, 2020. (Doc. 24, ¶¶ 32, 36.) When Defendants Thigpen, Lacienski, and DiGiacomo arrived at Bible Way, there were twenty-one cars in the parking lot. (Id. ¶¶ 37-38, 51-52.) Plaintiffs were all present at the service at Bible Way at this time. (Id. ¶¶ 33-34.) When Defendant Lacienski ordered Defendant DiGiacomo to cite Plaintiffs with reckless conduct in violation of O.C.G.A. § 16-5-60 pursuant to Defendant Kemp's Executive Orders, Defendant DiGiacomo complied. (Id. ¶¶ 61-62.) Executive Order 04.02.20.01 required Georgia's citizens and visitors to "shelter in place" unless they were engaging in a "necessary" or "essential" activity and provided noncompliance would result in a misdemeanor. (Id. ¶¶ 20-21, 25, 30.) Attending a religious gathering was not considered "necessary" or "essential" under Executive Order 04.02.20.01. (Id. ¶ 22.) Instead of complying with Executive Order 04.02.20.01's directive to shelter in place in their residences, Plaintiffs attended a service at Bible Way. (Id. ¶¶ 33-34.)

Plaintiffs argue Defendants Thigpen, Lacienski, and DiGiacomo cannot rely on Plaintiffs' presence at a church service to support their suspicion because "[t]here is nothing unlawful about going to church, being present at a church, partaking in worship

services, nor leading worship services." (Doc. 33, at 14-15.) But Executive Order 04.02.20.01 foreclosed this by subjecting Plaintiffs' conduct to a misdemeanor charge. (Doc. 24, ¶ 25.) Therefore, because Plaintiffs attended the service at Bible Way and did not shelter in place, Defendants Thigpen, Lacienski, and DiGiacomo had arguable reasonable suspicion to believe Plaintiffs were engaging in criminal activity. Bruce, 977 F.3d at 1116. Accordingly, Defendants Thigpen, Lacienski, and DiGiacomo did not violate Plaintiffs' Fourth Amendment right to be free from unreasonable seizure when they stopped and briefly detained Plaintiffs to cite them with violating Georgia's reckless conduct statute, pursuant to Defendant Kemp's Executive Orders. (See Doc. 24, ¶¶ 99-102.) As a result, Defendants Thigpen, Lacienski, and DiGiacomo are entitled to qualified immunity and Count 3 is hereby **DISMISSED.** Wilson, 54 F.4th at 660 (citation omitted).

c. *Plaintiffs' Relief Requested as to Federal Claims*

The Court now addresses the propriety of the relief Plaintiffs seek as to their federal claims.

i. Counts 14 & 15: Punitive Damages and Attorney's Fees

In Counts 14 and 15, Plaintiffs seek punitive damages and attorney's fees, respectively, under federal and state law. (Doc. 24, ¶ 155.) However, "[a] plaintiff in a § 1983 suit cannot recover punitive damages unless he first demonstrates that he has

40

been deprived of a right secured by the Constitution or laws of the United States." Curves, LLC v. Spalding Cnty., No. 3:07-CV-10, 2010 WL 11507905, at *7 (N.D. Ga. July 23, 2010), aff'd, 685 F.3d 1284 (11th Cir. 2012) (citing 42 U.S.C. § 1983). Moreover, "a claim for attorney's fees under federal law requires a viable underlying claim." Morris v. Krouse, No. 4:18-cv-272, 2020 WL 3972539, at *8 (S.D. Ga. July 14, 2020) (citing 42 U.S.C. § 1988). For the reasons discussed herein, all of Plaintiffs' § 1983 claims have been dismissed, so no viable underlying claim remains. Accordingly, Plaintiffs are not entitled to attorney's fees or punitive damages on their federal claims, and Counts 14 and 15 are hereby **DISMISSED** to the extent they seek to recover attorney's fees or punitive damages under federal law.

## ii. Declaratory and Injunctive Relief

Plaintiffs also seek a declaratory judgment "that Defendants violated Plaintiff's constitutional rights" and an injunction "enjoining [Defendants] from preventing public comment criticizing government officials in the future." (Doc. 24, at 41.) Because Plaintiffs failed to state a claim upon which relief may be granted as to all their § 1983 claims, Plaintiffs' request for declaratory and injunctive relief is **DENIED** to the extent they request such relief because Defendants violated their rights under the federal Constitution. See Sarria Holdings, Inc. v. Walgreen Co., No. 02-23169-Civ., 2003 WL 1528711, at *4 (S.D. Fla. Jan. 31, 2003)

41

(denying plaintiff's requests for declaratory and injunctive relief because plaintiff failed to state a claim upon which relief may be granted as to the substantive claims).

## C. State Law Claims

Plaintiffs' § 1983 claims discussed above arise under the laws of the United States and present a federal question "on the face of [their] well-pleaded complaint," so the Court has jurisdiction over those claims. Resnick v. KrunchCash, LLC, 34 F.4th 1028, 1034 (11th Cir. 2022) (citation omitted). As a result, the Court may exercise supplemental jurisdiction over Plaintiffs' state-law claims. See 28 U.S.C. § 1367(a). However,

> [t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if – (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Id. § 1367(c). The Eleventh Circuit "encourage[s] district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial." Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004) (per curiam) (citation omitted). Because all of Plaintiffs' federal claims have been dismissed, the Court follows the Eleventh Circuit's directive and declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims. Accordingly, Plaintiffs'

remaining claims are **REMANDED** to the Superior Court of Bulloch
County.

### IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendant
Borne's motion to dismiss (Doc. 27) and Defendants Thigpen, Sowell,
Lacienski, Hammond, Holloway, DiGiacomo, Malone, and Kemp's motion
to dismiss (Doc. 29) are **GRANTED IN PART**. Accordingly, Counts 1a,
1b, 2, 3, 4, 5, 6, 7, and 12 are **DISMISSED**. Count 11, to the
extent it asserts a malicious prosecution claim under federal law,
and Counts 14 and 15, to the extent they seek relief under federal
law, are also **DISMISSED**. Moreover, Plaintiffs' request for
declaratory and injunctive relief are **DENIED** to the extent they
seek such relief for violation of their rights under the federal
Constitution.

As the remaining claims are state-law claims, the Clerk is
**DIRECTED** to **REMAND** the remainder of this case to the Superior Court
of Bulloch County, Georgia, **TERMINATE** all remaining motions and
deadlines, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 22nd day of March,
2024.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

43